1  Jonathan D. Miller (Bar No. 220848)
   jonathan@nshmlaw.com
2  Alison M. Bernal (Bar No. 264629)
   alison@nshmlaw.com
3  NYE, STIRLING, HALE & MILLER, LLP
4  33 West Mission Street, Suite 201
   Santa Barbara, California  93101
5  Telephone: (805) 963-2345
6  Facsimile: (805) 284-9590

7  Attorneys for Plaintiff and the Class

8  *[Additional Counsel Listed on Signature Page]*

9

## UNITED STATES DISTRICT COURT

10

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| DANIEL LENTZ, PAM La FOSSE and MARYBETH NORMAN, individually on behalf of themselves and all others similarly situated, and Does (1-100) on behalf of themselves and all others similarly situated, | CASE NO.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| SANDERSON FARMS, INC., | |
| Defendant. | **Jury Trial Demanded** |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Plaintiffs Pam La Fosse, Daniel Lentz, and Marybeth Norman ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

## NATURE OF THE ACTION

1.    This is a nationwide class action brought on behalf of all consumers who purchased Sanderson chicken products, as listed *infra* ¶ 35 (the "Products"), which Defendant Sanderson Farms, Inc. ("Sanderson") sold based on misleading representations

1

in its advertising.

2.    Sanderson's advertising misleads consumers in four ways:

   a.   Sanderson's advertising misleads consumers into believing that Sanderson's chickens were not given antibiotics or other pharmaceuticals;

   b.   Sanderson's advertising misleads consumers into believing the chickens were raised in a natural environment;

   c.   Sanderson's advertising misleads consumers into believing there is no evidence that the use of antibiotics and other pharmaceuticals in poultry contributes to the evolution of antibiotic-resistant bacteria; and

   d.   Sanderson's advertising misleads consumers into believing the Products do not contain any antibiotic or pharmaceutical residue.

3.    However, the truth is that the feed Sanderson gives to its chickens contains antibiotics and pharmaceuticals; the chickens are raised indoors in crowded and dirty sheds, which is one reason why its use of antibiotics is necessary; there is extensive reliable evidence that the use of antibiotics in poultry contributes to antibiotic-resistant bacteria; and Sanderson's chickens have been found to contain antibiotic and pharmaceutical residue.

4.    Sanderson's advertising makes extensive use of the phrase "100% Natural" to emphasize its misleading claims in conjunction with assorted direct falsehoods, half-truths, and selective omissions concerning the four misrepresentations described above.

5.    Having purchased Products sold with these misrepresentations, Plaintiffs and Class members suffered injury in fact, and a loss of money or property as a result of Defendant's conduct in advertising, marketing and selling the Products falsely claimed to be "100% Natural," in addition to the misrepresentation described below. Sanderson has failed to remedy this harm and has earned, and continues to earn, substantial profit from selling the Products.

6.    Defendant's conduct violated and continues to violate, *inter alia*, consumer

2

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

protection statutes and its express warranties. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

7.     In addition, Plaintiffs seek injunctive relief requiring Sanderson to remove the misrepresentations and to make corrective and clarifying statements.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California, or has otherwise purposely availed itself of the markets in California through the promotion, advertising, marketing, and sale of the Products in California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendant does substantial business in this District; and (2) a substantial part of the events or omissions giving rise to these claims occurred in this District, and Defendant engaged in the extensive promotion, advertising, marketing, distribution, and sales of the Products at issue in this District.

## PARTIES

### Plaintiffs

11.     Plaintiff Daniel Lentz is an individual consumer who, at all times material hereto, was a resident of Sonoma, California.

12.     Plaintiff Lentz purchased some of the Products in California grocery stores during the class period and relied upon the representations of Sanderson that the Products

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

were "100% Natural."

13.     Mr. Lentz believed the representation that the Products were "100% Natural" meant that the chickens were not given antibiotics or pharmaceuticals; that the chickens were raised in a natural environment; that the Products did not contribute to the evolution of antibiotic-resistant bacteria; and that the Products could not and did not have any antibiotic or pharmaceutical residues.

14.     Plaintiff Pam La Fosse is a consumer who, at all times material hereto, was a resident of San Bernardino County, California.

15.     Ms. La Fosse saw the representation that the Products were "100% Natural" on Sanderson's website. Ms. La Fosse also saw weekly circulars advertising Sanderson's chicken products.

16.     Ms. La Fosse purchased some of the Products in California grocery stores during the class period and relied upon the representations of Sanderson that the Products were "100% Natural," that Sanderson did not use antibiotics or pharmaceuticals, that it was not possible for any antibiotic or pharmaceutical residue to remain in the product because Sanderson did not use antibiotics or pharmaceuticals, and that Sanderson treated the birds humanely.

17.     Ms. La Fosse also purchased the products for resale from Albertson's and/or Vonn's based upon the "100% Natural" representations on Defendant's website and the representations that Sanderson did not use antibiotics or pharmaceuticals, that it was not possible for any antibiotic or pharmaceutical residue to remain in the product because Sanderson did not use antibiotics or pharmaceuticals, and that Sanderson treated the birds humanely.

18.     Ms. La Fosse believed the representation that the Products were "100% Natural" meant that the chickens were not given antibiotics or pharmaceuticals; that the chickens were raised in a natural environment; that the Products did not contribute to the evolution of antibiotic-resistant bacteria; and that the Products could not and did not have any antibiotic or pharmaceutical residues.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

4

19.    Plaintiff Marybeth Norman is an individual consumer who, at all times material hereto, was a resident of Chatham County, North Carolina.

20.    Ms. Norman saw the representation that the Products were "100% Natural" on Sanderson's television commercials and on Sanderson's packaging.

21.    Ms. Norman purchased some of the Products in North Carolina grocery stores during the class period and relied upon the representations of Sanderson that the Products were "100% Natural."

22.    Ms. Norman believed the representation that the Products were "100% Natural" meant that the chickens were not given antibiotics or pharmaceuticals; that the chickens were raised in a natural environment; that the Products did not contribute to the evolution of antibiotic-resistant bacteria; and that the Products could not and did not have any antibiotic or pharmaceutical residues.

23.    One or more Plaintiffs were exposed to the representations of Sanderson that their Products were "100% natural" in many different media.

24.    One or more Plaintiffs were exposed to the "100% Natural" representations on advertisements on television for Sanderson Farms Products.

25.    One or more Plaintiffs were exposed to the "100% Natural" representation on advertisements in print for Sanderson Farms Products.

26.    One or more Plaintiffs were warned by Defendant to "not be fooled" by the statements regarding antibiotics made by other producers of chicken.

27.    One or more Plaintiffs were assured by Defendant that their product was "wholesome." Based upon Sanderson's advertisements, one or more Plaintiffs came to understand that "wholesome" means no antibiotics and no fillers.

**Defendant**

28.    Defendant Sanderson Farms, Inc. is a corporation organized and existing under the laws of the State of Mississippi. Its principal place of business and headquarters is maintained at 127 Flynt Road, Laurel, Mississippi. Sanderson is a publicly traded company with annual revenue routinely exceeding $3 Billion. In Fiscal Year 2018

5

Sanderson raised and processed 4.5 billion pounds of dressed chickens as well as 2.6 million pounds of poultry it purchased and then processed.

29.     Defendant Sanderson disseminates the false representation that the Products are "100% Natural" in a widespread national advertising campaign, including on its website, in television, radio and internet commercials, in print advertising, and on billboards.

30.     In addition, Sanderson encourages resellers to use images of the Products in their print and internet advertisements in order to "promote the sale of Sanderson Farms 100% natural chicken." The picture below is an example of the type of advertising used in flyers in California supermarkets.



31.     Defendant also labels the Products "100% Natural" but Plaintiffs challenge Sanderson's advertising, not the Products' labels.

32.     Currently, three poultry producers dominate the market, with Sanderson sitting in third place. Together the three producers control 90% of the market.

33.     Of the top three poultry producers, only Sanderson does not offer at least some poultry that has never been exposed to antibiotics. Instead, Sanderson uses its "100% Natural" claims and advertising to compete with the top two producers' lines of antibiotic-free poultry.

34.     Defendant Sanderson ships its Products to purchasers, resellers, and distributors in and from California, sells in retail outlets in California, and creates the claims and advertisements for its Products, including its website where it specifically

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT

Case No.

discusses the "100% Natural" claims[1] and makes the representations discussed herein regarding the Products.

## **FACTUAL BACKGROUND**

### **Sanderson Chicken Products**

35.    Sanderson's Chicken Products, all of which are marketed as "100% Natural" include the following:[2]

- Clipped Chicken Tenderloins
- Boneless Skinless Chicken Thigh Fillets
- Boneless Skinless Breast Strips
- Thinly Sliced Boneless Skinless Breast Fillets
- Boneless Skinless Breast Fillets
- Best of Boneless
- Boneless Skinless Breast Chunks
- Family Pack Whole Legs
- Whole Legs
- Family Pack Wingettes
- Wingettes
- Drumsticks & Thighs Combo
- Skinless Drumsticks
- Chicken Hearts
- Value Pack Chicken Gizzards
- Skinless Split Breast
- Family Pack Chicken Tenderloins
- Chicken Tenderloins

[1] *See* https://sandersonfarms.com/our-chickens/100-natural/ last visited August 27, 2019.
[2] Discovery may indicate that additional products should be included within the scope of this Complaint, and Plaintiffs reserve the right to add those products.

CLASS ACTION COMPLAINT

Case No.

- Family Pack Boneless, Skinless Chicken Breast Fillets with Rib Meat
- Skinless Thighs
- Family Pack Thighs
- Thighs
- Value Pack Thighs
- Value Pack Leg Quarters
- Value Pack Wings
- Value Pack Drumsticks
- Value Pack Split Breasts
- Chicken Necks
- Wing Drumettes
- Family Pack Drumsticks
- Family Pack Thighs
- Family Pack Leg Quarters
- Whole Roasting Chicken
- Pick of the Chicken
- Family Pack Wings
- Family Pack Split Breasts
- Livers Chicken Gizzards
- Stripped Back Portions
- Wings
- Thighs
- Drumsticks
- Split Breasts
- Whole Cut-Up Chicken with Giblets and Neck
- Whole Frying Chicken (Whole Young Chicken).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT

Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

36.     An example of Sanderson's Chicken Products is reproduced here:[3]



37.     The Chicken Products are available for purchase under the Sanderson Farms brand at retail locations throughout California such as Albertson's, Von's, Food 4 Less, Foods Co, and WinCo Foods,[4] and nationally with Sanderson Farms logo. Plaintiffs Lentz and La Fosse made their purchases at these outlets.

38.     Sanderson markets and advertises its Chicken Products in California, and seeks to reach the vast consumer base through commercials on television, print advertising, radio advertising, email newsletters, billboard advertising, and online marketing such as Facebook, YouTube, Instagram, Pinterest and its own website.

**Sanderson's Extensive National False and Misleading Advertising, Including "100% Natural" Representations**

39.     In an extensive national advertising campaign, Sanderson misleads consumers into believing its chickens are not raised with pharmaceuticals or antibiotics;

---

[3] Plaintiffs challenge the advertising of these products, not the product labels, except to the extent that they are used directly in advertising, for example in flyers sent out by grocery stores and markets in keeping with Sanderson's advertising guidelines. For example, Sanderson encourages resellers to use images like the one in paragraph 15 in their print and internet advertisements in order to "promote the sale of Sanderson Farms 100% natural chicken."  *See* https://sandersonfarms.com/corporate/media-library/product-imagery/ last visited August 29, 2019.

[4] Sanderson Farms, "Find A Store," http://www.sandersonfarms.com/store-finder/ (last visited August 29, 2019

CLASS ACTION COMPLAINT

Case No.

that the chickens are raised in a natural environment; that the use of antibiotics in poultry cannot promote the evolution of antibiotic-resistant bacteria; and that the Products cannot possibly have any antibiotic or pharmaceutical reside when sold.

40.     In addition to specific false and misleading statements described below, Sanderson uses the phrase "100% Natural" in different contexts throughout its advertising to bolster these misrepresentations. Sanderson repeatedly makes false "100% Natural" representations in various media—television, website home page, social media, print magazines, radio advertising, billboards, trucks, etc.—when in fact its chicken production process and resulting products do not meet reasonable consumer expectations for products advertised as "100% Natural."

41.     The use of the term "natural," let alone "100% Natural," is a powerful statement that is important to consumers.

42.     A 2015 Consumer Reports[5] survey found that 62% of consumers purchase "natural" products, and that 87% of those purchasers are willing to pay more for products called "natural" that meet their expectations as to what "natural" means.[6] A 2016 survey found the number of consumers who purchase "natural" products to be as high as 73%[7].

---

[5]  Consumer Reports, founded in 1936, is "an independent, nonprofit member organization that works side by side with consumers for truth, transparency, and fairness in the marketplace." It has six million members and tests tens of thousands of products annually to provide consumers with product reviews. Consumer Reports, "About Us", available at https://www.consumerreports.org/cro/about-us/what-we-do/index.html (last visited August 30, 2019) CR has a Survey Research department that conducts more than one hundred surveys per year. Its surveys are not commissioned or financed by industry. Available at https://www.consumerreports.org/cro/about-us/what-we-do/research-and-testing/index.html (last visited August 30, 2019). In October 2018, CR published a front page story on its monthly magazine titled, "What's Really in Your Meat?"[5] [5] Available at https://www.consumerreports.org/food-safety/are-banned-drugs-in-your-meat/ (last visited August 30, 2019). The article title for the online version is "Are Banned Drugs in Your Meat."
[6] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 2, available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).
[7] Consumer Reports National Research Center, "Food Labels Survey" (2016), at 5, available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

10

Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

43.     According to surveys by Consumer Reports, the meaning of the term "natural," even isolated from Sanderson's many other specific misrepresentations, conveys a message entirely at odds with the reality of Sanderson's practices. For example, 88% of consumers expect that meat with a "natural" label meant that the meat "came from an animal whose diet was natural and free of chemicals, drugs and other artificial ingredients."[8]

44.     Further, 50% of consumers believe use of the term "natural" means that the animals went outdoors,[9] and 83% expect that the "natural" label means the animal was raised in a natural environment.[10]

**Allegations Concerning The Misrepresentation That The Chickens Are Not Raised With Antibiotics Or Pharmaceuticals**

45.     Sanderson misleads consumers into believing its chickens are raised without antibiotics or pharmaceuticals. Its carefully crafted message makes constant use of the "100% Natural" representation in conjunction with advertising that attacks competitors who use the term "raised without antibiotics." Sanderson says that "raised without antibiotics" is a meaningless statement because, Sanderson says, "all chickens must be cleared of antibiotics when they leave the farm." The message is that all chickens, including Sanderson's, are the same because they do not have any antibiotics.

46.     The likely reason Sanderson embarked on this ad campaign is because the government would not let it use the phrase "raised without antibiotics" on its packaging like its competitors do, because Sanderson routinely feeds antibiotics to its chickens.[11]

_____

[8] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.
[9] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 4, available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf pdf (last visited August 30, 2019).
[10] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.
[11] https://www.reuters.com/article/sanderson-farms-chickens-antibiotics/sanderson-farms-to-curb-human-antibiotic-use-in-chicken-supply-idUSL2N1Y512R

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

47.   In order to use the phrase "raised without antibiotics" on the label, the USDA requires that the source animals were not given antibiotics in their feed, water or by injection.

48.   Sanderson tries to get around this prohibition by trying to trick consumers into believing that its chickens are the same as those of its competitors.

49.   The phrase "raised without antibiotics" is important to consumers. A 2007 Consumer Reports survey found that six out of ten Americans would pay more for meat/poultry with the 'raised without antibiotics' label and 89% of consumers say all meat companies should be required to disclose the amount and type of antibiotics used.[12]

50.   As a result, in an end run around government regulation, Sanderson tries to trick consumers into believing that no chickens have antibiotics and the "raised by antibiotics" statement on the packaging of its competitors is meaningless verbiage and that its chickens are the same as those bearing the "raised without antibiotics" statement.

51.   This message is hammered home in several television and web commercials.

52.   In a "Bob and Dale" television commercial called "The Truth About Chicken: Supermarket" Sanderson states that by federal law all chickens must be cleared of antibiotics when they leave the farm and makes the point that all chickens in the supermarket are free of antibiotics, including Sanderson's. This commercial has over 90 million impressions on television and over six million views on YouTube and Facebook.

53.   Sanderson misleads consumers by stating: "Some chicken companies try to get you to spend more money by using labels like 'raised without antibiotics.' At Sanderson Farms, we don't believe in gimmicks like that." The commercial then shows a person piling a variety of chicken brands, selected while blindfolded, into a cart and saying, "no antibiotics to worry about here."

---

[12] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

CLASS ACTION COMPLAINT                                                    Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

54.     This statement is misleading because the message the commercial conveys is that no chickens (including Sanderson's) have antibiotics, and that the phrase "raised without antibiotics" is a "gimmick." Sanderson places itself on the same plane as its competitors who do not raise chickens with antibiotics. In reality, Sanderson uses antibiotics, while some of its key competitors do not.



55.     The thirty-second commercial ends by showing the above panel for four seconds.

56.     In another "Bob and Dale" commercial, "The Truth About Chicken: Mr. Floppy Arms" Sanderson makes the same points, calling its competitors' statement "raised without antibiotics": 'full of hot air and doesn't say much'; 'a trick to get you to pay more money' and 'a marketing gimmick." The thirty-second commercial ends with the same "100% Natural" panel and has over 100 million impressions on television.

57.     In "Marketing Guru," Bob and Dale ridicule a Madison Avenue ad executive who "likes to use the phrase 'raised without antibiotics.'" Bob and Dale state that the phrase was invented to make chicken sound safer but is meaningless. The thirty-second commercial ends with the same "100% Natural" panel, and has over 80 million impressions on television.

58.     In "Truth About Chicken: Labels" Sanderson calls the claim that competitors' chickens are raised without antibiotics a ruse to 'trick people and charge higher prices' and 'marketing speak'. Sanderson then says it feeds its chickens a healthy, balanced diet full of vitamins and "animal protein like they naturally eat" and notes that

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

13

"labels can be misleading." Sanderson omits any mention of antibiotics or pharmaceuticals in the feed.

59.    The deception regarding pharmaceutical use, including antibiotics, is also made in at least one 2016 video[13] titled, "How We Grow Our Chicken." In the video a Corporate Veterinarian describes Sanderson's hatchery process and states, "This single combined injection under the shell is the only time we inject antibiotics, leaving little opportunity for resistance to develop and no residues in the grown broilers weeks later when they go to market." Sanderson continues, "At no point are Sanderson Farms broilers ever injected with anything and there are never any antibiotic residues in our broilers when they go to market."

60.    This representation is misleading for several reasons: First, although Sanderson is careful to limit its statement to "injections," Sanderson operates its own feed mills, and routinely adds pharmaceuticals and antibiotics to the chickens' feed.

61.    Second, Sanderson contradicts itself regarding whether Sanderson injects broiler chickens or not, by stating that it injects antibiotics into the shells of the chickens' eggs, but not the chickens themselves.

62.    Sanderson gives the impression that the chickens are raised without using synthetic feed or injections by playing on the nuances in regulated and non-regulated terms such as "no antibiotics ever," "raised without antibiotics," or, Sanderson's claim of being "cleared" of antibiotics.

63.    One YouTube viewer expressed confusion by commenting, "'is the only time we use antibiotics'. I thought you guys said all Chickens in the US are supposedly antibiotic free or that you guys don't use them?"[14]

64.    Consumer surveys support the allegation that Sanderson's use of the

_____

[13] Available at https://www.youtube.com/watch?time_continue=275&v=Fghbb4lYaiU (last visited October 7, 2019).
[14] Id.

14

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

ubiquitous "100% Natural" representation misleads reasonable consumers into believing the chickens are raised without antibiotics.

65.    Over the past decade, Consumer Reports has performed several surveys on food marketing, including in 2018,[15] 2016,[16] 2015,[17] 2008[18] and 2007.[19]

66.    The 2015 survey found that when "natural" is used to describe meat and poultry:

     a. 57% of consumers think that no antibiotics or other drugs were used;

     b. 61% of consumers think that the animals' feed contained no artificial ingredients or colors and 59% think that there were no GMOs in the feed;

     c. 88% of consumers expect that meat with a "natural" label meant that the meat "came from an animal whose diet was natural and free of chemicals, drugs and other artificial ingredients."[20]

67.    Sanderson's other main competitors have product lines that are brought to market wholly without antibiotics and Sanderson's advertising misleads consumers into believing that Sanderson does too.

68.    Sanderson makes the same misrepresentation on its website. It represents its chicken as "100% Natural" on the homepage of its current website and states that its

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[15] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

[16] Consumer Reports National Research Center, "Food Labels Survey" (2016), available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).

[17] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), available at https://foodpolitics.com/wp-content/uploads/Consumer-Reports-Natural-Food-Labels-Survey-Report.pdf (last visited August 30, 2019).

[18] Consumer Reports National Research Center, "Food-Labeling Poll 2008" (2008), available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf (last visited August 30, 2019

[19] Consumer Reports National Research Center, "Food Labeling Poll" (2007), not available online.

[20] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.

CLASS ACTION COMPLAINT                                              Case No.

chicken is "nothing but the safest, most wholesome poultry, with nothing added.[21]

69.    The "Learn More" button on the homepage takes consumers to a current webpage devoted to its "100% Natural" representation.[22]

## 100%
# Natural

We believe that delicious, quality chicken should be able to stand on its own. Always. At Sanderson Farms, we pride ourselves in delivering nothing but the safest, most wholesome poultry, with nothing added. So you know what you're getting every time.

**Learn More    ›**

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

---

[21] *See* https://sandersonfarms.com/ (last visited August 29, 2019.)
[22] *See* https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 29, 2019).

16

Case No.

70.     This page states "There's Only Chicken In Our Chicken. Seriously."[23] and "No Additives Or Artificial Ingredients.  Not Ever.[24]



# No Additives
# Or Artificial
# Ingredients.
# Not Ever.

71.     Sanderson does not disclose its use of antibiotics or pharmaceuticals in the feed given to its chickens on the "Learn More" page.

72.     Elsewhere on its website, Sanderson also makes the following statements to further mislead consumers into thinking that Sanderson does not routinely use pharmaceuticals in raising the chickens:

   • That means no additives, no unpronounceable ingredients, nothing extra. Just 100% natural chicken that's healthy and a treat for your taste buds."[25]

   • "100% Natural. We firmly stand behind our commitment to keep things the way nature intended."[26]

_____

[23] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2018).
[24] *Id.*
[25] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2019).
[26] Available at https://sandersonfarms.com/?s=subscribe (last visited August 30, 2019).

17

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

• The Myth: The myth is, only chicken raised without antibiotics are safe to eat. The Truth: The truth is, none of the chicken you buy in the grocery store contains antibiotics.  By federal law, all chickens must be clear of antibiotics before they leave the farm.[27]

73.     In a video on its website, Sanderson touts the nutritional value of the chickens' "corn and soy-based diets"[28] but omits any mention of pharmaceuticals and antibiotics.



74.     In addition, Sanderson maintains on its website[29] a "Christmas TV Commercial" linked to YouTube using the same "100% Natural" tagline.

---

[27] https://sandersonfarms.com/chicken-myths/ (last visited September 5, 2019).
[28] https://www.youtube.com/watch?time_continue=80&v=Fghbb4lYaiU (last accessed September 5, 2019).
[29] Available at https://sandersonfarms.com/corporate/media-library/brand-assets/ (last visited August 30, 2019)



Merry Christmas and Happy Holidays from Sanderson Farms!

75.     Sanderson also represents that the Products are "100% Natural" on its current newsletter subscription webpage and further adds that: "We firmly stand behind our commitment to keep things the way nature intended."[30]



76.     Sanderson further emphasizes its representation of "100% Natural" message

---

[30] Available at https://sandersonfarms.com/?s=subscribe (last visited August 30, 2019).

CLASS ACTION COMPLAINT                                          Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

by sending a monthly 100% Natural Newsletter to over 600,000 annual readers across 42 different states.[31] Sanderson has continued to publish this newsletter in 2019.[32]

77.     Sanderson advertises the Products as "100% Natural" in print magazines all over the country.

78.     Sanderson advertises itself as "100% Natural" via radio.

79.     Sanderson Farms trucks advertise "100% Natural" on the sides.



80.     On Facebook Sanderson also repeats its statements that "raised without antibiotics" is a misleading statement:

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[31] *See* https://sandersonfarms.com/press-releases/sanderson-farms-awarded-twenty-public-relations-advertising-awards/ (last visited August 30, 2019).
[32] *See* https://sandersonfarms.com/blogs/section/100-natural-newsletter/ (last visited August 30, 2019).

CLASS ACTION COMPLAINT

Case No.



81.    All of these statements were made within the applicable statute of limitations, and many continue as of this filing.

**Allegations Concerning The Misrepresentation That The Chickens Are Raised Outdoors In A Natural Environment**

82.    Sanderson's representations would mislead a reasonable consumer into believing its chickens were raised in a natural environment and in a humane manner.

CLASS ACTION COMPLAINT                                    Case No.

83.     In addition to the "100% Natural" claims discussed *supra,* Sanderson, addressing animal welfare on its website, represents that "At Sanderson Farms, we believe in raising our chickens humanely to ensure their safety, nutrition, and overall health."



**Our Birds Come First**

At Sanderson Farms, we believe in raising our chickens humanely to ensure their safety, nutrition, and overall health.

84.     Sanderson reinforces this claim and the general false impression of high animal welfare standards with recent TV commercials of chickens being given pricey gifts from humans and chickens dining in restaurants, a TV commercial titled "Old MacGimmick,"[33] and images of chickens playing volleyball and sipping lemonade formerly on its website.

85.     On its website, Sanderson states that "The truth is, none of the chicken you buy in a store is raised in a cage. Chickens are raised in spacious, climate-controlled houses where they are free to eat, drink, and walk around all they want."[34]

86.     The houses are also described as "a comfortable, cage-free environment" where "our chickens live in a spacious, climate-controlled environment with unlimited access to food and water. The only time our chickens are caged is for their safety when they're being transported from the farm to the processing plant."[35]

_____

[33] Available at https://www.ispot.tv/ad/w10S/sanderson-farms-old-macgimmick?autoplay=1 (last visited August 30, 2019).
[34] https://sandersonfarms.com/chicken-myths/#4th (last accessed September 5, 2019).
[35] https://sandersonfarms.com/our-chickens/animal-welfare/ (last accessed September 5, 2019)

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

87.     According to a 2016 Consumer Reports survey,[36] a significant portion of consumers could be misled by Sanderson's statements regarding how it treats its birds. Specifically, 82% of consumers think that a "humanely raised" representation, such as the one Sanderson makes on its website, *supra ¶ 83*, means that the farm was inspected to verify this claim, 77% think the animals had adequate living space, 68% think the animals went outdoors, and 65% think the animals were raised in houses with clean air.[37]

88.     In addition, in 2007 Consumer Reports Natural Research Center reported that when the word "natural" is used to describe poultry, let alone Sanderson's claim of "100% Natural," 50% of consumers think that the animals went outdoors,[38] and 83% expect the "natural" label meant that the animal was raised in a natural environment.[39]

89.     Sanderson's statements on how it treats its chickens are false and misleading because in reality, Sanderson's chickens are raised in crowded barns (that also contribute to the growth of antibiotic resistant bacteria), and the chickens are raised in intensive confinement where they never get sunlight except when they are transported for slaughter.

90.     Sanderson's birds are confined in sheds with thousands of other birds, and the birds do not go outdoors into a natural environment because they are raised exclusively indoors.[40] As for the crowding and stocking density inside chicken sheds, an industry guide recommended 1.097 to 1.180 square feet per bird. The industry standard for a grow-

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[36] Food Labels Survey (2016), available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited September 3, 2019).
[37] *Id.* at 16.
[38] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 4, available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf pdf (last visited August 30, 2019).
[39] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.
[40] The industry standard, including Sanderson, is indoors. "Almost all the chickens eaten in the United States, and increasingly in the rest of the world, have been raised for decades in this manner: always indoors, always under artificial light, always eating only what the farmer supplies." Maryn McKenna, "Big Chicken," iBooks (2017), available at https://itunes.apple.com/us/book/big-chicken/id1217089199?mt=11.

23

Case No.

out house is 20,000 birds or more, with eight-tenths of a square foot per bird.[41] Sanderson recently reported that it lost 2.1 million birds in Hurricane Florence who were housed in 70 grow-out sheds; that is approximately 30,000 birds per shed,[42] even more than the 25,000 to 27,000 birds per shed identified by Sanderson's veterinary staff. A reasonable consumer would not think that sheds with approximately 25,000 to 30,000 birds with approximately one square foot per bird is "natural."

91.     Sanderson also subjects its birds to cruel, inhumane treatment. A recent 2016 investigation at the Kinston, N.C. hatchery farm has revealed the horrific conditions in which Sanderson's chicks are left to die.[43] The Animal Welfare Institute, based on the USDA inspection records, determined that the Sanderson chicken plant in Collins, Mississippi, was one of the nine worst chicken plants of three hundred surveyed for animal cruelty.[44] AWI also found that two Sanderson plants have been cited at least 20 times for not complying with humane handling standards[45] (the Palestine, Texas facility had 20 humane handling reports in 2015-2016, and the Kinston, North Carolina facility had 22 reports for 2011-2014).[46] The Palestine violations included, among others, excessive use of

[41] National Chicken Council, "Animal Welfare for Broiler Chickens", available at https://www.nationalchickencouncil.org/industry-issues/animal-welfare-for-broiler-chickens/#one (last visited September 3, 2019)
[42] Mother Jones, "These Photos of Submerged North Carolina Livestock Farms Are Devastating," https://www.motherjones.com/food/2018/09/these-photos-of-submerged-north-carolina-livestock-farms-are-devastating/ (last visited September 3, 2019); *see also* https://sandersonfarms.com/press-releases/sanderson-farms-inc-provides-update-hurricane-florence-damage/ (last visited September 3, 2019)
[43] PETA, "Chicks Dropped Live Into Mincer at Chicken Supplier of Kroger, Arby's," available at https://investigations.peta.org/chicken-supplier-kroger-arbys/ and https://www.peta.org/media/news-releases/exposed-chicks-left-suffer-die-chicken-meat-supplier-kroger-arbys/ (last visited September 3, 2019).
[44] *See* Animals 24-7, "Pilgrim's Pride & Case Farms have "worst chicken plants for animal cruelty," say Animal Welfare Institute & Farm Sanctuary," available at  https://www.animals24-7.org/2014/11/22/pilgrims-pride-case-farms-have-worst-chicken-plants-for-animal-cruelty-say-animal-welfare-institute-farm-sanctuary/ (last visited September 3, 2019).
[45] Animal Welfare Institute, "New Report Exposes Pattern of Animal Mistreatment in Some US Poultry Plants," available at https://awionline.org/press-releases/new-report-exposes-pattern-animal-mistreatment-some-us-poultry-plants (last visited September 3, 2019).
[46] Animal Welfare Institute, "The Welfare of Birds At Slaughter In The United States - 2017

24

force, improper sorting of "DOAs and live birds" and birds drowning in the scald tank. In 2016, a USDA inspector determined the plant's slaughtering process was "out of control" for the scald tank violations and noted that similar incidents had taken place before.[47]

**Allegations Concerning the Misrepresentation That There is No Evidence the Use of Antibiotics in Poultry Contributes To The Evolution of Antibiotic-Resistant Bacteria**

92.     Based on Sanderson's advertising, a reasonable consumer would believe Sanderson's "100% Natural" claim means that its chickens were raised in a manner that does not contribute to the development of antibiotic-resistant bacteria.

93.     As described *supra* ¶¶ 45-81, Sanderson goes to great lengths to conceal the fact that it uses pharmaceuticals and antibiotics in the feed.

94.      Coupled with the numerous representations that its chickens are "100% Natural," and its repeated statements to the effect that "raised without antibiotics" is a marketing gimmick to which no attention need be paid in the comedic Bob and Dale commercials, *supra* ¶¶ 52-58, Sanderson seeks to convince consumers that their concerns about the evolution of antibiotic-resistant bacteria are something to be laughed off.

95.     However, this is an important issue to consumers. According to the 2016 Consumer Reports survey, 65% of consumers are concerned that feeding antibiotics or other drugs to animals leads to antibiotic resistance bacteria,[48] and the 2018 survey showed that 77% of consumers were concerned that feeding antibiotics to farm animals would make drugs less effective for humans.[49] Of those, 43% were either "extremely" or "very"

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

Update", at 9, available at https://awionline.org/sites/default/files/uploads/documents/FA-AWI-Welfare-of-Birds-at-Slaughter-Update.pdf (last visited September 3, 2019).
[47] *Id*.
[48] Consumer Reports National Research Center, "Food Labels Survey" (2016), at 10, available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).
[49] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

CLASS ACTION COMPLAINT                                                    Case No.

concerned.

96.     Sanderson further downplays the risk of the spread of antibiotic-resistant bacteria by telling consumers "no antibiotics to worry about here," and "the truth is, none of the chicken you buy in the grocery store contains <u>antibiotics</u>. By federal law, all chickens must be clear of antibiotics before they leave the farm."[50]

97.     Sanderson's misrepresentations about the risks of the evolution of antibiotic-resistant bacteria stemming from agricultural use of antibiotics have been so egregious that a neutral third party, the Council of Better Business Bureaus, National Advertising Division (NAD), concluded on August 11, 2017 that key claims in Sanderson's advertising are misleading and that Sanderson should stop making those claims:

> NAD also determined that given the lack of any consensus in the scientific
> community over the safety of consuming meat from animals raised using
> antibiotics the advertiser [Sanderson] should discontinue from its
> advertising language that characterizes the 'raised without antibiotics'
> labels on competitive chicken producers' products as a 'marketing
> gimmick,' 'just a trick to get you to pay more money,' a claim that is 'full
> of hot air and doesn't say much,' 'a phrase [that marketers] invented to
> make chicken sound safer … and it doesn't mean much' and similar
> language.[51]

98.     However, Sanderson doubles down on its efforts to minimize the importance

---

[50] This statement appears on the homepage of Sanderson's website, available at https://sandersonfarms.com/ (last visited August 30, 2019); on the hyperlink "Truth About Chicken" that appears right below the statement, to debunk "myths" about antibiotics, available at https://sandersonfarms.com/chicken-myths/#2nd (last visited August 30, 2019); and in the video "How We Grow Our Chicken," available at https://sandersonfarms.com/our-chickens/animal-welfare/ (last visited August 30, 2019). Similar statements are repeated by Sanderson in its Bob and Dale TV advertisements.

[51] Advertising Self-Regulatory Council, Press Release, available at http://www.asrcreviews.org/nad-recommends-sanderson-farms-discontinue-claims-about-tricks-gimmicks-finds-company-can-support-certain-claims-referencing-federal-law/ (last visited August 30, 2019).

26

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    of "no antibiotics" statements which are valuable to consumers, but which it cannot use.

2        99.    Sanderson contends, "…we are aware of no credible scientific research that

3    supports the notion that the use of antibiotics that are important to human medicine when

4    treating chickens contributes to the development of human bacterial infections that are

5    resistant to treatment…."[52]

6        100.   Contrary to Sanderson's assertion of "no credible evidence" many studies

7    from credible sources have concluded that the use of antibiotics in livestock risks

8    rendering those antibiotics less useful to humans:

9        a.  The World Health Organization's 2014 report, titled Antimicrobial

10           Resistance: Global Report on Surveillance, stated, "[t]he classes of

11           antibiotics used in food-producing animals and in human drugs are mostly

12           the same, thereby increasing the risk of emergence and spread of resistant

13           bacteria, including those capable of causing infections in both animals and

14           humans. Food-producing animals are reservoirs of pathogens with the

15           potential to transfer resistance to humans."[53]

16       b.  The Centers for Disease Control and Prevention (CDC), U.S. Department of

17           Health and Human Services, summarized the threat to public health posed by

18           antibiotic use in agricultural operations, such as Sanderson Farms:

19           Antibiotics are widely used in food-producing animals, and according

20           to data published by FDA, there are more kilograms of antibiotics sold

21           in  the  United  States  for  food-producing  animals  than  for  people

22           [hyperlink  omitted].  This  use  contributes  to  the  emergence  of

23           antibiotic-resistant  bacteria  in  food-producing  animals.  Resistant

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[52] *See* https://sandersonfarms.com/policy-on-animal-welfare-and-antibiotic-use/ (last visited August 30, 2019)

[53] World Health Organization, Antimicrobial Resistance: Global Report on Surveillance at 59, available at http://apps.who.int/iris/bitstream/10665/112642/1/9789241564748_eng.pdf?ua=1 (last visited August 30, 2019) (internal citations omitted).

CLASS ACTION COMPLAINT                                                        Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

bacteria in food-producing animals are of particular concern because these animals serve as carriers. Resistant bacteria can contaminate the foods that come from those animals, and people who consume these foods can develop antibiotic-resistant infections. Antibiotics must be used judiciously in humans and animals because both uses contribute to not only the emergence, but also the persistence and spread of antibiotic-resistant bacteria.[54]

c.  According to the President's Council of Advisors on Science and Technology and its Report to the President on Combatting Antibiotic Resistance, "[s]ubstantial evidence demonstrates that use of antibiotics in animal agriculture promotes the development of antibiotic-resistant microbes in animals and that retail meat can be a source of microbes, including antibiotic-resistant microbes."[55]

d.  A 2017 review of the research to date concludes, "taken together, the data support what the scientific community, national governments, and international organizations such as the World Health Organization, the Food and Agricultural Organization of the United Nations, and the World Organization for the Health of Animals (OIE) have long recognized: antimicrobial use on farms clearly contributes to the emergence of resistance and poses a human public health risk."[56]

---

[54] Antibiotic Resistance Threats in the United States (2013), at 36-37, available at https://www.cdc.gov/drugresistance/pdf/ar-threats-2013-508.pdf (last visited August 30, 2019). The report also contains a glossary of terms related to antibiotic resistance.

[55] Report to the President on Combatting Antibiotic Resistance, Executive Office of the President of the United States (September 2014), at 50, available at https://obamawhitehouse.archives.gov/sites/default/files/microsites/ostp/PCAST/pcast_carb_repor t_sept2014.pdf (last visited August 30, 2019).

[56] Hoelzer et al., BMC Veterinary Research (2017) 13:211, "Antimicrobial drug use in food-producing animals and associated human health risks: what, and how strong, is the evidence?," at 35, available at https://link.springer.com/epdf/10.1186/s12917-017-1131-3?author_access_token= CbmecKjS4XscxgMn92-6rm_BpE1tBhCbnbw3BuzI2RMGFJmV0iy8Y06YFc2zc-

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

e.   Approximately 70% of all medically important antibiotics sold in the United States are for livestock use.[57]

f.   An estimated 23,000 deaths and more than 2 million illnesses have been caused by antibiotic-resistant bacteria, as estimated in 2013 by the CDC.[58]

g.   Children experience the ill-effects of antibiotic overuse in agriculture, most especially children younger than 5 years who become infected with antibiotic resistant bacteria.[59]

101.   Because Sanderson is aware of the studies cited above, Sanderson is aware of further research on the elevated risk of poultry workers carrying bacteria that is resistant to the same antibiotics that Sanderson admits to using.

102.   Indeed, "credible evidence" of antibiotic-resistant bacteria has been found on Sanderson's own chicken.[60]

**Allegations Concerning The Misrepresentation That The Products Do Not, and Cannot, Contain Unnatural Residues**

103.   A reasonable consumer believes that Sanderson's "100% Natural" representation means that the Products do not and cannot contain residues, such as pharmaceutical or biological residues.

104.   Specifically, Sanderson represents itself as "100% Natural" in multiple media and Sanderson asserts "no antibiotics to worry about here" in TV advertisements.

---

R5jN1X3crDybEToB_CzXCpRozpkwGnxg9ydolzETVy02VGkppjTRq1V0MGiTqrqtB8g2U114wU4Fb9RacLAHWYIA%3D%3D (last visited August 30, 2019).

[57] The Pew Charitable Trusts, *Antibiotics and Animal Agriculture: A Primer* (February 2018) https://www.pewtrusts.org/-/media/assets/2018/02/arp_antibiotics_and_animal_agriculture_a_primer.pdf

[58] *Id*. at 13.

[59] American Academy of Pediatrics, Technical Report (December 2015), "Nontherapeutic Use of Antimicrobial Agents in Animal Agriculture: Implications for Pediatrics," at e1673, available at https://pediatrics.aappublications.org/content/pediatrics/136/6/e1670.full.pdf  last visited August 30, 2019.

[60] National Resources Defense Council, *Sanderson Farms: Spreading Deception & Antibiotic Resistance*, available at https://www.nrdc.org/experts/sanderson-farms-spreading-deception-antibiotic-resistance (last visited August 30, 2019).

CLASS ACTION COMPLAINT

Case No.

On its website and other advertisements, Sanderson states: "There's Only Chicken In Our Chicken. Seriously."[61] *See e.g. supra* ¶ 70.

105.   Sanderson also misrepresents to consumers the level of protection that they can expect from the federal law regarding antibiotic residues. In one of the Bob and Dale TV advertisements,[62] Sanderson says, "The thing is, by federal law, all chickens must be cleared of antibiotics before they leave the farm . . . No antibiotics to worry about here." This statement is misleading because it omits the fact that USDA's own process allows for chickens with scientifically detectable antibiotic residues to be sold to consumers, as long as the detected residues stay below the regulatory "tolerance."

106.   Sanderson's representations regarding its chicken being free of residues are misleading because Sanderson's own laboratory testing indicates that pharmaceuticals Sanderson administers remain in some of the chickens after they leave the grow-out facilities and arrive at processing plants to be slaughtered. The pharmaceuticals that Sanderson administers include, but are not necessarily limited to, bacitracin, gentamicin, lincomycin, monensin, narasin, oxytetracycline, penicillin, rofenaid (Rofenaid is a brand name; the drug is sulfadimethoxine ormetprim), salinomycin, and virginiamycin.[63]

107.   Sanderson conducts its own laboratory testing for the residues of pharmaceuticals that Sanderson administers, and Sanderson's own testing indicates positive results for the pharmaceuticals that Sanderson administers to its flocks at various stages of their lives. These positive pharmaceutical results include, but are not necessarily limited to, decoquinate, monensin, narasin, nicarbazin, and salinomycin. Discovery may reveal additional residues.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[61] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2018).

[62] Available at https://www.ispot.tv/brands/A1Z/sanderson-farms (last visited August 30, 2019).

[63] Order, *Friends of the Earth et al. v. Sanderson Farms, Inc.*, No. 3:17-cv-03592 (RS), Dkt. 94 (N.D. Cal. Aug. 27, 2018).

## CLASS ALLEGATIONS

108.   Plaintiffs bring this suit as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all individuals and businesses throughout the nation who purchased one or more Products during the Class Period. Excluded from the Class is Defendant, any person, firm, trust, corporation, officer, director, or other individual or entity in which Defendant has a controlling interest or with which Defendant is related to or affiliated, and the legal representatives, agents, heirs, affiliates, successors-in-interest or assigns of any excluded party. Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for Class certification and/or the result of discovery.

109.   This lawsuit is properly brought as a class action for the following reasons:

110.   The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class includes thousands of persons geographically dispersed throughout the United States. The precise number and identities of Class members are unknown to Plaintiffs, but are known to Defendant or can be ascertained through discovery, using records of sales, and other information kept by Defendant or its agents.  Notice can be provided through sales and warranty records and publication.

111.   The Class is ascertainable, and there is a well-defined community of interest in the questions of law and/or fact alleged herein since the rights of each Class member were infringed or violated in similar fashion based upon Defendant's uniform misconduct.

112.   Questions of law or fact common to the Class exist as to Plaintiffs and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. Among these predominant common questions of law and/or fact are the following:

a. Whether the Products lived up to the representations that they were "100% Natural";

b. Whether the Products are "100% Natural" when the birds are given antibiotics and/or pharmaceuticals;

31

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

c. Whether the Products are "100% Natural" when they contain antibiotic or pharmaceutical residues;

d. Whether the Products are "100% Natural" when the poultry that the Products are derived from are raised exclusively indoors in crowded and dirty conditions;

e. Whether the Products are "100% Natural" when the process contributes to antibiotic resistant bacteria;

f. Whether a reasonable consumer would find the "100% Natural" representations material to their decision to purchase the Products;

g. Whether Defendant made any express or implied warranties in connection with the sale of the Products;

h. Whether Defendant breached any express or implied warranties;

i. Whether Defendant was unjustly enriched by selling the Products;

j. Whether Defendant violated applicable consumer protection laws by selling Products that did not live up to the "100% Natural" representations made by Defendant; and

k. The appropriate nature and measure of damages.

113. Plaintiffs' claims are typical of the claims of Class members. The injuries sustained by Plaintiffs and the Class flow, in each instance, from a common nucleus of operative facts based on the Defendant's uniform conduct as set forth above. The defenses, if any, that will be asserted against Plaintiffs' claims likely will be similar to the defenses that will be asserted, if any, against Class members' claims.

114. Plaintiffs will fairly and adequately protect the interests of Class members.

115. Plaintiffs have no interests materially adverse to or that irreconcilably conflict with the interests of Class members and have retained counsel with significant experience in handling class actions and other complex litigation, and who will vigorously prosecute this action.

116. A class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy, and individual joinder of all Class members is

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

32

impracticable, if not impossible, because there are at numerous Class members located throughout the United States. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the courts, protects the rights of each Class member and maximizes recovery to them.  Plaintiffs do not anticipate any difficulties in the management of this action as a class action.

## INJUNCTIVE CLASS RELIEF

117.   Rules 23(b)(1) and 23(b)(2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, the Defendant has engaged in conduct resulting in misleading consumers about the nature of their products and representing they are "100% Natural." Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.

118.   Plaintiff LaFosse does not know if she can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

119.   Plaintiff Lentz does not know if he can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

120.   Plaintiff Norman does not know if she can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

121.   The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), and the injunctive Class satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.   Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendant's Products have been purchased by thousands of people throughout the United States;

33

Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

b. <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

    i. Resolution of the issues presented in the 23(b)(3) class;

    ii. Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and advertising; and

    iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively advertise and market the Products as being 100% Natural.

c. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendant's Products based on the same Misrepresentations made to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class. Their claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights. Plaintiffs have no conflicts with the members of the Class and are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

122.   The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

34

Case No.

under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed the Products using the same misleading and deceptive advertising and marketing to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing to make the Misrepresentations and would be required to disclose to consumers the true nature of the Products. Plaintiffs would purchase the Products again if the Products were 100% Natural as represented.

## **FIRST CAUSE OF ACTION**

### **Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***

**(Brought by Mr. Lentz and Ms. LaFosse on behalf of California Class Members)**

123.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

124.   Plaintiffs have standing to pursue this claim under California's Unfair Competition Law ("UCL") because they suffered an injury-in-fact and lost money as a result of Defendant's unfair practices. Specifically, they expended more money in the transaction than they otherwise would have due to Defendant's misrepresentations and conduct.

125.   Claiming the Products are "100% Natural" and the other misrepresentations alleged herein constitutes a course of unfair conduct within the meaning of Cal. Civ. Code § 17200, *et seq*.

126.   Defendant's advertising failed to disclose that Products were not truly "100% Natural" and instead were done in a manner to deceive consumers about the true nature of the Products.

127.   The conduct of the Defendant harms the interests of consumers and market competition. There is no valid justification for Defendant's conduct.

128.   Defendant engaged in unlawful business acts and practices by breaching express warranties, and violating the Consumers Legal Remedies Act, Cal. Civ. Code §

CLASS ACTION COMPLAINT

Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1750, *et seq*.

129.   Defendant engaged in fraudulent business practices by knowingly making the Misrepresentations concerning the Products when they are not "100% Natural." Such practices are devoid of utility and outweighed by the gravity of harm to Plaintiffs and the Class who lost money or property by paying for the misrepresented product.

130.   Each of Defendant's unfair, unlawful and fraudulent practices enumerated above was the direct and proximate cause of financial injury to Plaintiffs and the Class. Defendant has unjustly benefitted as a result of its wrongful conduct. Plaintiffs and the Class members are accordingly entitled to have Defendant disgorge and restore to Plaintiffs and Class members all monies wrongfully obtained by Defendant as a result of the conduct as alleged herein.

131.   Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs seek an order of this Court enjoining Defendant from continuing to engage in unfair, unlawful and deceptive practices and any other act prohibited by law, including the acts set forth herein.

## **SECOND CAUSE OF ACTION**

### **Violation of Cal. Civ. Code § 1750, *et seq.***

### **(brought by Mr. Lentz on behalf of California Class Members)**

132.   Plaintiff Lentz repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

133.   The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendant's acts and practices because the Act covers transactions involving the sale of goods to consumers.

134.   Mr. Lentz and members of the Class are "consumers" within the meaning of section 1761(d) of the California Civil Code, and they engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the Products.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

36

135.    The Products are "goods" under Cal. Civ. Code § 1761(a).

136.    Defendant's unfair and deceptive business practices were intended to and did result in the sale of the Products.

137.    Defendant violated the CLRA by engaging in the following unfair and deceptive practices:

(1) Representing that the Products have characteristics, uses or benefits that they do not have, in violation of section 1770(a)(5);

(2) Representing that the Products are of a particular standard, quality, or grade when they are not, in violation of section 1770(a)(7); and

(3) Advertising the Products with the intent not to sell them as advertised, in violation of section 1770(a)(9).

138.    Defendant failed to disclose that the Products were not "100% Natural;" that they were routinely fed antibiotics; that the chickens were raised indoors in crowded conditions, that routine use of antibiotics can contribute to the evolution of antibiotic-resistant bacteria, and that the Products could contain residues from antibiotics and other pharmaceuticals.

139.    If Mr. Lentz and the Class members had known this fact, they would not have purchased the Products at all or purchased them at the prices they did.

140.    As a direct and proximate result of Defendant's conduct, Mr. Lentz and the Class suffered injury.

141.    Pursuant to California Civil Code § 1782(a), Mr. Lentz sent Defendant a CLRA notice letter via certified mail, return receipt requested, which was delivered on or around July 8, 2019, advising Defendant that it is in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

142.    As of the date of this filing, Defendant has not repaired, replaced or otherwise rectified the goods alleged to be in violation of § 1770.

143.    Accordingly, Mr. Lentz seek damages under the CLRA in an amount to be determined at trial.

CLASS ACTION COMPLAINT

Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**THIRD CAUSE OF ACTION**

**VIOLATION OF NORTH CAROLINA UNFAIR**

**AND DECEPTIVE TRADE PRACTICES ACT**

**(brought by Ms. Norman on behalf of North Carolina Subclass Members)**

144.    Plaintiff Marybeth Norman repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

145.    Sanderson violated the North Carolina Unfair and Deceptive Trade Practices Act (NCUDTPA) by representing in its advertising that the Products were "100% Natural" when they were not.

146.    Sanderson violated the NCUDTPA by advertising the Products as "100% Natural" with the intent not to sell them as advertised.

147.    Sanderson violated the NCUDTPA by omitting that it uses pharmaceuticals including antibiotics in the Products; that it raises the chickens in intensive indoor confinement; that use of antibiotics in the Products poses a public health issue; and that its Products have tested positive for unnatural residue.

148.    Sanderson intentionally and knowingly misrepresented that the Products were "100% Natural" and knew or should have known that its conduct violated the NCUDTPA.

149.    Sanderson owed Ms. Norman and the North Carolina Subclass a duty to disclose all material facts concerning the Products because it had exclusive knowledge about the raising, treatment, and marketing of the Products.

150.    Sanderson's misrepresentations and omissions caused damages to Ms. Norman and the North Carolina Subclass in any amount to be determined at trial.

151.    Ms. Norman and the North Carolina Subclass also seek treble damages, injunctive relief, costs and attorneys' fees and any other proper relief under N.C. Gen. Stat. § 75-16.

## FOURTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

### (On Behalf of Plaintiffs and All Class Members)

152.  Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

153.  Defendant provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products were "100% Natural."

154.  The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

155.  These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

156.  Plaintiffs and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

157.  Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiffs placed Defendant on notice of its breach in their CLRA letters, giving Defendant an opportunity to cure its breach, which it did not do.

158.  Defendant breached the express warranty because the Products are not "100% Natural" and cannot live up to Defendant's promises of such.

159.  Defendant's conduct has breached the express warranty laws of all states, including California and North Carolina.

160.  As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## FIFTH CAUSE OF ACTION

## COMMON LAW UNJUST ENRICHMENT

### (On Behalf of Plaintiffs and All Class Members)

161.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

162.    Plaintiffs, on behalf of themselves and consumers nationwide, bring a common law claim for unjust enrichment.

163.    Defendant's conduct violated, inter alia, state and federal law by producing, manufacturing, advertising, marketing, and selling the products while misrepresenting and omitting material facts.

164.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

165.    Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the "100% Natural" Products, which were not as Defendant represented them to be.

166.    Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

167.    Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury of all claims so triable in the above-referenced matter.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT

Case No.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection laws nationwide, including California consumer protection laws;

(c) Awarding monetary, compensatory, statutory and punitive damages;

(d) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.


Dated: October 11, 2019

NYE, STIRLING, HALE & MILLER, LLP

By: _____/S/_____
Jonathan D. Miller, Esq.
Alison M. Bernal, Esq.
33 W. Mission Street, Suite 201
Santa Barbara, CA 93101
Tel: (805) 963-2345
Fax: (805) 284-9590
jonathan@nshmlaw.com
alison@nshmlaw.com

ELSNER LAW & POLICY LLC

By: _____/S/_____
Gretchen Elsner, Esq.
*(To be admitted Pro Hac Vice)*
150 Washington Avenue, Suite 201
Santa Fe, NM 87501
Tel: (505) 303-0980
Fax: (505) 395-4501
gretchen@elsnerlaw.org

41

WALSH, PLLC

By: _____/S/_____
        Bonner C. Walsh, Esq.
        *(To be admitted Pro Hac Vice)*
        1561 Long Haul Road
        Grangeville, ID 83530
        Tel: (541) 359-2827
        Fax: (866) 503-8206
        bonner@walshpllc.com


THE SULTZER LAW GROUP, P.C.

By: _____/S/_____
        Adam Gonnelli, Esq.
        *(To be admitted Pro Hac Vice)*
        85 Civic Center Plaza, Suite 200
        Poughkeepsie, NY 12601
        Tel: (845) 483-7100
        Fax: (888) 749-7747
        gonnellia@thesultzerlawgroup.com

        *Attorneys for Plaintiff and the Class*

CLASS ACTION COMPLAINT

Case No.