1   Jonathan D. Miller (Bar No. 220848)
    jonathan@nshmlaw.com
2   Alison M. Bernal (Bar No. 264629)
    alison@nshmlaw.com
3   NYE, STIRLING, HALE & MILLER, LLP
4   33 West Mission Street, Suite 201
    Santa Barbara, California  93101
5   Telephone: (805) 963-2345
    Facsimile: (805) 284-9590
6

7   Attorneys for Plaintiff and the Class
8
    [Additional Counsel Listed on Signature Page]
9
                    UNITED STATES DISTRICT COURT
10
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12

13   DANIEL LENTZ, PAM La FOSSE,            CASE NO.:  19-cv-06570-RS
     MARYBETH NORMAN, SHARON
14   MANIER, STARLA McPEAK, LAQUITA
     HYATT, TODD HYATT, and JONICE          **FIRST AMENDED CLASS ACTION**
15   HYATT, individually on behalf of       **COMPLAINT**
     themselves and all others similarly situated,
16   and Does (1-100) on behalf of themselves
     and all others similarly situated,
17

18              Plaintiffs,

19        v.                                 **Jury Trial Demanded**

20   SANDERSON FARMS, INC.

21              Defendant.

22

23

24        Plaintiffs Pam La Fosse, Sharon Manier, Starla McPeak, Jonice Hyatt, Laquita

25   Hyatt, Todd Hyatt and Marybeth Norman ("Plaintiffs"), individually and on behalf of all

26   others similarly situated, by their attorneys, allege the following upon information and

27

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

                                        1

belief, except for those allegations pertaining to Plaintiffs, [1] which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This is a nationwide class action brought on behalf of all consumers who purchased Sanderson chicken products, as listed *infra* ¶ 35 (the "Products"), which Defendant Sanderson Farms, Inc. ("Sanderson") sold based on misleading representations in its advertising.

2.     Sanderson's advertising misleads consumers in four ways:

    a.  Sanderson's advertising misleads consumers into believing that Sanderson's chickens were not given antibiotics or other pharmaceuticals;

    b.  Sanderson's advertising misleads consumers into believing the chickens were raised in a natural environment;

    c.  Sanderson's advertising misleads consumers into believing there is no evidence that the use of antibiotics and other pharmaceuticals in poultry contributes to the evolution of antibiotic-resistant bacteria; and

    d.  Sanderson's advertising misleads consumers into believing the Products do not contain any antibiotic or pharmaceutical residue.

3.     However, the truth is that the feed Sanderson gives to its chickens contains antibiotics and pharmaceuticals; the chickens are raised indoors in crowded and dirty sheds, which is one reason why its use of antibiotics is necessary; there is extensive reliable evidence that the use of antibiotics in poultry contributes to antibiotic-resistant bacteria; and Sanderson's chickens have been found to contain antibiotic and pharmaceutical residue.

4.     Sanderson's advertising makes extensive use of the phrase "100% Natural,"

---

[1] Mr. Daniel Lentz has elected not to request appointment as a class representative, but remains a member of the class.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

to emphasize and support its misleading claims, in conjunction with assorted direct falsehoods, half-truths, and selective omissions concerning the four misrepresentations described above.

5.     Plaintiffs and reasonable consumers believe that "100% Natural" means that the chickens are not fed or injected with antibiotics or pharmaceuticals, and that accordingly, the chickens are not sold with antibiotics or pharmaceutical residue in them and that there is no danger of antibiotic use contributing to the development of antibiotic-resistant bacteria, and that the chickens are raised in a natural and humane environment.

6.     Having purchased Products sold with these misrepresentations, Plaintiffs and Class members suffered injury in fact, and a loss of money or property as a result of Defendant's conduct in advertising, marketing and selling the Products falsely claimed to be "100% Natural," in addition to the misrepresentation described above.  Sanderson has failed to remedy this harm and has earned, and continues to earn, substantial profit from selling the Products.

7.     Defendant's conduct violated and continues to violate consumer protection statutes and Sanderson's express warranties.  In addition, Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

8.     In addition, Plaintiffs seek injunctive relief requiring Sanderson to remove the misrepresentations and to make corrective and clarifying statements.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

10.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California, or has otherwise purposely availed itself of the markets in California through the promotion, advertising, marketing, and sale of the Products in California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendant does substantial business in this District; and (2) a substantial part of the events or omissions giving rise to these claims occurred in this District, and Defendant engaged in the extensive promotion, advertising, marketing, distribution, and sales of the Products at issue in this District.

## PARTIES

### Plaintiffs

### *Sharon Manier*

12.     Plaintiff Sharon Manier is a consumer who, at all relevant times hereto, was a resident of Riverside, California.

13.      Ms. Manier has seen flyers from Food 4 Less at least monthly over the past five years, many of which contain pictures of Sanderson chicken with the "100% Natural" representation similar (but not identical) to the pictures below:



NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

4



14.     On or about October 17, 2019 Ms. Manier consulted Sanderson's website in preparing to host a family dinner.  On that occasion, she viewed several pages on the website and saw various representations by Sanderson, including:



NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

5



# No Additives Or Artificial Ingredients. Not Ever.

15.     On or about October 17, 2019 Ms. Manier also watched the "Bob and Dale" commercials on the internet and, in addition to the discussions and representations about the chicken not containing antibiotics when it leaves the farm, saw the "100% Natural" panel at the end of the commercials:



Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

16.   Ms. Manier also consulted Sanderson's website and saw the above representations at other times but does not recall the exact dates she did so.

17.   Ms. Manier has bought Sanderson chicken every month for more than five years (including for the family dinner referenced above).  She purchased drumsticks, wings, breasts and thighs.

18.   Ms. Manier purchases the chicken monthly at Food 4 Less in Riverside, California.  She also purchased Sanderson chicken at Wal-Mart.

19.   Ms. Manier has always relied on Sanderson's "100% Natural" representation when making her purchase decisions.

20.   Ms. Manier has always believed, based on Sanderson's 100% Natural representations that Sanderson chickens have not been given antibiotics or pharmaceuticals.

21.   Ms. Manier has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens do not have antibiotics or pharmaceuticals in them when sold.

22.   Ms. Manier has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were not raised in a way that contributed to the development of bacteria that can resist antibiotics.

23.   Ms. Manier has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were not raised in crowded, unclean environments.

24.   Ms. Manier also relied on the statement on Sanderson's website "No Additives Or Artificial Ingredients. Not Ever."; the statement: "At Sanderson Farms we pride ourselves in delivering the safest, most wholesome poultry, with nothing added. So you know what you're getting every time."; and on the internet commercials, for her belief that the chickens are not fed or injected with antibiotics or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical residue in them; and that there is

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   no danger of Sanderson's antibiotic use contributing to the development of antibiotic-

2   resistant bacteria.

3       25.    Ms. Manier was deceived by Sanderson's misrepresentations and was

4   damaged because she purchased the chicken.  If Ms. Manier had known the truth about the

5   Sanderson chicken, she would not have bought it at all, or would not have paid as much as

6   she did for it.

7       ***Pam La Fosse***

8       26.    Plaintiff Pam La Fosse is a consumer who, at all times material hereto, was a

9   resident of San Bernardino County, California.

10       27.    Numerous times from 2015 to 2017 Ms. La Fosse saw the following image

11   on Sanderson's website:



We believe that delicious, quality chicken should be able
to stand on its own. Always. At Sanderson Farms, we
pride ourselves in delivering nothing but the safest, most
wholesome poultry, with nothing added. So you know
what you're getting every time.

**Learn More**

20       28.    Ms. La Fosse saw some of the "Bob and Dale" commercials, including the

21   following image at the end of the commercials, in 2016 and 2017:



NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

29.     From 2015 to 2017 Ms. La Fosse also saw circulars from Albertson's and Von's Market advertising Sanderson's chicken products that contained the pictures similar to the following "100% Natural" images:





30.     Ms. La Fosse has also seen Sanderson tractor-trailer rigs with the 100% NATURAL statement on the side but does not recall exactly when.  An example is below.



9

31.    Ms. La Fosse purchased boneless, skinless chicken breasts from Albertson's in Palm Springs, California and Von's Market in Yucca Valley, California approximately eight times in 2015 through 2017.

32.    Ms. La Fosse relied on the "100% Natural" statements in deciding to purchase Sanderson chicken.

33.    Ms. La Fosse has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens have not been given antibiotics or pharmaceuticals.

34.    Ms. La Fosse has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens do not have antibiotics or pharmaceuticals in them when sold.

35.    Ms. La Fosse has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were not raised in a way that contributed to the development of bacteria that can resist antibiotics.

36.    Ms. La Fosse has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were raised in a natural environment.

37.    Ms. La Fosse has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were treated humanely.

38.    Ms. La Fosse also relied on the statement on the website "At Sanderson Farms we pride ourselves in delivering the safest, most wholesome poultry, with noting added.  So you know what you're getting every time.";  and on the commercials, for her belief that the chickens are not fed or injected with antibiotics or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical residue in them; and that there is no danger of Sanderson's antibiotic use contributing to the development of antibiotic-resistant bacteria.

39.    Ms. La Fosse was deceived by Sanderson's misrepresentations and was damaged because she purchased the chicken.  If Ms. La Fosse had known the truth about

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

1 the Sanderson chicken, she would not have bought it at all, or would not have paid as

2 much as she did for it.

3     ***Starla McPeak***

4     40.    Plaintiff Starla McPeak is a consumer who, at all relevant times hereto, was

5 a resident of Texas.

6     41.    As far back as 2015 and numerous times thereafter, Ms. McPeak consulted

7 Sanderson's website. She read several pages on the website, including the following:



16     42.    Ms. McPeak also consulted Sanderson's website and saw the above

17 representations at other times but does not recall the exact dates she did so.

18     43.    Ms. McPeak has seen most of the "Bob and Dale" commercials on television

19 and on the internet beginning in 2016. Each time she saw the commercials she saw the

20 "100% Natural" panel at the end of the commercials:



NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

FIRST AMENDED CLASS ACTION COMPLAINT     Case No. 19-cv-06570-RS

1    44.    As far back as 2016 and on later occasions, Ms. McPeak saw a Sanderson

2    truck with the "100% Natural" phrase on the side similar to the one below:



45.    Ms. McPeak has bought Sanderson chicken every week for the past four

years. She purchased drumsticks, tenderloins, breasts fillets and thighs.

46.    Ms. McPeak purchases the chicken weekly and sometimes twice weekly at

H-E-B, a chain of grocery stores in Texas.

47.    Ms. McPeak has always relied on Sanderson's "100% Natural"

representation when making her purchase decisions.

48.    Ms. McPeak has always believed, based on Sanderson's 100% Natural

representations that Sanderson chickens have not been given antibiotics or

pharmaceuticals.

49.    Ms. McPeak has always believed, based on Sanderson's 100% Natural

representations, that Sanderson chickens do not have antibiotics or pharmaceuticals in

them when sold.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

12

50.     Ms. McPeak has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were not raised in a way that contributed to the development of bacteria that can resist antibiotics.

51.     Ms. McPeak has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were raised in a natural environment.

52.     Ms. McPeak has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were treated humanely.

53.     Ms. McPeak also relied on the statement on the website "We firmly stand behind our commitment to keep things the way nature intended." and on the "Bob and Dale" commercials for her belief that the chickens are not fed or injected with antibiotics or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical residue in them; that there is no danger of Sanderson's antibiotic use contributing to the development of antibiotic-resistant bacteria; and that the chickens are raised in a natural and humane way.

54.     Ms. McPeak was deceived by Sanderson's misrepresentations and was damaged because she purchased the chicken.  If Ms. McPeak had known the truth about the Sanderson chicken, she would not have bought it at all, or would not have paid as much as she did for it.

***Laquita Hyatt***

55.     Plaintiff Laquita Hyatt is a consumer who, at all relevant times hereto, was a resident of Texas.

56.     Ms. Hyatt consulted Sanderson's website multiple times in 2018 and 2019. She read several pages on the website, including the following:

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

13

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101





57.     In 2016 and 2017 Ms. Hyatt saw several of the Bob and Dale commercials and later saw some of them on the internet.  Each time she saw the commercials she saw the "100% Natural" panel at the end of the commercials:



14

58.     From 2016 to the present, Ms. Hyatt has seen flyers and circulars from H-E-B, which contain pictures of Sanderson chicken with the 100% Natural representation similar to the pictures below:





FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

59.     As far back as 2016 and on later occasions, Ms. Hyatt saw a Sanderson truck with the "100% Natural" phrase on the side similar to the one below:



60.     Ms. Hyatt has bought Sanderson chicken at least once a week for the past four years.  She purchased drumsticks, breasts and thighs.

61.     Ms. Hyatt purchases the chicken at H-E-B.

62.     Ms. Hyatt has always relied on Sanderson's "100% Natural" representation when making her purchase decisions.

63.     Ms. Hyatt has always believed, based on Sanderson's 100% Natural representations that Sanderson chickens have not been given antibiotics or pharmaceuticals.

64.     Ms. Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens do not have antibiotics or pharmaceuticals in them when sold.

65.     Ms. Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were not raised in a way that contributed to the development of bacteria that can resist antibiotics.

66.     Ms. Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were raised in a natural environment.

67.     Ms. Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were treated humanely.

68.     Ms. Hyatt also relied on the statement on the website, "At Sanderson Farms we pride ourselves in delivering the safest, most wholesome poultry, with nothing added. So you know what you're getting every time."; the statement "We firmly stand behind our commitment to keep things the way nature intended.; and on the "Bob and Dale" commercials, for her belief that the chickens are not fed or injected with antibiotics or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical residue in them; and that there is no danger of Sanderson's antibiotic use contributing to the development of antibiotic-resistant bacteria.

69.     Ms. Hyatt was deceived by Sanderson's misrepresentations and was damaged because she purchased the chicken.  If Ms. Hyatt had known the truth about the Sanderson chicken, she would not have bought it at all, or would not have paid as much as she did for it.

***Jonice Hyatt***

70.     Plaintiff Jonice Hyatt is a consumer who, at all relevant times hereto, was a resident of Arizona.

71.     Ms. Jonice Hyatt consulted Sanderson's website multiple times in 2018 and 2019.  In the Summer of 2018 and at other times, she read the following pages:

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101





72.    In 2018 Ms. Jonice Hyatt saw several of the Bob and Dale commercials and later saw some of them on the internet.  Each time she saw the commercials she saw the "100% Natural" panel at the end of the commercials:



FIRST AMENDED CLASS ACTION COMPLAINT        Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

73.     In 2018 to 2019, Ms. Jonice Hyatt saw flyers and circulars from Wal-Mart, which contain pictures of Sanderson chicken with the 100% Natural representation similar to the pictures below:





74.     Ms. Jonice Hyatt has bought Sanderson chicken at least once a week for the past four years until 2019.  She purchased drumsticks, breasts, wings and thighs.

75.     Ms. Jonice Hyatt purchased the chicken at Wal-Mart.

19

76.     Ms. Jonice Hyatt has always relied on Sanderson's "100% Natural" representation when making her purchase decisions.

77.     Ms. Jonice Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens have not been given antibiotics or pharmaceuticals.

78.     Ms. Jonice Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens do not have antibiotics or pharmaceuticals in them when sold.

79.     Ms. Jonice Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were raised in a natural environment.

80.     Ms. Jonice Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were treated humanely.

81.     Ms. Jonice Hyatt also relied on the statement on the website "At Sanderson Farms we pride ourselves in delivering the safest, most wholesome poultry, with nothing added.  So you know what you're getting every time.";  the statement "We firmly stand behind our commitment to keep things the way nature intended.; and on the "Bob and Dale" commercials, for her belief that the chickens are not fed or injected with antibiotics or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical residue in them; and that there is no danger of Sanderson's antibiotic use contributing to the development of antibiotic-resistant bacteria.

82.     Ms. Jonice Hyatt was deceived by Sanderson's misrepresentations and was damaged because she purchased the chicken.  If Ms. Jonice Hyatt had known the truth about the Sanderson chicken, she would not have bought it at all, or would not have paid as much as she did for it.

***Todd Hyatt***

83.     Plaintiff Todd Hyatt is a consumer who, at all relevant times hereto, was a resident of Utah.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

84. Mr. Hyatt has consulted Sanderson's website multiple times in 2018 and 2019. He read several pages on the website, including the following:





We believe that delicious, quality chicken should be able to stand on its own. Always. At Sanderson Farms, we pride ourselves in delivering nothing but the safest, most wholesome poultry, with nothing added. So you know what you're getting every time.

85. In 2016 and 2017 Mr. Hyatt saw several of the Bob and Dale commercials, and later saw some of them on the internet. Each time he saw the commercials he saw the "100% Natural" panel at the end of the commercials:

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS



86.    Mr. Hyatt has seen several of the "Bob and Dale" commercials online from 2017 to present. Each time he saw the commercials he saw the "100% Natural" panel at the end of the commercials:





FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

87.     In 2016 and on later occasions, Mr. Hyatt saw a Sanderson truck with the "100% Natural" phrase on the side similar to the one below:



88.     Mr. Hyatt has bought two to three pounds of Sanderson chicken every week for many years until 2019.  He purchased drumsticks, breasts and thighs.

89.     Mr. Hyatt purchases the chicken at Wal-Mart in Cedar Hills, Utah.

90.     Mr. Hyatt has always relied on Sanderson's "100% Natural" representation when making his purchase decisions.

91.     Mr. Hyatt has always believed, based on Sanderson's 100% Natural representations that Sanderson chickens have not been given antibiotics or pharmaceuticals.

92.     Mr. Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens do not have antibiotics or pharmaceuticals in them when sold.

FIRST AMENDED CLASS ACTION COMPLAINT                Case No. 19-cv-06570-RS

93.     Mr. Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were not raised in a way that contributed to the development of bacteria that can resist antibiotics.

94.     Mr. Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were raised in a natural environment.

95.     Mr. Hyatt has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were treated humanely.

96.     Mr. Hyatt also relied on the statement on the website "At Sanderson Farms we pride ourselves in delivering the safest, most wholesome poultry, with nothing added. So you know what you're getting every time.";  the statement "We firmly stand behind our commitment to keep things the way nature intended.; and on the "Bob and Dale" commercials, for his belief that the chickens are not fed or injected with antibiotics or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical residue in them; and that there is no danger of Sanderson's antibiotic use contributing to the development of antibiotic-resistant bacteria.

97.     Mr. Hyatt was deceived by Sanderson's misrepresentations and was damaged because he purchased the chicken.  If Mr. Hyatt had known the truth about the Sanderson chicken, he would not have bought it at all, or would not have paid as much as he did for it.

### *Marybeth Norman*

98.     Plaintiff Marybeth Norman is an individual consumer who, at all times material hereto, was a resident of Chatham County, North Carolina.

99.      Ms. Norman saw several of the "Bob and Dale" commercials on television in North Carolina in 2016 to 2017, including "Marketing Guru" and "Truth About Chicken- Labels."  She also saw "Bob and Dale" commercials online on later dates.

100.    Each time she saw the commercials she saw the "100% Natural" panel at the end of the commercials:

24



101.   Ms. Norman bought Sanderson chicken at least once a month between 2016 and 2018. She almost exclusively purchased chicken breasts.

102.   Ms. Norman purchased the chicken at Harris Teeter in Chapel Hill, North Carolina.

103.   While shopping at Harris Teeter, Ms. Norman specifically recalled that she had seen the Bob and Dale ads on television and that they said "100% Natural" at the end of the commercial.

104.   Ms. Norman has always relied on Sanderson's "100% Natural" representation when making her purchase decisions.

105.   Ms. Norman has always believed, based on Sanderson's 100% Natural representations that Sanderson chickens have not been given antibiotics or pharmaceuticals.

106.   Ms. Norman has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens do not have antibiotics or pharmaceuticals in them when sold.

107.   Ms. Norman has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were not raised in a way that contributed to the development of bacteria that can resist antibiotics.

108.   Ms. Norman has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were raised in a natural environment.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

109.   Ms. Norman has always believed, based on Sanderson's 100% Natural representations, that Sanderson chickens were treated humanely.

110.   Ms. Norman also relied on the "Bob and Dale" commercials for her belief that the chickens are not fed or injected with antibiotics or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical residue in them; and that there is no danger of Sanderson's antibiotic use contributing to the development of antibiotic-resistant bacteria.

111.   Ms. Norman was deceived by Sanderson's misrepresentations and was damaged because she purchased the chicken.  If Ms. Norman had known the truth about the Sanderson chicken, she would not have bought it at all, or would not have paid as much as she did for it.

**Defendant**

112.   Defendant Sanderson Farms, Inc. is a corporation organized and existing under the laws of the State of Mississippi. Its principal place of business and headquarters are maintained at 127 Flynt Road, Laurel, Mississippi. Sanderson is a publicly traded company with annual revenue routinely exceeding $3 billion. In Fiscal Year 2018 Sanderson raised and processed 4.5 billion pounds of dressed chickens as well as 2.6 million pounds of poultry it purchased and then processed.

113.   Sanderson sells its chicken through supermarket chains throughout the country and through other outlets.

114.   Defendant Sanderson disseminates the false representation that the Products are "100% Natural" in a widespread national advertising campaign, including on its website, in television, radio and internet commercials, in print advertising, and on trucks and billboards.

115.   In addition, Sanderson encourages resellers and supermarket chains to use images of the Products in their print and internet advertisements in order to "promote the

sale of Sanderson Farms 100% natural chicken."[2] The pictures below are examples of the type of advertising used in flyers in supermarkets:



NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

---

[2] *See* https://sandersonfarms.com/corporate/media-library/product-imagery/ (last visited August 29, 2019).

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101



28

FIRST AMENDED CLASS ACTION COMPLAINT

Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

116.   Defendant also labels the Products "100% Natural" but Plaintiffs challenge Sanderson's advertising, not the Products' labels.

117.   However, Plaintiffs do challenge the pictures of the Products, which include the labels, when they are used for purposes of advertising in flyers, circulars, print ads or other media.

118.   Currently, three poultry producers dominate the market, with Sanderson sitting in third place. Together the three producers control 90% of the market.

119.   Of the top three poultry producers, only Sanderson does not offer at least some poultry that has never been exposed to antibiotics. Instead, Sanderson uses its "100% Natural" claims and advertising to compete with the top two producers' lines of antibiotic-free poultry.

120.   Defendant Sanderson ships its Products to purchasers, resellers, and distributors in California and throughout the country.  Sanderson is responsible for the claims and advertisements for its Products, including on its website where it specifically discusses the "100% Natural" claims[3] and makes the representations discussed herein regarding the Products.

---

[3] *See* https://sandersonfarms.com/our-chickens/100-natural/ last visited August 27, 2019.

29

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

## FACTUAL BACKGROUND

2

### Sanderson Chicken Products

3      121.    Sanderson's Chicken Products, all of which are marketed as "100% Natural"

4 include the following:[4]

5      • Clipped Chicken Tenderloins

6      • Boneless Skinless Chicken Thigh Fillets

7      • Boneless Skinless Breast Strips

8      • Thinly Sliced Boneless Skinless Breast Fillets

9      • Boneless Skinless Breast Fillets

10      • Best of Boneless

11      • Boneless Skinless Breast Chunks

12      • Family Pack Whole Legs

13      • Whole Legs

14      • Family Pack Wingettes

15      • Wingettes

16      • Drumsticks & Thighs Combo

17      • Skinless Drumsticks

18      • Chicken Hearts

19      • Value Pack Chicken Gizzards

20      • Skinless Split Breast

21      • Family Pack Chicken Tenderloins

22      • Chicken Tenderloins

23      • Family Pack Boneless, Skinless Chicken Breast Fillets with Rib Meat

24      • Skinless Thighs

25      • Family Pack Thighs

26

27

[4] Discovery may indicate that additional products should be included within the scope of this Complaint, and Plaintiffs reserve the right to add those products.

28

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

- Thighs
- Value Pack Thighs
- Value Pack Leg Quarters
- Value Pack Wings
- Value Pack Drumsticks
- Value Pack Split Breasts
- Chicken Necks
- Wing Drumettes
- Family Pack Drumsticks
- Family Pack Thighs
- Family Pack Leg Quarters
- Whole Roasting Chicken
- Pick of the Chicken
- Family Pack Wings
- Family Pack Split Breasts
- Livers Chicken Gizzards
- Stripped Back Portions
- Wings
- Thighs
- Drumsticks
- Split Breasts
- Whole Cut-Up Chicken with Giblets and Neck
- Whole Frying Chicken (Whole Young Chicken).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

122.   An example of Sanderson's Chicken Products is reproduced here:[5]



123.   The Chicken Products are available for purchase under the Sanderson Farms brand at retail locations throughout California at stores such as Albertson's, Von's, Food 4 Less, Foods Co, and WinCo Foods,[6] and nationally with the Sanderson Farms logo in stores such as Wal-Mart, Kroger and some Kroger-owned chains, Safeway and Sam's Club.

124.   Sanderson markets and advertises its Chicken Products nationally, and seeks to reach consumers through commercials on television, print advertising, radio advertising, email newsletters, billboard advertising, and online marketing such as Facebook, YouTube, Instagram, Pinterest and its own website.

---

[5] Plaintiffs challenge the advertising of these products, not the product labels, except to the extent that they are used directly in advertising, *e.g.*, in flyers sent out by grocery stores and markets in keeping with Sanderson's advertising guidelines. For example, Sanderson encourages resellers to use images like the one in paragraph 15 in their print and internet advertisements in order to "promote the sale of Sanderson Farms 100% natural chicken." *See* https://sandersonfarms.com/corporate/media-library/product-imagery/ (last visited August 29, 2019).  Accordingly, Sanderson is responsible for the content of the flyers and circulars.
[6] Sanderson Farms, "Find A Store," http://www.sandersonfarms.com/store-finder/ (last visited August 29, 2019).

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

**Sanderson's Extensive National False and Misleading Advertising, Including Its "100% Natural" Representations**

125. In an extensive national advertising campaign, Sanderson misleads consumers into believing its chickens are not raised with pharmaceuticals or antibiotics; that the chickens are raised in a natural environment; that the use of antibiotics in poultry cannot promote the evolution of antibiotic-resistant bacteria; and that the Products cannot possibly have any antibiotic or pharmaceutical reside when sold.

126. In addition to specific false and misleading statements described below, Sanderson uses the phrase "100% Natural" in different contexts throughout its advertising to bolster these misrepresentations. Sanderson repeatedly makes false "100% Natural" representations in various media—television, website, social media, print magazines, radio advertising, billboards, trucks, etc.—when in fact its chicken production process and resulting products do not meet reasonable consumer expectations for products advertised as "100% Natural."

127. The use of the term "natural," let alone "100% Natural," is a powerful statement that is important to consumers.

128. A 2015 Consumer Reports[7] survey found that 62% of consumers purchase "natural" products, and that 87% of those purchasers are willing to pay more for products

---

[7] Consumer Reports, founded in 1936, is "an independent, nonprofit member organization that works side by side with consumers for truth, transparency, and fairness in the marketplace." It has six million members and tests tens of thousands of products annually to provide consumers with product reviews. Consumer Reports, "About Us", available at https://www.consumerreports.org/cro/about-us/what-we-do/index.html (last visited August 30, 2019). CR has a Survey Research department that conducts more than one hundred surveys per year. Its surveys are not commissioned or financed by industry. Available at https://www.consumerreports.org/cro/about-us/what-we-do/research-and-testing/index.html (last visited August 30, 2019). In October 2018, CR published a front page story on its monthly magazine titled, "What's Really in Your Meat?" Available at https://www.consumerreports.org/food-safety/are-banned-drugs-in-your-meat/ (last visited August 30, 2019). The article title for the online version is "Are Banned Drugs in Your Meat".

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

33

called "natural" that meet their expectations as to what "natural" means.[8] A 2016 survey found the number of consumers who purchase "natural" products to be as high as 73%.[9]

129.    According to surveys by Consumer Reports, the meaning of the term "natural," even isolated from Sanderson's many other specific misrepresentations, conveys a message entirely at odds with the reality of Sanderson's practices. For example, 88% of consumers expect that meat with a "natural" label meant that the meat "came from an animal whose diet was natural and free of chemicals, drugs and other artificial ingredients."[10]

130.    Further, 50% of consumers believe use of the term "natural" means that the animal went outdoors,[11] and 83% expect that the "natural" label means the animal was raised in a natural environment.[12]

**Allegations Concerning The Misrepresentation That The Chickens Are Not Raised With Antibiotics Or Pharmaceuticals**

131.    Sanderson misleads consumers into believing its chickens are raised without antibiotics or pharmaceuticals. Its carefully crafted message makes constant use of the "100% Natural" representation in conjunction with advertising that attacks competitors who use the term "raised without antibiotics." Sanderson says that "raised without antibiotics" is a meaningless statement because, Sanderson says, "all chickens must be

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[8] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 2, available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).
[9] Consumer Reports National Research Center, "Food Labels Survey" (2016), at 5, available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).
[10] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.
[11] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 4, available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf pdf (last visited August 30, 2019).
[12] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.

34

cleared of antibiotics when they leave the farm." The message is that all chickens, including Sanderson's, are the same because they do not have any antibiotics.

132.   The likely reason Sanderson embarked on this ad campaign is because the government would not let it use the phrase "raised without antibiotics" on its packaging like its competitors do, because Sanderson routinely feeds antibiotics to its chickens.[13]

133.   In order to use the phrase "raised without antibiotics" on the label, the USDA requires that the source animals were not given antibiotics in their feed, water or by injection.

134.   Sanderson tries to get around this prohibition by trying to trick consumers into believing that its chickens are the same as those of its competitors.

135.   The phrase "raised without antibiotics" is important to consumers. A 2007 Consumer Reports survey found that six out of ten Americans would pay more for meat/poultry with the 'raised without antibiotics' label and 89% of consumers say all meat companies should be required to disclose the amount and type of antibiotics used.[14]

136.   As a result, in an end run around government regulation, Sanderson tries to trick consumers into believing that no chicken contains antibiotics and the "raised without antibiotics" statement on the packaging of its competitors is meaningless verbiage and that its chickens are the same as those bearing the "raised without antibiotics" statement.

137.   This message is hammered home in several television and web commercials.

138.   In a "Bob and Dale" television commercial called "The Truth About Chicken: Supermarket" Sanderson states that by federal law all chickens must be cleared of antibiotics when they leave the farm and makes the point that all chickens in the

_____

[13] "Sanderson Farms to Curb Human Antibiotic Use in Chicken Supply" https://www.reuters.com/article/sanderson-farms-chickens-antibiotics/sanderson-farms-to-curb-human-antibiotic-use-in-chicken-supply-idUSL2N1Y512R (last visited March 22, 2020).

[14] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

supermarket are free of antibiotics, including Sanderson's. This commercial has over 90 million impressions on television and over six million views on YouTube and Facebook.

139.   Sanderson misleads consumers by stating: "Some chicken companies try to get you to spend more money by using labels like 'raised without antibiotics.' At Sanderson Farms, we don't believe in gimmicks like that." The commercial then shows a person piling a variety of chicken brands, selected while blindfolded, into a cart and saying, "no antibiotics to worry about here."

140.   This statement is misleading because the message the commercial conveys is that no chicken (including Sanderson's) contains antibiotics, and that the phrase "raised without antibiotics" is a "gimmick." Sanderson places itself on the same plane as its competitors who do not raise chickens with antibiotics. In reality, Sanderson uses antibiotics, while some of its key competitors do not.



141.   The thirty-second commercial ends by showing the above panel for four seconds.

142.   In another "Bob and Dale" commercial, "The Truth About Chicken: Mr. Floppy Arms" Sanderson makes the same points, calling its competitors' statement "raised without antibiotics": "full of hot air and doesn't say much"; "a trick to get you to pay more money" and "a marketing gimmick."  The thirty-second commercial ends with the same "100% Natural" panel and has over 100 million impressions on television.

143.   In "Marketing Guru," Bob and Dale ridicule a Madison Avenue ad executive who "likes to use the phrase 'raised without antibiotics.'" Bob and Dale state that the

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

36

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

phrase was invented to make chicken sound safer but is meaningless. The thirty-second commercial ends with the same "100% Natural" panel and has over 80 million impressions on television.

144.   In the commercial "Truth About Chicken: Labels," Sanderson calls the claim that competitors' chickens are raised without antibiotics a ruse to "trick people and charge higher prices" and "marketing speak." Sanderson then says it feeds its chickens a healthy, balanced diet full of vitamins and "animal protein like they naturally eat" and notes that "labels can be misleading." Sanderson does not disclose that it uses either antibiotics or pharmaceuticals in the feed.

145.   The deception regarding pharmaceutical use, including antibiotics, is also made in at least one 2016 video[15] titled, "How We Grow Our Chicken." In the video a Corporate Veterinarian describes Sanderson's hatchery process and states, "This single combined injection under the shell is the only time we inject antibiotics, leaving little opportunity for resistance to develop and no residues in the grown broilers weeks later when they go to market." Sanderson continues, "At no point are Sanderson Farms broilers ever injected with anything and there are never any antibiotic residues in our broilers when they go to market."

146.   This representation is misleading for several reasons: First, although Sanderson is careful to limit its statement to "injections," Sanderson operates its own feed mills, and routinely adds pharmaceuticals and antibiotics to the chickens' feed.

147.   Second, Sanderson contradicts itself regarding whether Sanderson injects broiler chickens or not, by stating that it injects antibiotics into the shells of the chickens' eggs, but not the chickens themselves.

148.   Sanderson gives the impression that the chickens are raised without using synthetic feed or injections by playing on the nuances in regulated and unregulated terms

---

[15] Available at https://www.youtube.com/watch?time_continue=275&v=Fghbb4lYaiU (last visited October 7, 2019).

37

such as "no antibiotics ever," "raised without antibiotics," and Sanderson's claim of being "cleared" of antibiotics.

149.   One YouTube viewer expressed confusion by commenting, "'is the only time we use antibiotics'. I thought you guys said all Chickens in the US are supposedly antibiotic free or that you guys don't use them?"[16]

150.   Consumer surveys support the allegation that Sanderson's use of the ubiquitous "100% Natural" representation misleads reasonable consumers into believing the chickens are raised without antibiotics.

151.   Consumer Reports has performed several surveys on food marketing, including in 2007,[17] 2008,[18] 2015,[19] 2016,[20] and 2018.[21]

152.   The 2015 survey found that when "natural" is used to describe meat and poultry:

   a. 57% of consumers think that no antibiotics or other drugs were used;

   b. 61% of consumers think that the animals' feed contained no artificial ingredients or colors and 59% think that there were no GMOs in the feed;

   c. 88% of consumers expect that meat with a "natural" label meant that the meat "came from an animal whose diet was natural and free of chemicals,

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[16] *Id.*

[17] Consumer Reports National Research Center, "Food Labeling Poll" (2007), not available online.

[18] Consumer Reports National Research Center, "Food-Labeling Poll 2008" (2008), available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf (last visited August 30, 2019)

[19] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), available at https://foodpolitics.com/wp-content/uploads/Consumer-Reports-Natural-Food-Labels-Survey-Report.pdf (last visited August 30, 2019).

[20] Consumer Reports National Research Center, "Food Labels Survey" (2016), available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).

[21] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

1          drugs and other artificial ingredients."[22]

2          153.   Sanderson's other main competitors have product lines that are brought to

3    market wholly without antibiotics and Sanderson's advertising misleads consumers into

4    believing that Sanderson follows the same practices.

5          154.   Sanderson makes the same misrepresentation on its website. It represents its

6    chicken as "100% Natural" on the homepage of its current website and states that its

7    chicken is "nothing but the safest, most wholesome poultry, with nothing added."[23]

8          155.   The "Learn More" button on the homepage takes consumers to a current

9    webpage devoted to its "100% Natural" representation.[24]

10

11

12

13

14

15

16

17

18



_100%_
**Natural**

We believe that delicious, quality chicken should be able
to stand on its own. Always. At Sanderson Farms, we
pride ourselves in delivering nothing but the safest, most
wholesome poultry, with nothing added. So you know
what you're getting every time.

**Learn More ›**

19

20

21

22

23

24

25

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

26   [22] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available
27   online.
     [23] _See_ https://sandersonfarms.com/ (last visited August 29, 2019).
28   [24] _See_ https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 29, 2019).

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

156.   This page states "There's Only Chicken In Our Chicken. Seriously."[25] and "No Additives Or Artificial Ingredients.  Not Ever.[26]



# No Additives
# Or Artificial
# Ingredients.
# Not Ever.

157.   Sanderson does not disclose its use of antibiotics or pharmaceuticals in the feed given to its chickens on the "Learn More" page.

158.   Elsewhere on its website, Sanderson also makes the following statements to further mislead consumers into thinking that Sanderson does not routinely use pharmaceuticals in raising the chickens:

- "That means no additives, no unpronounceable ingredients, nothing extra. Just 100% natural chicken that's healthy and a treat for your taste buds."[27]

- "100% Natural. We firmly stand behind our commitment to keep things the way nature intended."[28]

---

[25] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2018).
[26] *Id.*
[27] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2019).
[28] Available at https://sandersonfarms.com/?s=subscribe (last visited August 30, 2019).

40

1    • "The Myth: The myth is, only chicken raised without antibiotics are

2    safe to eat.  The Truth: The truth is, none of the chicken you buy in the grocery

3    store contains antibiotics.  By federal law, all chickens must be clear of

4    antibiotics before they leave the farm."[29]

5    159.    In a video on its website, Sanderson touts the nutritional value of the

6    chickens' "corn and soy-based diets"[30] but omits any mention of pharmaceuticals and

7    antibiotics.



21    160.    In addition, Sanderson maintains on its website[31] a "Christmas TV

22    Commercial" linked to YouTube using the same "100% Natural" tagline.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[29] https://sandersonfarms.com/chicken-myths/ (last visited September 5, 2019).
[30] https://www.youtube.com/watch?time_continue=80&v=Fghbb4lYaiU (last accessed September 5, 2019).
[31] Available at https://sandersonfarms.com/corporate/media-library/brand-assets/ (last visited August 30, 2019)

41



Merry Christmas and Happy Holidays from Sanderson Farms!

161.   Sanderson also represents that the Products are "100% Natural" on its current newsletter subscription webpage and further adds that: "We firmly stand behind our commitment to keep things the way nature intended."[32]



---

[32] Available at https://sandersonfarms.com/?s=subscribe (last visited August 30, 2019).

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

162.   Sanderson further emphasizes its representation of "100% Natural" message by sending a monthly 100% Natural Newsletter to over 600,000 annual readers across 42 different states.[33] Sanderson has continued to publish this newsletter in 2020.[34]

163.   Sanderson advertises the Products as "100% Natural" in print magazines across the country.

164.   Sanderson advertises itself as "100% Natural" via radio.

165.   Sanderson Farms trucks advertise "100% Natural" on the sides:



166.   In another Facebook post Sanderson also repeats its statements that "raised without antibiotics" is a misleading statement:

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

---

[33] *See* https://sandersonfarms.com/press-releases/sanderson-farms-awarded-twenty-public-relations-advertising-awards/ (last visited August 30, 2019).
[34] *See* https://sandersonfarms.com/blogs/section/100-natural-newsletter/ (last visited March 21, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT                Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101





167.   All of these statements were made within the applicable statute of limitations, and many continue as of this filing.

**Allegations Concerning The Misrepresentation That The Chickens Are Raised Outdoors In A Natural Environment**

168.   Sanderson's representations would mislead a reasonable consumer into believing its chickens were raised in a natural environment and in a humane manner.

169.   In addition to the "100% Natural" claims discussed *supra,* Sanderson, addressing animal welfare on its website, represents that "At Sanderson Farms, we believe in raising our chickens humanely to ensure their safety, nutrition, and overall health."

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS



## Our Birds Come First

At Sanderson Farms, we believe in raising our chickens humanely to ensure their safety, nutrition, and overall health.

170.    Sanderson reinforces this claim and the general false impression of high animal welfare standards with recent TV commercials of chickens being given pricey gifts from humans and chickens dining in restaurants, a TV commercial titled "Old MacGimmick,"[35] and in the past, images of chickens playing volleyball and sipping lemonade.

171.    On its website, Sanderson states that "The truth is, none of the chicken you buy in a store is raised in a cage. Chickens are raised in spacious, climate-controlled houses where they are free to eat, drink, and walk around all they want."[36]

172.    The houses are also described as "a comfortable, cage-free environment" where "our chickens live in a spacious, climate-controlled environment with unlimited access to food and water. The only time our chickens are caged is for their safety when they're being transported from the farm to the processing plant."[37]

173.    According to a 2016 Consumer Reports survey,[38] a significant portion of consumers would be misled by Sanderson's statements regarding how it treats its birds.

---

[35] Available at https://www.ispot.tv/ad/w10S/sanderson-farms-old-macgimmick?autoplay=1 (last visited August 30, 2019).
[36] https://sandersonfarms.com/chicken-myths/#4th (last accessed September 5, 2019).
[37] https://sandersonfarms.com/our-chickens/animal-welfare/ (last accessed September 5, 2019)
[38] Food Labels Survey (2016), available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited September 3, 2019).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Specifically, 82% of consumers think that a "humanely raised" representation, such as the one Sanderson makes on its website, *supra* ¶ 83, means that the farm was inspected to verify this claim, 77% think the animals had adequate living space, 68% think the animals went outdoors, and 65% think the animals were raised in houses with clean air.[39]

174.   In addition, in 2007 Consumer Reports Natural Research Center reported that when the word "natural" is used to describe poultry, let alone Sanderson's claim of "100% Natural," 50% of consumers think that the animals went outdoors,[40] and 83% expect the "natural" label meant that the animal was raised in a natural environment.[41]

175.   Sanderson's statements on how it treats its chickens are false and misleading because in reality, Sanderson's chickens are raised in crowded barns (that also contribute to the growth of antibiotic resistant bacteria), and the chickens are raised in intensive confinement, only indoors,[42] where they never get sunlight except when they are transported for slaughter.

176.   As for the crowding and stocking density inside chicken sheds, an industry guide recommended 1.097 to 1.180 square feet per bird. The industry standard for a grow-out house is 20,000 birds or more, with eight-tenths of a square foot per bird.[43] Sanderson recently reported that it lost 2.1 million birds in Hurricane Florence who were housed in 70

---

[39] *Id.* at 16.

[40] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 4, available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf pdf (last visited August 30, 2019).

[41] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.

[42] The industry standard, including Sanderson, is indoors. "Almost all the chickens eaten in the United States, and increasingly in the rest of the world, have been raised for decades in this manner: always indoors, always under artificial light, always eating only what the farmer supplies." Maryn McKenna, "Big Chicken," iBooks (2017), available at https://itunes.apple.com/us/book/big-chicken/id1217089199?mt=11.

[43] National Chicken Council, "Animal Welfare for Broiler Chickens", available at https://www.nationalchickencouncil.org/industry-issues/animal-welfare-for-broiler-chickens/#one (last visited September 3, 2019)

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

FIRST AMENDED CLASS ACTION COMPLAINT                  Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

grow-out sheds; that is approximately 30,000 birds per shed,[44] even more than the 25,000 to 27,000 birds per shed identified by Sanderson's veterinary staff. A reasonable consumer would not think that sheds with approximately 25,000 to 30,000 birds with approximately one square foot per bird is "natural."

177.    Sanderson also subjects its birds to cruel, inhumane treatment. A 2016 investigation at the Kinston, N.C. hatchery farm has revealed the horrific conditions in which Sanderson's chicks are left to die.[45] The Animal Welfare Institute, based on the USDA inspection records, determined that the Sanderson chicken plant in Collins, Mississippi, was one of the nine worst chicken plants of three hundred surveyed for animal cruelty.[46] AWI also found that two Sanderson plants have been cited at least 20 times for not complying with humane handling standards[47] (the Palestine, Texas facility had 20 humane handling reports in 2015-2016, and the Kinston, North Carolina facility had 22 reports for 2011-2014).[48] The Palestine violations included, among others, excessive use of force, improper sorting of "DOAs and live birds" and birds drowning in the scald tank. In 2016, a USDA inspector determined the plant's slaughtering process was "out of control" for the

---

[44] Mother Jones, "These Photos of Submerged North Carolina Livestock Farms Are Devastating," https://www.motherjones.com/food/2018/09/these-photos-of-submerged-north-carolina-livestock-farms-are-devastating/ (last visited September 3, 2019); *see also* https://sandersonfarms.com/press-releases/sanderson-farms-inc-provides-update-hurricane-florence-damage/ (last visited September 3, 2019)

[45] PETA, "Chicks Dropped Live Into Mincer at Chicken Supplier of Kroger, Arby's," available at https://investigations.peta.org/chicken-supplier-kroger-arbys/ and https://www.peta.org/media/news-releases/exposed-chicks-left-suffer-die-chicken-meat-supplier-kroger-arbys/ (last visited September 3, 2019).

[46] *See* Animals 24-7, "Pilgrim's Pride & Case Farms have "worst chicken plants for animal cruelty," say Animal Welfare Institute & Farm Sanctuary," available at https://www.animals24-7.org/2014/11/22/pilgrims-pride-case-farms-have-worst-chicken-plants-for-animal-cruelty-say-animal-welfare-institute-farm-sanctuary/ (last visited September 3, 2019).

[47] Animal Welfare Institute, "New Report Exposes Pattern of Animal Mistreatment in Some US Poultry Plants," available at https://awionline.org/press-releases/new-report-exposes-pattern-animal-mistreatment-some-us-poultry-plants (last visited September 3, 2019).

[48] Animal Welfare Institute, "The Welfare of Birds At Slaughter In The United States - 2017 Update", at 9, available at https://awionline.org/sites/default/files/uploads/documents/FA-AWI-Welfare-of-Birds-at-Slaughter-Update.pdf (last visited September 3, 2019).

47

scald tank violations and noted that similar incidents had taken place before.[49]

**Allegations Concerning the Misrepresentation That There is No Evidence the Use of Antibiotics in Poultry Contributes To The Evolution of Antibiotic-Resistant Bacteria**

178.   Based on Sanderson's advertising, a reasonable consumer would believe Sanderson's "100% Natural" claim means that its chickens were raised in a manner that does not contribute to the development of antibiotic-resistant bacteria.

179.   As described *supra* ¶¶ 45-81, Sanderson goes to great lengths to conceal the fact that it uses pharmaceuticals and antibiotics in the feed.

180.    Coupled with the numerous representations that its chickens are "100% Natural," and its repeated statements to the effect that "raised without antibiotics" is a marketing gimmick to which no attention need be paid in the comedic Bob and Dale commercials, *supra* ¶¶ 52-58, Sanderson seeks to convince consumers that their concerns about the evolution of antibiotic-resistant bacteria are something to be laughed off.

181.   However, this is an important issue to consumers. According to the 2016 Consumer Reports survey, 65% of consumers are concerned that feeding antibiotics or other drugs to animals leads to antibiotic resistant bacteria,[50] and the 2018 survey showed that 77% of consumers were concerned that feeding antibiotics to farm animals would make drugs less effective for humans.[51] Of those, 43% were either "extremely" or "very" concerned.

182.    Sanderson further downplays the risk of the spread of antibiotic-resistant bacteria by telling consumers "no antibiotics to worry about here," and "the truth is, none

---

[49] *Id.*

[50] Consumer Reports National Research Center, "Food Labels Survey" (2016), at 10, available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).

[51] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

FIRST AMENDED CLASS ACTION COMPLAINT                                    Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

of the chicken you buy in the grocery store contains <u>antibiotics</u>. By federal law, all chickens must be clear of antibiotics before they leave the farm."[52]

183.    Sanderson's misrepresentations about the risks of the evolution of antibiotic-resistant bacteria stemming from agricultural use of antibiotics have been so egregious that a neutral third party, the Council of Better Business Bureaus, National Advertising Division (NAD), concluded on August 11, 2017 that key claims in Sanderson's advertising are misleading and that Sanderson should stop making those claims:

> NAD also determined that given the lack of any consensus in the scientific community over the safety of consuming meat from animals raised using antibiotics the advertiser [Sanderson] should discontinue from its advertising language that characterizes the 'raised without antibiotics' labels on competitive chicken producers' products as a 'marketing gimmick,' 'just a trick to get you to pay more money,' a claim that is 'full of hot air and doesn't say much,' 'a phrase [that marketers] invented to make chicken sound safer … and it doesn't mean much' and similar language.[53]

184.    However, Sanderson doubles down on its efforts to minimize the importance of "no antibiotics" statements which are valuable to consumers, but which Sanderson is not lawfully allowed to use.

185.    Sanderson contends, "…we are aware of no credible scientific research that

---

[52] This statement appears on the homepage of Sanderson's website, available at https://sandersonfarms.com/ (last visited August 30, 2019); on the hyperlink "Truth About Chicken" that appears right below the statement, to debunk "myths" about antibiotics, available at https://sandersonfarms.com/chicken-myths/#2nd (last visited August 30, 2019); and in the video "How We Grow Our Chicken," available at https://sandersonfarms.com/our-chickens/animal-welfare/ (last visited August 30, 2019). Similar statements are repeated by Sanderson in its Bob and Dale TV advertisements.
[53] Advertising Self-Regulatory Council, Press Release, available at http://www.asrcreviews.org/nad-recommends-sanderson-farms-discontinue-claims-about-tricks-gimmicks-finds-company-can-support-certain-claims-referencing-federal-law/ (last visited August 30, 2019).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

49

supports the notion that the use of antibiotics that are important to human medicine when treating chickens contributes to the development of human bacterial infections that are resistant to treatment…."[54]

186.   Contrary to Sanderson's assertion of "no credible evidence" many studies from credible sources have concluded that the use of antibiotics in livestock risks rendering those antibiotics less useful to humans:

    a.   The World Health Organization's 2014 report, titled Antimicrobial Resistance: Global Report on Surveillance, stated, "[t]he classes of antibiotics used in food-producing animals and in human drugs are mostly the same, thereby increasing the risk of emergence and spread of resistant bacteria, including those capable of causing infections in both animals and humans. Food-producing animals are reservoirs of pathogens with the potential to transfer resistance to humans."[55]

    b.   The Centers for Disease Control and Prevention (CDC), U.S. Department of Health and Human Services, summarized the threat to public health posed by antibiotic use in agricultural operations, such as Sanderson Farms:

Antibiotics are widely used in food-producing animals, and according to data published by FDA, there are more kilograms of antibiotics sold in the United States for food-producing animals than for people [hyperlink omitted]. This use contributes to the emergence of antibiotic-resistant bacteria in food-producing animals. Resistant bacteria in food-producing animals are of particular concern because these animals serve as carriers. Resistant bacteria can contaminate the

[54] *See* https://sandersonfarms.com/policy-on-animal-welfare-and-antibiotic-use/ (last visited August 30, 2019)

[55] World Health Organization, Antimicrobial Resistance: Global Report on Surveillance at 59, available at http://apps.who.int/iris/bitstream/10665/112642/1/9789241564748_eng.pdf?ua=1 (last visited August 30, 2019) (internal citations omitted).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

50

    Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

foods that come from those animals, and people who consume these foods can develop antibiotic-resistant infections. Antibiotics must be used judiciously in humans and animals because both uses contribute to not only the emergence, but also the persistence and spread of antibiotic-resistant bacteria.[56]

c. According to the President's Council of Advisors on Science and Technology and its Report to the President on Combatting Antibiotic Resistance, "[s]ubstantial evidence demonstrates that use of antibiotics in animal agriculture promotes the development of antibiotic-resistant microbes in animals and that retail meat can be a source of microbes, including antibiotic-resistant microbes."[57]

d. A 2017 review of the research to date concludes, "taken together, the data support what the scientific community, national governments, and international organizations such as the World Health Organization, the Food and Agricultural Organization of the United Nations, and the World Organization for the Health of Animals (OIE) have long recognized: antimicrobial use on farms clearly contributes to the emergence of resistance and poses a human public health risk."[58]

---

[56] Antibiotic Resistance Threats in the United States (2013), at 36-37, available at https://www.cdc.gov/drugresistance/pdf/ar-threats-2013-508.pdf (last visited August 30, 2019). The report also contains a glossary of terms related to antibiotic resistance.
[57] Report to the President on Combatting Antibiotic Resistance, Executive Office of the President of the United States (September 2014), at 50, available at https://obamawhitehouse.archives.gov/sites/default/files/microsites/ostp/PCAST/pcast_carb_report_sept2014.pdf (last visited August 30, 2019).
[58] Hoelzer et al., BMC Veterinary Research (2017) 13:211, "Antimicrobial drug use in food-producing animals and associated human health risks: what, and how strong, is the evidence?," at 35, available at https://link.springer.com/epdf/10.1186/s12917-017-1131-3?author_access_token=CbmecKjS4XscxgMn92-6rm_BpE1tBhCbnbw3BuzI2RMGFJmV0iy8Y06YFc2zc-R5jN1X3crDybEToB_CzXCpRozpkwGnxg9ydolzETVy02VGkppjTRq1V0MGiTqrqtB8g2U114wU4Fb9RacLAHWYIA%3D%3D (last visited August 30, 2019).

FIRST AMENDED CLASS ACTION COMPLAINT        Case No. 19-cv-06570-RS

e.   Approximately 70% of all medically important antibiotics sold in the United States are for livestock use.[59]

f.   An estimated 23,000 deaths and more than 2 million illnesses have been caused by antibiotic-resistant bacteria, as estimated in 2013 by the CDC.[60]

g.   Children experience the ill-effects of antibiotic overuse in agriculture, most especially children younger than 5 years who become infected with antibiotic resistant bacteria.[61]

187.   Because Sanderson is aware of the studies cited above, Sanderson is aware of further research on the elevated risk of poultry workers carrying bacteria that is resistant to the same antibiotics that Sanderson admits to using.

188.   Indeed, "credible evidence" of antibiotic-resistant bacteria has been found on Sanderson's own chicken.[62]

## Allegations Concerning The Misrepresentation That The Products Do Not, and Cannot, Contain Unnatural Residues

189.   A reasonable consumer believes that Sanderson's "100% Natural" representation means that the Products do not and cannot contain residues, such as pharmaceutical or biological residues.

190.   Specifically, Sanderson represents itself as "100% Natural" in multiple media and Sanderson asserts "no antibiotics to worry about here" in TV advertisements. On its website and other advertisements, Sanderson states: "There's Only Chicken In Our

---

[59] The Pew Charitable Trusts, *Antibiotics and Animal Agriculture: A Primer* (February 2018) https://www.pewtrusts.org/-/media/assets/2018/02/arp_antibiotics_and_animal_agriculture_a_primer.pdf

[60] *Id.* at 13.

[61] American Academy of Pediatrics, Technical Report (December 2015), "Nontherapeutic Use of Antimicrobial Agents in Animal Agriculture: Implications for Pediatrics," at e1673, available at https://pediatrics.aappublications.org/content/pediatrics/136/6/e1670.full.pdf  last visited August 30, 2019.

[62] National Resources Defense Council, *Sanderson Farms: Spreading Deception & Antibiotic Resistance*, available at https://www.nrdc.org/experts/sanderson-farms-spreading-deception-antibiotic-resistance (last visited August 30, 2019).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Chicken. Seriously."[63] *See e.g. supra* ¶ 70.

191.   Sanderson also misrepresents to consumers the level of protection that they can expect from the federal law regarding antibiotic residues. In one of the Bob and Dale TV advertisements,[64] Sanderson says, "The thing is, by federal law, all chickens must be cleared of antibiotics before they leave the farm . . . No antibiotics to worry about here." This statement is misleading because it omits the fact that USDA's own process allows for chickens with scientifically detectable antibiotic residues to be sold to consumers, as long as the detected residues stay below the regulatory "tolerance."

192.   Sanderson's representations regarding its chicken being free of residues are misleading because Sanderson's own laboratory testing indicates that the pharmaceuticals Sanderson administers remain in some of the chickens after they leave the grow-out facilities and arrive at processing plants to be slaughtered. The pharmaceuticals that Sanderson administers include, but are not necessarily limited to, bacitracin, gentamicin, lincomycin, monensin, narasin, oxytetracycline, penicillin, rofenaid (Rofenaid is a brand name; the drug is sulfadimethoxine ormetprim), salinomycin, and virginiamycin.[65]

193.   Sanderson conducts its own laboratory testing for the residues of pharmaceuticals that Sanderson administers, and Sanderson's own testing indicates positive results for the pharmaceuticals that Sanderson administers to its flocks at various stages of their lives. These positive pharmaceutical results include, but are not necessarily limited to, decoquinate, monensin, narasin, nicarbazin, and salinomycin. Discovery may reveal additional residues.

---

[63] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2018).

[64] Available at https://www.ispot.tv/brands/A1Z/sanderson-farms (last visited August 30, 2019).

[65] Order, *Friends of the Earth et al. v. Sanderson Farms, Inc.*, No. 3:17-cv-03592 (RS), Dkt. 94 (N.D. Cal. Aug. 27, 2018).

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

1

2

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**Allegations Concerning the Reach and Scope of Sanderson's**

**Misrepresentations**

3

4       194.    Sanderson began its "100% Natural" marketing campaign at least as far

5   back as 2014.  In its "I Believe" series of commercials which were released on YouTube,

6   Sanderson concluded by wishing viewers "Happy Fourth of July" "Happy Thanksgiving"

7   "Merry Christmas and Happy Holidays" with a voiceover "And we mean that 100%."

8   along with the logo and "100% Natural":

9

10

11



20

21       195.    The "Bob and Dale" commercials began airing in 2016.[66]  They were

22   broadcast in markets where Sanderson chicken was sold and were also put online.

23       196.    The term "impressions" is used to measure how many times a commercial

24   has been seen.

25

26   ────────────

27   [66] The numbers were captured during the campaign on June 9, 2017, and have undoubtedly

28   increased since then.  Current numbers are not publicly available.

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

197.    The Bob and Dale commercial "Labels" had 41,961,833 broadcast impressions.

198.    The Bob and Dale commercial "Cooking Show" had 56,953,090 broadcast impressions.

199.    The Bob and Dale commercial "Supermarket" had 108,214,520 broadcast impressions.

200.    The Bob and Dale commercial "Marketing Guru" had 89,745,934 impressions.

201.    The Bob and Dale commercial "Floppy Arms" had 116,413,306 broadcast impressions.

202.    The Bob and Dale commercials were also seen millions of times online.

203.    The Bob and Dale commercial "Labels" had 1,675,972 views on YouTube and 32,000 on Facebook.

204.    The Bob and Dale commercial "Cooking Show" had 310,223 views on YouTube and 2.5 million views on Facebook.

205.    The Bob and Dale commercial "Supermarket" had 2,137,612 views on YouTube and 4 million views on Facebook.

206.    The Bob and Dale commercial "Marketing Guru" had 1,021,876 views on YouTube and 711,000 views on Facebook.

207.    The Bob and Dale commercial "Floppy Arms" had 753,431 views on YouTube and 2.4 million views on Facebook.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| "Bob and Dale" Commercial | Broadcast Impressions | YouTube Views | Facebook Views |
|---|---|---|---|
| Truth About Chicken – Labels Commercial | 41,961,833 | 1,675,972 | 32,000 |
| The Truth About Chicken - Marketing Guru Commercial: | 89,745,934 | 1,021,876 | 711,000 |
| The Truth About Chicken - Mr. Floppy Arms Commercial | 116,413,306 | 753,431 | 2,400,000 |
| The Truth About Chicken – Supermarket Commercial | 108,214,520 | 2,137,612 | 4,000,000 |
| Truth About Chicken - Cooking Show Commercial | 56,953,090 | 310,223 | 2,900,000 |
| TOTAL | 332,518,683 | 5,899,114 | 10,043,000 |

208.   The Bob and Dale commercials aired in 2016 and 2017 on widespread television shows like *College Basketball* on CBS, *48 Hours* on CBS and *Sunday Morning* on CBS.[67]

209.   Sanderson's print advertising also reached a wide audience.

210.    For example, in 2018, Sanderson Farms also placed a print ad stating that its chicken was "All Natural" in *Southern Living*, a national magazine which, according to its 2019 media guide, has print reach of 16,081,000 and a digital reach of 7.3 million unique users.

211.    Sanderson Farms also publishes a monthly magazine, the *Sanderson Farms 100% Natural Newsletter*, which as of 2018, had a circulation of 600,000 across 42 states, which has the "100% Natural" claim as part of every title on the front of the magazine:

---

[67] In an August 2017 press release, Sanderson boasts that its "Old McGimmick" commercial had 39.5 million Facebook views.

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

212.   The *Sanderson Farms 100% Natural Newsletter* is sufficiently prominent that it won numerous public relations awards including a Gold ADDY award.[68]  The ADDY awards are the "advertising industry's largest and most representative competition."[69]

_____

[68] Sanderson Farms press release May 7, 2018.
[69] American Advertising Federation website, last visited March 20, 2020.

57

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

213.     Sanderson also won several public relations awards for its *Sanderson Farms Corporate Responsibility Report*, including the Southern Public Relations Association of Mississippi Judge's Choice Award and an award from the Southern Public Relations Federation.[70]

214.     In addition, the "100% Natural" representation, in the form of pictures of the products such as those in ¶ 117 *supra*, has appeared in millions of copies of flyers and circulars where Sanderson Chicken is sold.

215.     Such pictures have appeared in flyers and circulars for major supermarket chains that sell Sanderson chicken, including Wal-Mart, Sam's Club, Kroger (which owns much of Food 4 Less and other regional chains), Safeway, H-E-B (340 stores in Texas), Albertson's (400 stores in the United States), Von's (200 stores in California and Nevada), Food 4 Less (337 stores in the United States), and Harris Teeter (230 stores in the United States).  Sanderson chicken is sold in thousands of stores in the United States.

216.     Every retail package of Sanderson chicken bears the phrase "100% Natural." Although plaintiffs do not bring claims based on labeling, the labels represent an enormous and widespread "100% Natural" message to consumers, which is the message Sanderson encourages retailers to use in their ad circulars[71].

217.     In Sanderson's 2019 annual report filed with the SEC, it noted that its efforts to distinguish itself in the market as a "natural" brand went back to 2004:

> The Registrant has achieved a high level of public awareness and acceptance of its products in its core markets. Brand awareness is an important element of the Registrant's marketing philosophy, and it intends to continue brand name merchandising of its products. During calendar 2004, the Company launched an advertising campaign designed to distinguish the Company's fresh chicken products from competitors' products. The campaign noted that the Company's product is a

---

[70] Sanderson Farms press release May 7, 2018.
[71] Sanderson maintains product imagery at the following address https://sandersonfarms.com/corporate/media-library/product-imagery/ (last visited March 22, 2020). There Sanderson states: "To help you advertise Sanderson Farms products at the retail level, we've created a database of professional images for use in print and Internet advertisements to promote the sale of Sanderson Farms *100% natural chicken.'*(emphasis added).

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

natural product free from salt, water and other additives that some competitors inject into their fresh chicken. The Company continues to use various media to communicate this message today.

Sanderson also described its recent campaigns to promote itself as a "natural" brand:

> During fiscal 2016, the Company launched a multi-media advertising campaign designed to explain and support the Company's position regarding the judicious use of antibiotics to prevent illness and treat chickens that become ill. During fiscal 2017, the Company launched a multi-media advertising campaign designed to dispel many of the myths about poultry production. The Company regularly evaluates the success of this campaign and, while not currently advertising aggressively on television, expects to continue to use the campaign in other media, at least for the near term.

## CLASS ALLEGATIONS

218.    Plaintiffs bring this suit as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all individuals and businesses throughout the nation who purchased one or more Products during the Class Period. Excluded from the Class is Defendant, any person, firm, trust, corporation, officer, director, or other individual or entity in which Defendant has a controlling interest or with which Defendant is related to or affiliated, and the legal representatives, agents, heirs, affiliates, successors-in-interest or assigns of any excluded party. Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for Class certification and/or the result of discovery.

219.    Plaintiffs seek certification of a national class and/or appropriate subclasses if necessary.

220.    This lawsuit is properly brought as a class action for the following reasons:

221.    The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class includes thousands of persons geographically dispersed throughout the United States. The precise number and identities of Class members are unknown to Plaintiffs, but are known to Defendant or can be ascertained

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

59

through discovery, using records of sales, and other information kept by Defendant or its agents. Notice can be provided through sales and warranty records and publication.

222. The Class is ascertainable, and there is a well-defined community of interest in the questions of law and/or fact alleged herein since the rights of each Class member were infringed or violated in similar fashion based upon Defendant's uniform misconduct.

223. Questions of law or fact common to the Class exist as to Plaintiffs and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. Among these predominant common questions of law and/or fact are the following:

a. Whether the Products lived up to the representations that they were "100% Natural";

b. Whether the Products are "100% Natural" when the birds are given antibiotics and/or pharmaceuticals;

c. Whether the Products are "100% Natural" when they contain antibiotic or pharmaceutical residues;

d. Whether the Products are "100% Natural" when the poultry that the Products are derived from are raised exclusively indoors in crowded and dirty conditions;

e. Whether the Products are "100% Natural" when the process contributes to antibiotic resistant bacteria;

f. Whether a reasonable consumer would find the "100% Natural" representations material to their decision to purchase the Products;

g. Whether Defendant made any express or implied warranties in connection with the sale of the Products;

h. Whether Defendant breached any express or implied warranties;

i. Whether Defendant was unjustly enriched by selling the Products;

j. Whether Defendant violated applicable consumer protection laws by selling Products that did not live up to the "100% Natural" representations made by

1    Defendant; and

2    k.  The appropriate nature and measure of damages.

3    224.  Plaintiffs' claims are typical of the claims of Class members. The injuries

4    sustained by Plaintiffs and the Class flow, in each instance, from a common nucleus of

5    operative facts based on the Defendant's uniform conduct as set forth above. The defenses,

6    if any, that will be asserted against Plaintiffs' claims likely will be similar to the defenses

7    that will be asserted, if any, against Class members' claims.

8    225.  Plaintiffs will fairly and adequately protect the interests of Class members.

9    226.  Plaintiffs have no interests materially adverse to or that irreconcilably

10   conflict with the interests of Class members and have retained counsel with significant

11   experience in handling class actions and other complex litigation, and who will vigorously

12   prosecute this action.

13   227.  A class action is superior to other available methods for the fair and efficient

14   group-wide adjudication of this controversy, and individual joinder of all Class members is

15   impracticable, if not impossible, because there are numerous Class members located

16   throughout the United States. Moreover, the cost to the court system of such individualized

17   litigation would be substantial. Individualized litigation would likewise present the

18   potential for inconsistent or contradictory judgments and would result in significant delay

19   and expense to all parties and multiple courts hearing virtually identical lawsuits. By

20   contrast, the conduct of this action as a class action presents fewer management

21   difficulties, conserves the resources of the parties and the courts, protects the rights of each

22   Class member and maximizes recovery to them.

23   228.  Plaintiffs do not anticipate any difficulties in the management of this action

24   as a class action.  If conflicts arise, they may be managed by using appropriate subclasses.

25   //

26   //

27   //

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## INJUNCTIVE CLASS RELIEF

229.   Rules 23(b)(1) and 23(b)(2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, the Defendant has engaged in conduct resulting in misleading consumers about the nature of their products and representing they are "100% Natural." Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.

230.   Plaintiff Pam La Fosse does not know if she can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

231.   Plaintiff Sharon Manier does not know if she can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

232.   Plaintiff MaryBeth Norman does not know if she can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

233.   Plaintiff Todd Hyatt does not know if he can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

234.   Plaintiff Starla McPeak does not know if she can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

235.   Plaintiff Jonice Hyatt does not know if she can rely on Defendant's claims in the future, but would purchase the Products again if they were "100% Natural" as represented.

//

//

62

236.   The Injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), and the injunctive Class satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.   Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendant's Products have been purchased by thousands of people throughout the United States;

b.   Commonality: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

i.   Resolution of the issues presented in the 23(b)(3) class;

ii.   Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and advertising; and

iii.   Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively advertise and market the Products as being 100% Natural.

c.   Typicality: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct (*i.e.* Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendant's Products based on the same misrepresentations made to consumers throughout the United States.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

d. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class. Their claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights. Plaintiffs have no conflicts with the members of the Class and are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

237.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed the Products using the same misleading and deceptive advertising and marketing to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing to make the Misrepresentations and would be required to disclose to consumers the true nature of the Products. Plaintiffs would purchase the Products again if the Products were 100% Natural as represented.

<u>**NOTICE OF CLAIMS**</u>

238.    Sanderson has been on notice of the claims asserted in this action for years. First, the *Friends of the Earth* litigation was filed on June 22, 2017.  Second, Sanderson's advertising was found deceptive by the Council of Better Business Bureaus in August of 2017.  Third, before commencing this action, on July 8, 2019, Daniel Lentz and Pam La Fosse sent a demand letter to Sanderson under California's Consumer Legal Remedies Act.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*
### (Brought By All Plaintiffs)

239.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

240.   Plaintiffs bring this claim individually and on behalf of all members of a national class of similarly-situated consumers. Upon certification, the Class will consist of more than 100 named Plaintiffs.

241.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

242.   The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

243.   Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

244.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

245.   Defendant represented in writing throughout its ubiquitous advertising and marketing and on the Products themselves that the Products were "100% Natural."

246.   This statement was made in connection with the sale of the Products and relates to the nature of the Products, and as such constitutes a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

1    247.   As alleged herein, Defendant breached the written warranty by selling

2    consumers Products that are not "100% Natural."

3    248.   The Products do not conform to the Defendant's written warranty and

4    therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

5    Consequently, Plaintiffs and the other members of the Class have suffered injury

6    and are entitled to damages in an amount to be proven at trial.

7

8    ***California Causes of Action***

9                          **SECOND CAUSE OF ACTION**

10   **Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.**

11                  **(Brought by Ms. Manier and Ms. La Fosse)**

12   249.   Plaintiffs repeat and reallege each and every allegation contained in all the

13   foregoing paragraphs as if fully set forth herein.

14   250.   Ms. La Fosse and Ms. Manier (for purposes of the California causes of

15   action, "Plaintiffs") have standing to pursue this claim under California's Unfair

16   Competition Law ("UCL") because they suffered an injury-in-fact and lost money as a

17   result of Defendant's unfair practices. Specifically, they expended more money in the

18   transaction than they otherwise would have due to Defendant's misrepresentations and

19   conduct.

20   251.   Claiming the Products are "100% Natural" and the other misrepresentations

21   alleged herein constitutes a course of unfair conduct within the meaning of Cal. Civ. Code

22   § 17200, *et seq*.

23   252.   Defendant's advertising failed to disclose that Products were not truly "100%

24   Natural" and instead was done in a manner to deceive consumers about the true nature of

25   the Products.

26   253.   The conduct of the Defendant harms the interests of consumers and market

27   competition. There is no valid justification for Defendant's conduct.

28

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

254.   Defendant engaged in unlawful business acts and practices by breaching express warranties, and violating the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

255.   Defendant engaged in fraudulent business practices by knowingly making the Misrepresentations concerning the Products when they are not "100% Natural." Such practices are devoid of utility and outweighed by the gravity of harm to Plaintiffs and the Class who lost money or property by paying for the misrepresented product.

256.   Each of Defendant's unfair, unlawful and fraudulent practices enumerated above was the direct and proximate cause of financial injury to Plaintiffs and the Class. Defendant has unjustly benefitted as a result of its wrongful conduct. Plaintiffs and the Class members are accordingly entitled to have Defendant disgorge and restore to Plaintiffs and Class members all monies wrongfully obtained by Defendant as a result of the conduct as alleged herein.

257.   Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs seek an order of this Court enjoining Defendant from continuing to engage in unfair, unlawful and deceptive practices and any other act prohibited by law, including the acts set forth herein.

## **THIRD CAUSE OF ACTION**

### **Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.**

### **(Brought by Ms. Manier and Ms. La Fosse)**

258.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

259.   Plaintiffs have standing to pursue this claim under California's False Advertising Law ("FAL") because they suffered an injury-in-fact and lost money as a result of Defendant's false advertising.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

67

1    260.   Defendant intentionally and knowingly disseminated the false advertising

2    described herein.

3    261.   Defendant's advertising as described herein induced Plaintiffs and class

4    members to purchase Sanderson chicken by advertising the chicken as "100% Natural" and

5    by falsely advertising that the chicken was free from antibiotics and pharmaceuticals, that

6    there was no danger of the use of antibiotics in the chicken contributing to the

7    development of antibiotic-resistant bacteria, that the Products were free from antibiotics

8    and pharmaceuticals when sold, and that the chicken were raised in a natural and humane

9    manner.

10   262.   Plaintiffs relied on Sanderson's advertising, and the Defendant's false

11   advertising was the direct and proximate cause of financial injury to Plaintiffs and the

12   Class.

13

14   **FOURTH CAUSE OF ACTION**

15   **Violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.***

16   **(brought by Ms. Manier)**

17   263.   Plaintiff Ms. Manier repeats and realleges each and every allegation

18   contained in all the foregoing paragraphs as if fully set forth herein.

19   264.   The Consumers Legal Remedies Act ("CLRA") was enacted to protect

20   consumers against unfair and deceptive business practices. The CLRA applies to

21   Defendant's acts and practices because the Act covers transactions involving the sale of

22   goods to consumers.

23   265.   Ms. Manier and similarly-situated California consumers are "consumers"

24   within the meaning of section 1761(d) of the California Civil Code, and they engaged in

25   "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil

26   Code, including the purchases of the Products.

27   266.   The Products are "goods" under Cal. Civ. Code § 1761(a).

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

267.    Defendant's unfair and deceptive business practices were intended to and did result in the sale of the Products.

268.    Defendant violated the CLRA by engaging in the following unfair and deceptive practices:

(1) Representing that the Products have characteristics, uses or benefits that they do not have, in violation of section 1770(a)(5);

(2) Representing that the Products are of a particular standard, quality, or grade when they are not, in violation of section 1770(a)(7); and

(3) Advertising the Products with the intent not to sell them as advertised, in violation of section 1770(a)(9).

269.    Defendant falsely advertised the Products as "100% Natural" and falsely advertised that the chicken was free from antibiotics and pharmaceuticals, that there was no danger of the use of antibiotics in the chicken contributing to the development of antibiotic-resistant bacteria, that the Products were free from antibiotics and pharmaceuticals when sold, and that the chicken were raised in a natural and humane manner.

270.    If Ms. Manier and similarly-situated consumers had known the truth, they would not have purchased the Products at all or purchased them at the prices they did.

271.    As a direct and proximate result of Defendant's conduct, Ms. Manier and similarly-situated consumers suffered injury.

272.    Pursuant to California Civil Code § 1782(a), Mr. David Lentz[72] and Ms. La Fosse sent Defendant a CLRA notice letter via certified mail, return receipt requested, which was delivered on or around July 8, 2019, advising Defendant that it is in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[72] Mr. Lentz has elected not to request appointment as a class representative, but is still a member of the class.

69

273.   Defendant has not repaired, replaced or otherwise rectified the goods alleged to be in violation of § 1770.

274.   Accordingly, Ms. Manier seek damages under the CLRA in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Violation of Cal. Com. Code §2313 (breach of express warranty)**

**(Brought Ms. La Fosse and Ms. Manier)**

275.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

276.   Defendant provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products were "100% Natural."

277.   The "100% Natural" affirmations were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

278.   These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

279.   Plaintiffs and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

280.   Within a reasonable time after they knew or should have known of Defendant's breach, Defendant was placed on notice of its breach by the CLRA letter of Mr. Lentz and Ms. La Fosse, giving Defendant an opportunity to cure its breach, which it did not do.

281.   Defendant breached the express warranty because the Products are not "100% Natural."

282.   As a direct and proximate result of Defendant's breach of express warranty,

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Plaintiffs and Class Members were damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## <u>Unjust Enrichment Under California Law</u>

### (Brought Ms. La Fosse and Ms. Manier)

283.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

284.    Defendant's conduct violated state and federal law by producing, manufacturing, advertising, marketing, and selling the products while misrepresenting and omitting material facts.

285.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and similarly-situated consumers, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

286.    Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the "100% Natural" Products, which were not as Defendant represented them to be.

287.    Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

288.    Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

//

//

//

//

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

FIRST AMENDED CLASS ACTION COMPLAINT                     Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

*North Carolina Causes of Action*

### SEVENTH CAUSE OF ACTION

### Violation Of The North Carolina Unfair

### And Deceptive Trade Practices Act

### (brought by Ms. Norman)

289.    Plaintiff Marybeth Norman repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

290.    Sanderson violated the North Carolina Unfair and Deceptive Trade Practices Act (NCUDTPA) by representing in its advertising that the Products were "100% Natural" when they were not.

291.    Sanderson violated the NCUDTPA by advertising the Products as "100% Natural" with the intent not to sell them as advertised.

292.    Sanderson violated the NCUDTPA by omitting that it uses pharmaceuticals including antibiotics in the Products; that it raises the chickens in intensive indoor confinement; that use of antibiotics in the Products contributes to the development of antibiotic-resistant bacteria; and that its Products have tested positive for unnatural residue.

293.    Sanderson intentionally and knowingly misrepresented that the Products were "100% Natural" and knew or should have known that its conduct violated the NCUDTPA.

294.    Sanderson owed Ms. Norman and similarly-situated consumers a duty to disclose all material facts concerning the Products because it had exclusive knowledge about the raising, treatment, and marketing of the Products.

295.    Sanderson's misrepresentations and omissions caused damages to Ms. Norman and similarly-situated consumers in an amount to be determined at trial.

296.    Ms. Norman and similarly-situated consumers also seek treble damages, injunctive relief, costs and attorneys' fees and any other proper relief under N.C. Gen. Stat.

1   § 75-16.

2   **EIGHTH CAUSE OF ACTION**

3   **Breach of Express Warranty Under North Carolina Law**

4   **(Brought by Ms. Norman)**

5   297.   Ms.  Norman repeats and realleges each and every allegation contained in the

6   foregoing paragraphs as if fully set forth herein.

7   298.   Sanderson was at all times a merchant and seller of the Products under

8   N.C.G.S.A. §§ 25-2-103 and 104.

9   299.    At all relevant times the Products were "goods" under N.C.G.S.A. §§ 25-2-

10   103 and 105.

11   300.   Defendant provided the Plaintiffs and Class Members with an express

12   warranty in the form of written affirmations of fact promising and representing that the

13   Products were "100% Natural."

14   301.   The above affirmations of fact were not couched as "belief" or "opinion,"

15   and were not "generalized statements of quality not capable of proof or disproof."

16   302.   These affirmations of fact became part of the basis for the bargain and were

17   material to the Plaintiffs' and Class Members' transactions.

18   303.   Plaintiffs and Class Members reasonably relied upon the Defendant's

19   affirmations of fact and justifiably acted in ignorance of the material facts omitted or

20   concealed when they decided to buy Defendant's Products.

21   304.   Defendant was notified of its breach in by the CLRA letter of Mr. Lentz and

22   Ms. La Fosse, giving Defendant an opportunity to cure its breach, which it did not do.

23   305.   In the alternative, it would be futile for Ms. Norman and the consumers she

24   represents to afford Sanderson an opportunity to cure its breach as evidenced by

25   Sanderson's failure to respond to the demand of Mr. Lentz and Ms. La Fosse.

26   306.   Defendant breached the express warranty because the Products are not

27   "100% Natural" and cannot live up to Defendant's promises of such.

28

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

307.    As a direct and proximate result of Sanderson's breach of warranty, Ms. Norman and the consumers she represents have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### Unjust Enrichment Under North Carolina Law

### (Brought by Ms. Norman)

308.    Ms. Norman repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

309.    Ms. Norman and her fellow consumers enriched Sanderson by buying the Products. The benefit was not conferred gratuitously nor did Ms. Norman or her fellow consumers interfere in Sanderson's business.

310.    Sanderson accepted and retained the benefit conferred by the purchases of Ms. Norman and fellow consumers.

311.    It would be unjust for Sanderson to retain these benefits because Sanderson obtained these benefits by misleading and deceiving Ms. Norman and her fellow consumers by representing that the Products are "100% Natural" when they are not.

312.    As a result of this unjust enrichment, Sanderson should disgorge its benefits in an amount to be determined at trial.

//
//
//
//
//
//
//

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

*Texas Causes of Action*

## TENTH CAUSE OF ACTION

### Breach of Express Warranty Under Texas Law

### (Brought by Ms. Hyatt and Ms. McPeak[73])

313.    Ms. McPeak and Ms. Hyatt ("Plaintiffs," for purposes of the Texas causes of action) repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

314.    Sanderson was at all relevant times a "merchant" and a "seller" of the Products under Texas Bus. & Com. Code §§ 2.104(1), 2A.103(a)(20), and 2.103(a)(4).

315.    The Products are "goods" under Texas Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

316.    Defendant provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products were "100% Natural."

317.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

318.    These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

319.    Plaintiffs and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

320.    Defendant was notified of its breach by the CLRA letter of Mr. Lentz and Ms. La Fosse, which gave Defendant an opportunity to cure its breach, which it did not do.

---

[73] Ms. Hyatt and Ms. McPeak have submitted demand letters to the Office of the Texas Attorney General and Sanderson, although they believe this effort is futile.  If appropriate, they will seek leave to assert their claim under Texas's Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.71 *et seq.*

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

321.   In the alternative, it would be futile for Ms. Hyatt and Ms. McPeak and the consumers they represent to afford Sanderson an opportunity to cure its breach as evidenced by Sanderson's failure to respond to the demand of Mr. Lentz and Ms. La Fosse.

322.   Defendant breached the express warranty because the Products are not "100% Natural" and cannot live up to Defendant's promises of such.

323.   As a direct and proximate result of Sanderson's breach of warranty, Ms. Mc Peak and Ms. Hyatt and the consumers they represent have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### Unjust Enrichment Under Texas Law

### (brought by Ms. McPeak and Ms. Hyatt)

324.   Ms. McPeak and Ms. Hyatt repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

325.   Ms. McPeak, Ms. Hyatt and their fellow consumers enriched Sanderson by buying the Products.

326.   Sanderson accepted and retained the benefit conferred by the purchases of Ms. McPeak, Ms. Hyatt, and their fellow consumers.

327.   It would be unjust for Sanderson to retain these benefits because Sanderson obtained these benefits by misleading and deceiving Ms. McPeak, Ms. Hyatt, and their fellow consumers by representing that the Products are "100% Natural" when they are not.

328.   As a result of this unjust enrichment, Sanderson should disgorge its benefits in an amount to be determined at trial.

//

//

//

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

*Utah Causes of Action*

## TWELFTH CAUSE OF ACTION

### Violation Of The Utah Consumer Sales Practices Act

**(Brought by Mr. Hyatt)**

329.   Mr. Hyatt repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

330.   Mr. Hyatt is a "person" who engaged in a "consumer transaction" under Utah Code §§13-11-3(2) and (5).

331.   Sanderson is a supplier under § 13-11-3(6).

332.   Sanderson has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Annotated § 13-11-1, *et seq*.  In particular, Utah law provides:

 (2) Without limiting the scope of Subsection (1), a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; . . .(e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; . . . (j) . . . (ii) fails to honor a warranty or a particular warranty term . . . .

Utah Code Ann. § 13-11-4.

333.   Sanderson has violated (a), (b), (e) and (j)(2) by representing that the Products are "100% Natural" when they are not.

334.   Sanderson's conduct also constitutes an "unconscionable act or practice by a supplier in connection with a consumer transaction" under § 13-11-5.

335.   As a result of Sanderson's conduct, Mr. Hyatt and his fellow consumers have

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

1    been damaged in an amount to be determined at trial.

2    ### THIRTEENTH CAUSE OF ACTION

3    ### Breach Of Express Warranty Under Utah Law

4    ### (Brought by Mr. Hyatt)

5    336.    Mr. Hyatt repeats and realleges each and every allegation contained in the

6    foregoing paragraphs as if fully set forth herein.

7    337.    Sanderson was at all relevant times a "merchant" and "seller" of the Products

8    under Utah Code §§ 70A-2-104(1), 70A-2a-103(1)(t) and 70A-2-103(1)(d).

9    338.    Defendant provided the Mr. Hyatt and Class Members with an express

10   warranty in the form of written affirmations of fact promising and representing that the

11   Products were "100% Natural."

12   339.    The warranty was factual, and was not couched as "belief" or "opinion," and

13   were not "generalized statements of quality not capable of proof or disproof."

14   340.    These affirmations of fact became part of the basis for the bargain and were

15   material to the Mr. Hyatt's and Class Members' transactions.

16   341.    Mr. Hyatt and Class Members reasonably relied upon the Defendant's

17   affirmations of fact and justifiably acted in ignorance of the material facts omitted or

18   concealed when they decided to buy Defendant's Products.

19   342.    Defendant was notified of its breach by the CLRA letter of Mr. Lentz and

20   Ms. La Fosse, which gave Defendant an opportunity to cure its breach, which it did not do.

21   343.    In the alternative, it would be futile for Mr. Hyatt and the consumers he

22   represents to afford Sanderson another opportunity to cure its breach as evidenced by

23   Sanderson's failure to respond to the demand of Mr. Lentz and Ms. La Fosse.

24   344.    Defendant breached the express warranty because the Products are not

25   "100% Natural" and cannot live up to Defendant's promises of such.

26   345.    As a direct and proximate result of Sanderson's breach of warranty, Mr.

27   Hyatt and the consumers he represents have been damaged in an amount to be determined

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

at trial.

## FOURTEENTH CAUSE OF ACTION

### Unjust Enrichment Under Utah Law

### (brought by Mr. Hyatt)

346.    Mr. Hyatt repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

347.    Mr. Hyatt and his fellow consumers conferred a benefit on Sanderson by buying Sanderson chicken.

348.    Sanderson knew about the benefit, and accepted and retained the benefit conferred by the purchases of Mr. Hyatt, and his fellow consumers.

349.     It would be unjust for Sanderson to retain these benefits because Sanderson obtained these benefits by misleading and deceiving Mr. Hyatt and his fellow consumers by representing that the Products are "100% Natural" when they are not.

350.    As a result of this unjust enrichment, Sanderson should disgorge its benefits in an amount to be determined at trial.

*Arizona Causes of Action*

## FIFTEENTH CAUSE OF ACTION

### Violations Of The Arizona Consumer Fraud Act

### (Brought by Plaintiff Jonice Hyatt)

351.    Ms. Jonice Hyatt repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

352.     Ms. Jonice Hyatt and Sanderson are "persons" under Ariz. Rev. Stat. § 44-1521(6) and the Products are "merchandise" under §44-1521(5).

353.    Arizona law prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

79

1
2
3
4
5

upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Ariz. Rev. Stat. Ann. § 44-1522(A).

6
7

354.   By misrepresenting the Products as "100% Natural" when they are not, Sanderson has violated Arizona Revised Statute Annotated § 44-1522(A).

8
9
10

355.   As a result, Ms. Jonice Hyatt and her fellow consumers have been damaged in an amount to be determined at trial.

11

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

12
13
14

## SIXTEENTH CAUSE OF ACTION
## Breach of Express Warranty Under Arizona Law
## (Brought By Ms. Jonice Hyatt)

15
16

356.   Ms. Jonice Hyatt repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

17
18

357.   Sanderson was at all relevant times a "merchant" and "seller" of the Products under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c);

19
20

358.   The Products are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

21
22
23

359.   Defendant provided Ms. Jonice Hyatt and similarly-situated consumers with an express warranty in the form of written affirmations of fact promising and representing that the Products were "100% Natural."

24
25

360.   The warranty was factual, and was not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

26
27

361.   These affirmations of fact became part of the basis for the bargain and were material to Ms. Jonice Hyatt's and Class Members' transactions.

28

80

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

2   362.   Ms. Jonice Hyatt and Class Members reasonably relied upon the Defendant's

3   affirmations of fact and justifiably acted in ignorance of the material facts omitted or

4   concealed when they decided to buy Defendant's Products.

5   363.   Within a reasonable time after they knew or should have known of

6   Defendant's breach, Defendant was placed on notice of its breach in the CLRA letter of

7   Mr. Lentz and Ms. La Fosse, giving Defendant an opportunity to cure its breach, which it

8   did not do.

9   364.   In the alternative, it would be futile for Ms. Jonice Hyatt and the consumers

10   she represents to afford Sanderson another opportunity to cure its breach as evidenced by

11   Sanderson's failure to respond to the demand of Mr. Lentz and Ms. La Fosse.

12   365.   Defendant breached the express warranty because the Products are not

13   "100% Natural" and cannot live up to Defendant's promises of such.

14   366.   As a direct and proximate result of Sanderson's breach of warranty, Ms.

15   Jonice Hyatt and the consumers she represents have been damaged in an amount to be

16   determined at trial.

17

18   **SEVENTEENTH CAUSE OF ACTION**

19   **Unjust Enrichment Under Arizona Law**

20   **(Brought By Ms. Jonice Hyatt)**

21   367.   Ms. Jonice Hyatt repeats and realleges each and every allegation contained in

22   the foregoing paragraphs as if fully set forth herein.

23   368.   Sanderson has been enriched by the purchases of the Products by Ms. Jonice

24   Hyatt and her fellow consumers.

25   369.   Ms. Jonice Hyatt and her fellow consumers spent money out of pocket on the

26   Products and were impoverished by so doing.

27   370.   The enrichment of Sanderson and the impoverishment of Ms. Jonice Hyatt

28

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

1  and her fellow consumers are related.  The more chicken they purchased, the more money

2  Sanderson would receive because of the greater demand for the Products from retailers.

3      371.   There is no justification for Sanderson representing the Products as 100%

4  Natural when they are not.

5      372.    Ms. Jonice Hyatt and her fellow consumers do not have an adequate remedy

6  at law.

7      373.   As a result, Sanderson should be ordered to disgorge its benefits in an

8  amount to be determined by trial.

9

10  **<u>DEMAND FOR JURY TRIAL</u>**

11

12  Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury of

13  all claims so triable in the above-referenced matter.

14  **<u>PRAYER FOR RELIEF</u>**

15  **WHEREFORE**, Plaintiffs, on behalf of themselves and similarly-situated

16  consumers, pray for judgment as follows:

17      (a) Declaring this action to be a proper class action and certifying Plaintiffs as the

18          representatives of the Class under Rule 23 of the FRCP;

19      (b) Entering preliminary and permanent injunctive relief against Defendant,

20          directing Defendant to correct its practices and to comply with consumer

21          protection laws nationwide, including California consumer protection laws;

22      (c) Awarding monetary, compensatory, statutory and punitive damages;

23      (d) Awarding Plaintiffs and Class Members their costs and expenses incurred in this

24          action, including reasonable allowance of fees for Plaintiffs' attorneys and

25          experts, and reimbursement of Plaintiffs' expenses; and

26      (e) Granting such other and further relief as the Court may deem just and proper.

27

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Dated: March 23, 2020                    NYE, STIRLING, HALE & MILLER, LLP

                                         By:   ___/S/_____
                                               Jonathan D. Miller, Esq.
                                               Alison M. Bernal, Esq.
                                               33 W. Mission Street, Suite 201
                                               Santa Barbara, CA 93101
                                               Tel: (805) 963-2345
                                               Fax: (805) 284-9590
                                               jonathan@nshmlaw.com
                                               alison@nshmlaw.com

                                         ELSNER LAW & POLICY LLC

                                         By:   ___/S/_____
                                               Gretchen Elsner, Esq.
                                               (admitted *pro hac vice*)
                                               314 South Guadalupe Street
                                               Santa Fe, NM 87501
                                               Tel: (505) 303-0980
                                               gretchen@elsnerlaw.org

                                         WALSH, PLLC

                                         By:   ___/S/_____
                                               Bonner C. Walsh, Esq.
                                               (admitted *pro hac vice*)
                                               1561 Long Haul Road
                                               Grangeville, ID 83530
                                               Tel: (541) 359-2827
                                               Fax: (866) 503-8206
                                               bonner@walshpllc.com

                                         THE SULTZER LAW GROUP, P.C.

                                         By:   ___/S/_____
                                               Adam Gonnelli, Esq.
                                               (admitted *pro hac vice*)
                                               85 Civic Center Plaza, Suite 200
                                               Poughkeepsie, NY 12601
                                               Tel: (845) 483-7100
                                               Fax: (888) 749-7747
                                               gonnellia@thesultzerlawgroup.com

                                         *Attorneys for Plaintiff and the Class*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS