UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAM LA FOSSE[1] et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>SANDERSON FARMS, INC.,<br><br>            Defendant. | Case No. 19-cv-06570-RS<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

## I.   INTRODUCTION

Plaintiffs Pam La Fosse, Sharon Manier, Marybeth Norman, Starla McPeak, Laquita Hyatt, Todd Hyatt, and Jonice Hyatt allege, on behalf of a putative nationwide class of consumers, that defendant Sanderson Farms engages in extensive, deceptive marketing of its chicken products. Specifically, plaintiffs allege Sanderson markets its products as "100% Natural," when they do not meet a reasonable consumer's expectation of what that would mean. Plaintiffs' initial complaint was dismissed with leave to amend in February 2020, and Sanderson now moves to dismiss certain claims in the First Amended Complaint ("FAC") for lack of personal jurisdiction and failure to state a claim. Pursuant to Civil Local Rule 7-1(b), the hearing on the motion was

---

[1] The original lead named plaintiff, Daniel Lentz, is no longer a named plaintiff in this case. Accordingly, the Clerk should change the caption to: *La Fosse et al. v. Sanderson Farms, Inc*.

previously vacated. For the reasons set forth below, the motion is granted, with leave to amend.

## II.   BACKGROUND[2]

Sanderson is a Mississippi corporation and the nation's third-largest poultry producer, with more than $3 billion in annual revenue. It produces a variety of chicken products, which are marketed as "100% Natural."[3] Its products are sold and advertised nationally; television, online, print, radio, supermarket, and billboard advertising, as well as Sanderson's own trucks and website, all market its products as "100% Natural."

Plaintiffs are consumers who purchased Sanderson chicken products in reliance on the company's representation that its products are "100% Natural." La Fosse and Manier purchased Sanderson chicken in California, after having seen the "100% Natural" claim repeatedly in sources like grocery store flyers, Sanderson commercials, and on the Sanderson website. Norman made her Sanderson chicken purchases in North Carolina after having seen the "100% Natural" claim in Sanderson commercials. McPeak and Laquita Hyatt purchased Sanderson products in Texas, also after having seen the "100% Natural" claim in Sanderson commercials, on the side of trucks, and on the Sanderson website. Todd Hyatt purchased Sanderson chicken in Utah after having seen the "100% Natural" claim in Sanderson commercials, on the side of trucks, and on the Sanderson website. Jonice Hyatt purchased Sanderson chicken in Arizona after having seen the "100% Natural" claim in grocery store flyers, in Sanderson commercials, and on the Sanderson website. Each purchaser interpreted "100% Natural" to mean that Sanderson chickens were not given antibiotics or pharmaceuticals and were raised in a natural environment, and that the company's

---

[2] Facts are drawn from the FAC and must be taken as true for the purpose of deciding this motion.

[3] A full list of the chicken products at issue in this case is available in the first amended complaint. *See* First Amended Class Action Complaint, ECF No. 40, at 30–31.

chicken products could not and did not have any antibiotic or pharmaceutical residues or contribute to the evolution of antibiotic-resistant bacteria.

Plaintiffs collectively assert a claim for violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. ch. 50 § 2301 *et seq.* Manier and La Fosse assert violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, False Advertising Law, *id.* § 17500 *et seq.*, breach of express warranty, Cal. Com. Code § 2313, and unjust enrichment under California law. Manier alone asserts a violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* Norman asserts a violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, and breach of express warranty and unjust enrichment under North Carolina law. Laquita Hyatt and McPeak assert claims for breach of express warranty and unjust enrichment under Texas Law. Todd Hyatt asserts a violation of the Utah Consumer Sales Practice Act, Utah Code Ann. § 13-11-1 *et seq.*, and breach of express warranty and unjust enrichment under Utah law. Finally, Jonice Hyatt asserts a violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1522(A), and breach of express warranty and unjust enrichment under Arizona law.

### III.     LEGAL STANDARD

Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. Once a court's jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing it. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The proponent must "make a prima facie showing of jurisdictional facts" to withstand a motion to dismiss, but all disputed facts are resolved in the proponent's favor. *Id.* (internal citations omitted).

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient

factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### IV.   DISCUSSION

#### A. Failure to State a Claim

The federal MMWA creates a civil cause of action for consumers to enforce the terms of an express or implied warranty. *See* 15 U.S.C. §2310(d). The statute applies only to products that cost more than $5. *Id.* § 2302(e). MMWA claims may be brought in either state or federal court. *See id.* § 2310(d)(1). However, the federal courts lack jurisdiction over MMWA claims where: 1) the amount in controversy of any individual MMWA claim is less than $25; 2) the total amount in controversy for all claims in a case is less than $50,000; or 3) the number of named plaintiffs is less than one hundred. *See id.* § 2310(d)(3).

Here, it is unclear whether the FAC states sufficient facts to establish the subject matter jurisdiction necessary for this court to consider plaintiffs' MMWA claim. The FAC alleges a total amount in controversy exceeding $5,000,000, meeting the second section 2310(d)(3) requirement. FAC ¶ 9. However, nowhere does the FAC discuss the amount in controversy for any individual

claim, putting the first requirement in question, nor does the FAC discuss the cost of any Sanderson products at all, making it unclear if the MMWA even applies. Moreover, the current number of named plaintiffs is seven, far below the one hundred required by the third requirement. The FAC does state that "[u]pon certification, the Class will consist of more than 100 named Plaintiffs," FAC ¶ 240, but courts in this District have dismissed MMWA claims for failure to meet the requirement before class certification, *see, e.g.*, *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 965–66 (N.D. Cal. 2013) ("As there is only one named plaintiff in this action, and Brazil fails to allege that the products at issue cost more than five dollars, the Court lacks subject matter jurisdiction to review this claim."). Furthermore, courts in this District have split regarding whether the MMWA's jurisdictional requirements should be waived when an alternate basis for federal jurisdiction under the Class Action Fairness Act ("CAFA") exists. *Compare Wolph v. Acer Am. Corp.*, No. 09-cv-01314, 2009 U.S. Dist. LEXIS 83681, at *10 (N.D. Cal. Sept. 14, 2009), *with Sloan v. Gen. Motors LLC*, No. 16-cv-07244, 2020 U.S. Dist. LEXIS 24586, at *10–*11 (N.D. Cal. Feb. 11, 2020). Plaintiffs here have alleged jurisdiction under CAFA, but not without challenge by Sanderson. Because, as discussed below, the MMWA claim is substantively deficient, a side need not be taken in this jurisdictional dispute at the present juncture. However, these jurisdictional questions should be addressed clearly in any amended complaint.

The MMWA claim as pled in the FAC alleges that Sanderson's "100% Natural" statement constitutes a "written warranty" under the MMWA. The MMWA defines a "written warranty" as "any written affirmation of fact…or written promise…which relates to the nature of the material or workmanship and affirms or promises that such material is defect free or will meet a specified level of performance over a specified period of time[.]" *Id.* § 2301(6)(A). Courts in this District have consistently held that "100% Natural" and similar statements constitute "mere product descriptions" rather than actionable written warranties under the MMWA. *See, e.g.*, *Brazil*, 935 F.

Supp. 2d at 966 (finding "All Natural" was not a written warranty for MMWA purposes); *see also Kane v. Chobani, Inc.*, No. 12-cv-02425, 2013 U.S. Dist. LEXIS 134385, at *40 (N.D. Cal. Sept. 19, 2013) (same); *Astiana v. The Hain Celestial Group, Inc.*, No. 11-cv-06342, 2012 U.S. Dist. LEXIS 162530, at *2 (N.D. Cal. July 2, 2012) (finding same as to "Pure Natural" and "All Natural"). Plaintiffs therefore have failed to state a viable "written warranty" claim under the MMWA.

In their opposition, plaintiffs advance an additional theory: that because they have asserted state law warranty claims, they can pursue their MMWA claim regardless of whether Sanderson's representations constitute a "written warranty" under the MMWA. To support this argument, plaintiffs argue "[c]laims under the Magnuson-Moss Warranty Act 'stand or fall with…express and implied warranty claims under state law.'" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)). In *Daniel*, the Ninth Circuit reversed the dismissal of a state-law implied warranty claim, and in so doing revived the plaintiff's accompanying MMWA claim. *Id.* There, the claims rose and fell together necessarily, because the MMWA defines an "implied warranty" as "an implied warranty arising under State law[.]" 15 U.S.C. § 2301(7). Since the MMWA implied warranty claim was based on the state-law implied warranty claim, it was dismissed alongside it; when the state-law claim's dismissal was then reversed in *Daniel*, the basis for the MMWA claim was renewed, and the dismissal of the MMWA claim was therefore reversed as well.

Here, the FAC only includes state-law claims for breach of *express* warranty. It is therefore a different circumstance than in *Daniel*, which focused on *implied* warranty claims. This distinction is not without a difference because—in contrast to its definition of "implied warranty", which incorporates state law—the MMWA explicitly defines the term "written warranty" without reference to state-law definitions. 15 U.S.C. § 2301(6). As previously discussed, plaintiffs have

failed to demonstrate any actionable "written warranty" that meets the statute's definition. To allow Plaintiffs to salvage their deficient "written warranty" MMWA claim by tying it to separate state-law express warranty claims would render the statutory definition of a "written warranty" meaningless. The *Daniel* court "did not hold that a plaintiff could assert an MMWA claim even where it does not meet the statutory requirements of the claim." *Kao v. Abbott Labs. Inc.*, No. 17-cv-02790, 2017 U.S. Dist. LEXIS 187379, at *32 (N.D. Cal. Nov. 13, 2017) (dismissing similar MMWA claim because of inconsistency with the plain language of the statute). Since "100% Natural" does not constitute a "written warranty" under the MMWA's explicit definition, and the FAC does not include any implied warranty claims that might implicate the proposition in *Daniel*, the MMWA claim therefore fails under this argument and must be dismissed.

Perhaps anticipating this problem, plaintiffs in their opposition request leave to amend to add breach of implied warranty claims which might resurrect their MMWA claim. In particular, they seek to assert new implied warranty claims arising under various state laws. However, for the purposes of deciding the present motion, only those claims pled in the FAC are permissibly considered. "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) (citation omitted). The MMWA claim therefore must be dismissed as it is pled. However, plaintiffs will be accorded leave to amend, because they have demonstrated that amendment would not be futile. *See Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

### B. Personal Jurisdiction

Sanderson next argues personal jurisdiction is lacking over the claims asserted solely by the non-California plaintiffs. As in its prior motion to dismiss, Sanderson argues the Supreme Court's recent holding in *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017), precludes the exercise of jurisdiction over claims made solely by out-of-state

named class members. This argument was previously rejected, and pendent personal jurisdiction was exercised over such claims in the order dismissing a prior version of the complaint in this case. However, the possibility that developments, such as diversity becoming the only basis for federal jurisdiction or there existing no viable path to certification of a nationwide class, might down the line render the exercise of jurisdiction inappropriate was left open.

At this stage, that possibility has become reality. Given the dismissal of plaintiffs' MMWA claim, the only remaining basis for federal jurisdiction is diversity under CAFA. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 859 (N.D. Cal. 2018) (indicating a federal court sitting in diversity might decline to exercise pendent personal jurisdiction over out-of-state plaintiffs' claims). Moreover, the MMWA claim is the only claim in the FAC brought on behalf of all plaintiffs; all other claims are state-law claims brought only by the named class members from each state. Without the MMWA claim, it is unclear how plaintiffs intend to construct a putative nationwide class or what law would govern the claims of that class. *See Allen v. ConAgra Foods, Inc.*, No. 13-cv-01279, 2019 U.S. Dist. LEXIS 178454, at *7 (N.D. Cal. Oct. 15, 2019) (declining to exercise pendent personal jurisdiction after the nationwide class was decertified).

Plaintiffs argue that, even without a viable federal claim or path to nationwide class certification, judicial efficiency and the lack of "federalism" concerns counsel in favor of the exercise of pendent personal jurisdiction. It is true that the applicability of *Bristol-Myers* to class actions is an open question, and the Ninth Circuit has not opined on the issue. However, the "overwhelming majority of federal courts," including courts in this District, have found that "*Bristol-Myers* applies to claims brought by named plaintiffs in class actions…[and to] federal courts sitting in diversity." *Sloan v. Gen. Motors LLC*, No. 16-cv-07244, 2019 U.S. Dist. LEXIS 210191, at *28–*30 (N.D. Cal. Dec. 5, 2019) ("*Sloan II*"). *See also* Daniel Wilf-Townsend, *Did* Bristol-Myers Squibb *Kill the Nationwide Class Action?*, 129 YALE L.J. F. 205, 226 (2019)

("[T]here is consensus that *BMS*'s personal-jurisdiction holding applies to the named plaintiffs in a class action."). Since plaintiffs currently assert no viable federal claim or apparent nationwide class, the consensus articulated in *Sloan II* will be followed. Pendent personal jurisdiction will not be exercised over the out-of-state named plaintiffs at this juncture.

The Rule 12(b)(2) motion is thus granted, and all claims brought by the non-California plaintiffs are dismissed. Sanderson's arguments as to the merits of the out-of-state state law claims need not be considered, because the claims must be dismissed on jurisdictional grounds. However, plaintiffs will be given leave to amend to the extent they can plausibly allege a MMWA claim, or another claim which invites federal question jurisdiction or revives the possibility of a nationwide class. Should they do so, it may become appropriate to reverse course and exercise pendent personal jurisdiction again. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) ("[T]he actual exercise of pendent personal jurisdiction in a particular case is within the discretion of the district court.").

## V.   CONCLUSION

For the reasons set forth above, the motion to dismiss is granted. During the pendency of this motion, plaintiffs filed a separate motion requesting leave to file a second amended complaint. While the request to file that specific document is denied, plaintiffs may seek to file a new second amended complaint limited to addressing the defects identified in this order. Any amended complaint must be filed within 21 days from the date of this order.

**IT IS SO ORDERED**.

Dated: July 2, 2020

_____

RICHARD SEEBORG
United States District Judge