1
2
3
4
5
6
7
8
9
10
11
12

Jonathan D. Miller (Bar No. 220848)
jonathan@nshmlaw.com
Alison M. Bernal (Bar No. 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California  93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Attorneys for Plaintiffs and the Class

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAM La FOSSE and SHARON
MANIER, individually and on behalf of
all others similarly situated, and Does (1-
100) on behalf of themselves and all
others similarly situated,

        Plaintiffs,

    v.

SANDERSON FARMS, INC.

        Defendant.

CASE NO.:  19-cv-06570-RS
*Assigned for all purposes to the Hon.
Richard Seeborg, Courtroom 3, 17th
Floor*

**SECOND AMENDED CLASS
ACTION COMPLAINT**

**<u>Jury Trial Demanded</u>**

    Plaintiffs Pam La Fosse and Sharon Manier ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Class Members"), by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

1

        

## NATURE OF THE ACTION

1.     This is a class action brought on behalf of California consumers who purchased Sanderson chicken products, as listed *infra* ¶ 50 (the "Products"), which Defendant Sanderson Farms, Inc. ("Sanderson") sold based on misleading representations in its advertising.

2.     Sanderson's advertising misleads consumers in four ways:

    a.  Sanderson's advertising misleads consumers into believing Sanderson's chickens were not given antibiotics or other pharmaceuticals;

    b.  Sanderson's advertising misleads consumers into believing the chickens were raised in a natural environment;

    c.  Sanderson's advertising misleads consumers into believing there is no evidence that the use of antibiotics and other pharmaceuticals in poultry contributes to the evolution of antibiotic-resistant bacteria; and

    d.  Sanderson's advertising misleads consumers into believing the Products do not contain any antibiotic or pharmaceutical residue.

3.     However, the truth is the feed Sanderson gives to its chickens contains antibiotics and pharmaceuticals; the chickens are raised indoors in crowded and dirty sheds, which is one reason why its use of antibiotics is necessary; there is extensive reliable evidence that the use of antibiotics in poultry contributes to antibiotic-resistant bacteria; and Sanderson's chickens have been found to contain antibiotic and pharmaceutical residue.

4.     Sanderson's advertising makes extensive use of the phrase "100% Natural," to emphasize and support its misleading claims, in conjunction with assorted direct falsehoods, half-truths, and selective omissions concerning the four misrepresentations described above.

5.     Plaintiffs and reasonable consumers believe "100% Natural" means the

2

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

chickens are not fed or injected with antibiotics or pharmaceuticals, and that accordingly, the chickens are not sold with antibiotics or pharmaceutical residue in them and there is no danger of antibiotic use contributing to the development of antibiotic-resistant bacteria, and the chickens are raised in a natural and humane environment.

6. Having purchased Products sold with these misrepresentations, Plaintiffs and Class members suffered injury in fact, and a loss of money or property as a result of Defendant's conduct in advertising, marketing and selling the Products falsely claimed to be "100% Natural," in addition to the misrepresentation described above. Sanderson has failed to remedy this harm and has earned, and continues to earn, substantial profit from selling the Products.

7. Defendant's conduct violated and continues to violate California consumer protection statutes and Sanderson's express warranties. In addition, Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

8. In addition, Plaintiffs seek injunctive relief requiring Sanderson to remove the misrepresentations and to make corrective and clarifying statements.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class Member is a citizen of a state different from Defendant. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California, or has otherwise purposely availed

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

itself of the markets in California through the promotion, advertising, marketing, and sale of the Products in California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.    Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendant does substantial business in this District; and (2) a substantial part of the events or omissions giving rise to these claims occurred in this District, and Defendant engaged in the extensive promotion, advertising, marketing, distribution, and sales of the Products at issue in this District.

## PARTIES

### Plaintiffs

#### *Sharon Manier*

12.    Plaintiff Sharon Manier is a consumer who, at all relevant times hereto, was a resident of Riverside, California.

13.    Ms. Manier has seen flyers from Food 4 Less at least monthly over the past five years, many of which contain pictures of Sanderson chicken with the "100% Natural" representation similar (but not identical) to the two pictures below:



14.    On or about October 17, 2019, Ms. Manier consulted Sanderson's website in preparing to host a family dinner. On that occasion, she viewed several pages on the website and saw various representations by Sanderson, including the

4

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

below three graphics:





15.     On or about October 17, 2019, Ms. Manier also watched the "Bob and Dale" commercials on the internet. She saw the discussions and representations about the chicken not containing antibiotics when it leaves the farm and the "100% Natural" panel at the end of the commercials.

16.      Ms. Manier also consulted Sanderson's website and saw the above representations at other times but does not recall the exact dates she did so.

17.      Ms. Manier has bought Sanderson chicken every month for more than five years (including for the family dinner referenced above). She purchased drumsticks, wings, breasts, and thighs.

18.      Ms. Manier purchases the chicken monthly at Food 4 Less in Riverside, California. She also purchased Sanderson chicken at Wal-Mart.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

19.     Ms. Manier has always relied on Sanderson's "100% Natural" representation when making her purchase decisions.

20.     Ms. Manier has always believed, based on Sanderson's "100% Natural" representations, that Sanderson chickens have not been given antibiotics or pharmaceuticals.

21.     Ms. Manier has always believed, based on Sanderson's "100% Natural" representations, that Sanderson chickens do not have antibiotics or pharmaceuticals in them when sold.

22.     Ms. Manier has always believed, based on Sanderson's "100% Natural" representations, that Sanderson chickens were not raised in a way that contributed to the development of bacteria that can resist antibiotics.

23.     Ms. Manier has always believed, based on Sanderson's "100% Natural" representations, that Sanderson chickens were not raised in crowded, unclean environments.

24.     Ms. Manier also relied on the statement on Sanderson's website "No Additives Or Artificial Ingredients. Not Ever."; the statement: "At Sanderson Farms we pride ourselves in delivering the safest, most wholesome poultry, with nothing added. So you know what you're getting every time."; and on the internet commercials, for her belief that the chickens are not fed or injected with antibiotics or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical residue in them; and that there is no danger of Sanderson's antibiotic use contributing to the development of antibiotic-resistant bacteria.

25.     Ms. Manier was deceived by Sanderson's misrepresentations and was damaged because she purchased the chicken. If Ms. Manier had known the truth about the Sanderson chicken, she would not have bought it at all, or would not have paid as much as she did for it.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

***Pam La Fosse***

26.     Plaintiff Pam La Fosse is a consumer who, at all times material hereto, was a resident of San Bernardino County, California.

27.     Ms. La Fosse saw the following image on Sanderson's website in approximately 2015-2017:



28.     Ms. La Fosse saw some of the commercials, including the following image at the end of the commercials:



29.     From 2015 to 2017 Ms. La Fosse also saw circulars from Albertson's and Vons Market advertising Sanderson's chicken products that contained the pictures similar to the following "100% Natural" images:

7

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101



30.    Ms. La Fosse has also seen Sanderson tractor-trailer rigs with the "100% NATURAL" statement on the side but does not recall exactly when. An example is below:



31.    Ms. La Fosse purchased boneless, skinless chicken breasts from Albertson's in Palm Springs, California and Vons Market in Yucca Valley, California approximately eight times in 2015 through 2017.

32.    Ms. La Fosse relied on the "100% Natural" statements in deciding to purchase Sanderson chicken.

33.    Ms. La Fosse has always believed, based on Sanderson's "100% Natural" representations, that Sanderson chickens have not been given antibiotics or pharmaceuticals.

34.    Ms. La Fosse has always believed, based on Sanderson's "100%

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

1  Natural" representations, that Sanderson chickens do not have antibiotics or

2  pharmaceuticals in them when sold.

3      35.    Ms. La Fosse has always believed, based on Sanderson's "100%

4  Natural" representations, that Sanderson chickens were not raised in a way that

5  contributed to the development of bacteria that can resist antibiotics.

6      36.    Ms. La Fosse has always believed, based on Sanderson's "100%

7  Natural" representations, that Sanderson chickens were raised in a natural

8  environment.

9      37.    Ms. La Fosse has always believed, based on Sanderson's "100%

10  Natural" representations, that Sanderson chickens were treated humanely.

11      38.    Ms. La Fosse also relied on the statement on the website "At Sanderson

12  Farms we pride ourselves in delivering the safest, most wholesome poultry, with

13  noting added. So you know what you're getting every time."; and on the

14  commercials, for her belief that the chickens are not fed or injected with antibiotics

15  or pharmaceuticals; that the chickens are not sold with antibiotics or pharmaceutical

16  residue in them; and that there is no danger of Sanderson's antibiotic use

17  contributing to the development of antibiotic-resistant bacteria.

18      39.    Ms. La Fosse was deceived by Sanderson's misrepresentations and was

19  damaged because she purchased the chicken. If Ms. La Fosse had known the truth

20  about the Sanderson chicken, she would not have bought it at all, or would not have

21  paid as much as she did for it.

22  **Defendant**

23      40.    Defendant Sanderson Farms, Inc. is a corporation organized and

24  existing under the laws of the State of Mississippi. Its principal place of business

25  and headquarters are maintained at 127 Flynt Road, Laurel, Mississippi. Sanderson

26  is a publicly traded company with annual revenue routinely exceeding $3 billion.

27  During Fiscal Year 2019 Sanderson processed 4.61 billion pounds of chickens with

28  sales exceeding $3.4 billion dollars.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

9

1      41.    Sanderson sells its chicken through supermarket chains throughout

2  California and through other outlets.

3      42.    Defendant Sanderson disseminates the false representation that the

4  Products are "100% Natural" in a widespread advertising campaign, including on its

5  website, in television, radio and internet commercials, in print advertising, and on

6  trucks and billboards.

7      43.    In addition, Sanderson encourages resellers and supermarket chains to

8  use images of the Products in their print and internet advertisements in order to

9  "promote the sale of Sanderson Farms 100% natural chicken."[1] The pictures below

10  are examples of the type of advertising used in flyers in supermarkets:



NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[1] *See* https://sandersonfarms.com/corporate/media-library/product-imagery/ (last visited August 29, 2019).

SECOND AMENDED CLASS ACTION COMPLAINT      Case No. 19-cv-06570-RS



SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101



44.    Defendant also labels the Products "100% Natural" but Plaintiffs challenge Sanderson's advertising, not the Products' labels.

45.    However, Plaintiffs do challenge the pictures of the Products, which include the labels, when they are used for purposes of advertising in flyers, circulars, print ads or other media.

46.    Currently, three poultry producers dominate the market, with Sanderson claiming to sit in third place.

47.    Of the top three poultry producers, only Sanderson does not offer at least some poultry that has never been exposed to antibiotics. Instead, Sanderson uses its "100% Natural" claims and advertising to compete with the top two producers' lines of antibiotic-free poultry. According to Sanderson's 2019 report to its shareholders, since 2004 Sanderson has been working to gain public awareness and acceptance of its product as a "natural product" an effort that Sanderson continues today. [2] Sanderson also stated that it launched campaigns in fiscal 2016 and 2017 "to explain and support the Company's position regarding the judicious

[2] This report is available at http://ir.sandersonfarms.com/index.php/static-files/dd7be81d-df8a-4e22-b267-89cc6e9dcc89 and was last visited July 22, 2020.

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    use of antibiotics to prevent illness and treat chickens that become ill" and "to dispel

2    many of the myths about poultry production." These efforts are designed to mislead

3    consumers into believing that Sanderson chicken, like its more expensive

4    competitors, was raised without antibiotics.

5         48.     Sanderson knows the value of antibiotic-free representations.

6    Sanderson (and competitor Perdue Farms) once brought a Lanham Act claim against

7    Tyson Foods, Inc., a leading competitor and one of the top three poultry producers

8    in the United States, for running ads saying that Tyson chicken was "raised without

9    antibiotics." *Sanderson Farms, Inc. v. Tyson Foods Inc.*, Civ. No. 08-210 (D.Md.

10    *filed* Jan 25, 2008). Sanderson argued that Tyson was, in fact, using antibiotics to

11    raise its chicken and should be enjoined from running the ads. The court granted the

12    injunction.

13         49.     Sanderson is responsible for the claims and advertisements for its

14    Products, including on its website where it specifically discusses the "100%

15    Natural" claims[3] and makes the representations discussed herein regarding the

16    Products.

17                    **FACTUAL BACKGROUND**

18    **Sanderson Chicken Products**

19         50.     Sanderson's Chicken Products, all of which are marketed as "100%

20    Natural" include the following:[4]

21       •    Clipped Chicken Tenderloins

22       •    Boneless Skinless Chicken Thigh Fillets

23       •    Boneless Skinless Breast Strips

24

25

26    [3] *See* https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 27,

27    2019).

28    [4] Discovery may indicate additional products should be included within the scope of this Complaint, and Plaintiffs reserve the right to add those products.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

- Thinly Sliced Boneless Skinless Breast Fillets
- Boneless Skinless Breast Fillets
- Best of Boneless
- Boneless Skinless Breast Chunks
- Family Pack Whole Legs
- Whole Legs
- Family Pack Wingettes
- Wingettes
- Drumsticks & Thighs Combo
- Skinless Drumsticks
- Chicken Hearts
- Value Pack Chicken Gizzards
- Skinless Split Breast
- Family Pack Chicken Tenderloins
- Chicken Tenderloins
- Family Pack Boneless, Skinless Chicken Breast Fillets with Rib Meat
- Skinless Thighs
- Family Pack Thighs
- Thighs
- Value Pack Thighs
- Value Pack Leg Quarters
- Value Pack Wings
- Value Pack Drumsticks
- Value Pack Split Breasts
- Chicken Necks
- Wing Drumettes
- Family Pack Drumsticks
- Family Pack Thighs

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

14

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

- Family Pack Leg Quarters
- Whole Roasting Chicken
- Pick of the Chicken
- Family Pack Wings
- Family Pack Split Breasts
- Livers Chicken Gizzards
- Stripped Back Portions
- Wings
- Thighs
- Drumsticks
- Split Breasts
- Whole Cut-Up Chicken with Giblets and Neck
- Whole Frying Chicken (Whole Young Chicken).

51.     An example of Sanderson's Chicken Products is reproduced here:[5]



_____

[5] Plaintiffs challenge the advertising of these products, not the product labels, except to the extent that they are used directly in advertising, *e.g.*, in flyers sent out by grocery stores and markets in keeping with Sanderson's advertising guidelines. For example, Sanderson encourages resellers to use images like the one in paragraph 15 in their print and internet advertisements in order to "promote the sale of Sanderson

15

52.     The Chicken Products are available for purchase under the Sanderson Farms brand at retail locations throughout California at stores such as Wal-Mart, Sam's Club, Albertson's, Vons, Food 4 Less, Foods Co, and WinCo Foods.[6]

53.     Sanderson markets and advertises its Chicken Products throughout California and nationally, and seeks to reach consumers through commercials on television, print advertising, radio advertising, email newsletters, billboard advertising, and online marketing such as Facebook, YouTube, Instagram, Pinterest, and its own website.

**<u>Sanderson's False and Misleading Advertising, Including Its "100% Natural" Representations</u>**

54.     In an extensive national advertising campaign, including in California, Sanderson misleads consumers into believing its chickens are not raised with pharmaceuticals or antibiotics; that the chickens are raised in a natural environment; that the use of antibiotics in poultry cannot promote the evolution of antibiotic-resistant bacteria; and that the Products cannot possibly have any antibiotic or pharmaceutical reside when sold.

55.     In addition to specific false and misleading statements described below, Sanderson uses the phrase "100% Natural" in different contexts throughout its advertising to bolster these misrepresentations. Sanderson repeatedly makes false "100% Natural" representations in various media—television, website, social media, print magazines, radio advertising, billboards, trucks, etc.—when in fact its chicken production process and resulting products do not meet reasonable consumer expectations for products advertised as "100% Natural."

---

Farms 100% natural chicken." *See* https://sandersonfarms.com/corporate/media-library/product-imagery/ (last visited August 29, 2019). Accordingly, Sanderson is responsible for the content of the flyers and circulars.

[6] Sanderson Farms, "Find A Store," http://www.sandersonfarms.com/store-finder/ (last visited August 29, 2019).

16

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

56.    The use of the term "natural," let alone "100% Natural," is a powerful statement that is important to consumers.

57.    A 2015 Consumer Reports[7] survey found that 62% of consumers purchase "natural" products, and that 87% of those purchasers are willing to pay more for products called "natural" that meet their expectations as to what "natural" means.[8] A 2016 survey found the number of consumers who purchase "natural" products to be as high as 73%.[9]

58.    According to surveys by Consumer Reports, the meaning of the term "natural," even isolated from Sanderson's many other specific misrepresentations, conveys a message entirely at odds with the reality of Sanderson's practices. For example, 88% of consumers expect that meat with a "natural" label meant that the

---

[7]  Consumer Reports, founded in 1936, is "an independent, nonprofit member organization that works side by side with consumers for truth, transparency, and fairness in the marketplace." It has six million members and tests tens of thousands of products annually to provide consumers with product reviews. Consumer Reports, "About Us", available at https://www.consumerreports.org/cro/about-us/what-we-do/index.html (last visited August 30, 2019). CR has a Survey Research department that conducts more than one hundred surveys per year. Its surveys are not commissioned or financed by industry. Available at https://www.consumerreports.org/cro/about-us/what-we-do/research-and-testing/index.html (last visited August 30, 2019). In October 2018, CR published a front-page story on its monthly magazine titled, "What's Really in Your Meat?" Available at https://www.consumerreports.org/food-safety/are-banned-drugs-in-your-meat/ (last visited August 30, 2019). The article title for the online version is "Are Banned Drugs in Your Meat".

[8] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 2, available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).

[9] Consumer Reports National Research Center, "Food Labels Survey" (2016), at 5, available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

17

meat "came from an animal whose diet was natural and free of chemicals, drugs and other artificial ingredients."[10]

59.     Further, 50% of consumers believe use of the term "natural" means the animal went outdoors,[11] and 83% expect the "natural" label means the animal was raised in a natural environment.[12]

**Allegations Concerning The Misrepresentation That The Chickens Are Not Raised With Antibiotics Or Pharmaceuticals**

60.     Sanderson misleads consumers into believing its chickens are raised without antibiotics or pharmaceuticals. Its carefully crafted message makes constant use of the "100% Natural" representation in conjunction with advertising that attacks competitors who use the term "raised without antibiotics." Sanderson says that "raised without antibiotics" is a meaningless statement because, Sanderson says, "all chickens must be cleared of antibiotics when they leave the farm." The message is that all chickens, including Sanderson's, are the same because they do not have any antibiotics.

61.     The likely reason Sanderson embarked on this ad campaign is because the government would not let it use the phrase "raised without antibiotics" on its packaging like its competitors do, because Sanderson routinely feeds antibiotics to its chickens.[13]

_____

[10] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.

[11] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 4, available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf pdf (last visited August 30, 2019).

[12] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.

[13] "Sanderson Farms to Curb Human Antibiotic Use in Chicken Supply," https://www.reuters.com/article/sanderson-farms-chickens-antibiotics/sanderson-farms-to-curb-human-antibiotic-use-in-chicken-supply-idUSL2N1Y512R (last

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

18

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

62.     In order to use the phrase "raised without antibiotics" on the label, the USDA requires the source animals were not given antibiotics in their feed, water or by injection.

63.     Sanderson tries to get around this labeling prohibition with its unregulated ad campaign centered on the "100% Natural" statement, which misleads consumers into believing Sanderson's chickens are the same as those of its competitors.

64.     The phrase "raised without antibiotics" is important to consumers. A 2007 Consumer Reports survey found that six out of ten Americans would pay more for meat/poultry with the 'raised without antibiotics' label and 89% of consumers say all meat companies should be required to disclose the amount and type of antibiotics used.[14]

65.     As a result, in an end run around government regulation, Sanderson tries to trick consumers into believing that no chicken contains antibiotics and the "raised without antibiotics" statement on the packaging of its competitors is meaningless verbiage and that its chickens are the same as those bearing the "raised without antibiotics" statement.

66.     This message is hammered home in several television and web commercials.

67.     In a "Bob and Dale" television commercial called "The Truth About Chicken: Supermarket" Sanderson states that by federal law all chickens must be cleared of antibiotics when they leave the farm and makes the point that all chickens

_____

visited March 22, 2020). The article does not state whether Sanderson will curb the use of veterinary antibiotics.

[14] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

19

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

in the supermarket are free of antibiotics, including Sanderson's. This commercial has over 90 million impressions on television and over six million views on YouTube and Facebook.

68. Sanderson misleads consumers by stating: "Some chicken companies try to get you to spend more money by using labels like 'raised without antibiotics.' At Sanderson Farms, we don't believe in gimmicks like that." The commercial then shows a person piling a variety of chicken brands, selected while blindfolded, into a cart and saying, "no antibiotics to worry about here."

69. This statement is misleading because the message the commercial conveys is that no chicken (including Sanderson's) contains antibiotics, and that the phrase "raised without antibiotics" is a "gimmick." Sanderson places itself on the same plane as its competitors who do not raise chickens with antibiotics. In reality, Sanderson uses antibiotics, while its key competitors do not.

70. The thirty-second commercial ends by showing the above panel for four seconds.



71. In another "Bob and Dale" commercial, "The Truth About Chicken: Mr. Floppy Arms" Sanderson makes the same points, calling its competitors' statement "raised without antibiotics": "full of hot air and doesn't say much"; "a trick to get you to pay more money" and "a marketing gimmick." The thirty-second commercial ends with the same "100% Natural" panel and has over 100 million impressions on television.

72.     In "Marketing Guru," Bob and Dale ridicule a Madison Avenue ad executive who "likes to use the phrase 'raised without antibiotics.'" Bob and Dale state that the phrase was invented to make chicken sound safer but is meaningless. The thirty-second commercial ends with the same "100% Natural" panel (¶70, *supra*) and has over 80 million impressions on television.

73.     In the commercial "Truth About Chicken: Labels," Sanderson calls the claim that competitors' chickens are raised without antibiotics a ruse to "trick people and charge higher prices" and "marketing speak." Sanderson then says it feeds its chickens a healthy, balanced diet full of vitamins and "animal protein like they naturally eat" and notes that "labels can be misleading." Sanderson does not disclose that it uses either antibiotics or pharmaceuticals in the feed.

74.     The deception regarding pharmaceutical use, including antibiotics, is also made in at least one 2016 video[15] titled, "How We Grow Our Chicken." In the video a Corporate Veterinarian describes Sanderson's hatchery process and states, "This single combined injection under the shell is the only time we inject antibiotics, leaving little opportunity for resistance to develop and no residues in the grown broilers weeks later when they go to market." Sanderson continues, "[a]t no point are Sanderson Farms broilers ever injected with anything and there are never any antibiotic residues in our broilers when they go to market."

75.     This representation is misleading for several reasons: First, although Sanderson is careful to limit its statement to "injections," Sanderson operates its own feed mills, and routinely adds pharmaceuticals and antibiotics to the chickens' feed.

76.     Second, Sanderson contradicts itself regarding whether Sanderson

---

[15] Available at https://www.youtube.com/watch?time_continue=275&v=Fghbb4lYaiU (last visited October 7, 2019).

21

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

injects broiler chickens or not, by stating that it injects antibiotics into the shells of the chickens' eggs, but not the chickens themselves.

77.     Sanderson gives the impression the chickens are raised without using synthetic feed or injections by playing on the nuances in regulated and unregulated terms such as "no antibiotics ever," "raised without antibiotics," and Sanderson's claim of being "cleared" of antibiotics.

78.     One YouTube viewer expressed confusion by commenting, "'is the only time we use antibiotics'. I thought you guys said all Chickens in the US are supposedly antibiotic free or that you guys don't use them?"[16]

79.     Consumer surveys support the allegation that Sanderson's use of the ubiquitous "100% Natural" representation misleads reasonable consumers into believing the chickens are raised without antibiotics.

80.     Consumer Reports has performed several surveys on food marketing, including in 2007,[17] 2008,[18] 2015,[19] 2016,[20] and 2018.[21]

81.     The 2015 survey found that when "natural" is used to describe meat

_____

[16] *Id.*

[17] Consumer Reports National Research Center, "Food Labeling Poll" (2007), not available online.

[18] Consumer Reports National Research Center, "Food-Labeling Poll 2008" (2008), available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf (last visited August 30, 2019

[19] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), available at https://foodpolitics.com/wp-content/uploads/Consumer-Reports-Natural-Food-Labels-Survey-Report.pdf (last visited August 30, 2019).

[20] Consumer Reports National Research Center, "Food Labels Survey" (2016), available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).

[21] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

22

and poultry:

    a.  57% of consumers think no antibiotics or other drugs were used;

    b.  61% of consumers think the animals' feed contained no artificial ingredients or colors and 59% think there were no GMOs in the feed;

    c.  88% of consumers expect meat with a "natural" label meant the meat "came from an animal whose diet was natural and free of chemicals, drugs and other artificial ingredients."[22]

82.  Sanderson's other main competitors have product lines that are brought to market wholly without antibiotics and Sanderson's advertising misleads consumers into believing Sanderson follows the same practices.

83.  Sanderson makes the same misrepresentation on its website. It represents its chicken as "100% Natural" on the homepage of its current website and states that its chicken is "nothing but the safest, most wholesome poultry, with nothing added."[23]

---

[22] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.

[23] *See* https://sandersonfarms.com/ (last visited August 29, 2019).

SECOND AMENDED CLASS ACTION COMPLAINT          Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

84.     The "Learn More" button on the homepage takes consumers to a current webpage devoted to its "100% Natural" representation.[24]

> # 100%
> # Natural
>
> We believe that delicious, quality chicken should be able to stand on its own. Always. At Sanderson Farms, we pride ourselves in delivering nothing but the safest, most wholesome poultry, with nothing added. So you know what you're getting every time.
>
> **Learn More**  ›

---

[24] *See* https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 29, 2019).

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

85.     This page states "There's Only Chicken In Our Chicken. Seriously."[25] and "No Additives Or Artificial Ingredients. Not Ever.[26]



## No Additives Or Artificial Ingredients. Not Ever.

86.     Sanderson does not disclose its use of antibiotics or pharmaceuticals in the feed given to its chickens on the "Learn More" page.

87.     Elsewhere on its website, Sanderson also makes the following statements to further mislead consumers into thinking that Sanderson does not routinely use pharmaceuticals in raising the chickens:

- "That means no additives, no unpronounceable ingredients, nothing extra. Just 100% natural chicken that's healthy and a treat for your taste buds."[27]

- "100% Natural. We firmly stand behind our commitment to keep things

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[25] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2018).
[26] *Id.*
[27] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2019).

the way nature intended."[28]

- "The Myth: The myth is, only chicken raised without antibiotics are safe to eat. The Truth: The truth is, none of the chicken you buy in the grocery store contains antibiotics. By federal law, all chickens must be clear of antibiotics before they leave the farm."[29]

88.     In a video on its website, Sanderson touts the nutritional value of the chickens' "corn and soy-based diets"[30] but omits any mention of pharmaceuticals and antibiotics.



89.     In addition, Sanderson maintains on its website[31] a "Christmas TV

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[28] Available at https://sandersonfarms.com/?s=subscribe (last visited August 30, 2019).

[29] https://sandersonfarms.com/chicken-myths/ (last visited September 5, 2019).

[30] https://www.youtube.com/watch?time_continue=80&v=Fghbb4lYaiU (last accessed September 5, 2019).

[31] Available at https://sandersonfarms.com/corporate/media-library/brand-assets/

26

1 Commercial" linked to YouTube using the same "100% Natural" tagline.



Merry Christmas and Happy Holidays from Sanderson Farms!

90.     Sanderson also represents that the Products are "100% Natural" on its current newsletter subscription webpage and further adds that: "We firmly stand behind our commitment to keep things the way nature intended."[32]

91.     Sanderson further emphasizes its representation of "100% Natural" message by sending a monthly 100% Natural Newsletter to over 600,000 annual readers across 42 different states.[33] Sanderson has continued to publish this newsletter in 2020.[34]

_____

(last visited August 30, 2019)
[32] Available at https://sandersonfarms.com/?s=subscribe (last visited August 30, 2019).
[33] See https://sandersonfarms.com/press-releases/sanderson-farms-awarded-twenty-public-relations-advertising-awards/ (last visited August 30, 2019).
[34] See https://sandersonfarms.com/blogs/section/100-natural-newsletter/ (last visited March 21, 2020).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

92.     Sanderson advertises the Products as "100% Natural" in print magazines across the country, including in California.

93.     Sanderson advertises itself as "100% Natural" via radio.

94.     Sanderson Farms trucks advertise "100% Natural" on the sides:



95.     In another Facebook post Sanderson also repeats its statements that "raised without antibiotics" is a misleading statement:

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

28




96.     All of these statements were made within the applicable statute of limitations, and many continue as of this filing.

**Allegations Concerning The Misrepresentation That The Chickens Are Raised Outdoors In A Natural Environment**

97.     Sanderson's representations would mislead a reasonable consumer into believing its chickens were raised in a natural environment and in a humane manner.

98.     In addition to the "100% Natural" claims discussed *supra,* Sanderson, addressing animal welfare on its website, represents that "[a]t Sanderson Farms, we believe in raising our chickens humanely to ensure their safety, nutrition, and overall health."

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS



## Our Birds Come First

At Sanderson Farms, we believe in raising our chickens
humanely to ensure their safety, nutrition, and overall health.

99.   Sanderson reinforces this claim and the general false impression of high animal welfare standards with recent TV commercials of chickens being given pricey gifts from humans and chickens dining in restaurants, a TV commercial titled "Old MacGimmick,"[35] and in the past, images of chickens playing volleyball and sipping lemonade.

100.   On its website, Sanderson states: "[t]he truth is, none of the chicken you buy in a store is raised in a cage. Chickens are raised in spacious, climate-controlled houses where they are free to eat, drink, and walk around all they want."[36]

101.   The houses are also described as "a comfortable, cage-free environment" where "our chickens live in a spacious, climate-controlled environment with unlimited access to food and water. The only time our chickens are caged is for their safety when they're being transported from the farm to the processing plant."[37]

---

[35] Available at https://www.ispot.tv/ad/w10S/sanderson-farms-old-macgimmick?autoplay=1 (last visited August 30, 2019).
[36] https://sandersonfarms.com/chicken-myths/#4th (last accessed September 5, 2019).
[37] https://sandersonfarms.com/our-chickens/animal-welfare/ (last accessed September 5, 2019)

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

102.   According to a 2016 Consumer Reports survey,[38] a significant portion of consumers would be misled by Sanderson's statements regarding how it treats its birds. Specifically, 82% of consumers think a "humanely raised" representation, such as the one Sanderson makes on its website, *supra* ¶ 98, means the farm was inspected to verify this claim, 77% think the animals had adequate living space, 68% think the animals went outdoors, and 65% think the animals were raised in houses with clean air.[39]

103.   In addition, in 2007 Consumer Reports Natural Research Center reported that when the word "natural" is used to describe poultry, let alone Sanderson's claim of "100% Natural," 50% of consumers think the animals went outdoors,[40] and 83% expect the "natural" label meant the animal was raised in a natural environment.[41]

104.   Sanderson's statements on how it treats its chickens are false and misleading because in reality, Sanderson's chickens are raised in crowded barns (that also contribute to the growth of antibiotic resistant bacteria), and the chickens are raised in intensive confinement, only indoors,[42] where they never get sunlight

---

[38] Food Labels Survey (2016), available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited September 3, 2019).
[39] *Id.* at 16.
[40] Consumer Reports National Research Center, "Natural Food Labels Survey" (2015), at 4, available at http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf pdf (last visited August 30, 2019).
[41] Consumer Reports National Research Center, "Food Labeling Poll" (2007), at 15, not available online.
[42] The industry standard, including Sanderson, is indoors. "Almost all the chickens eaten in the United States, and increasingly in the rest of the world, have been raised for decades in this manner: always indoors, always under artificial light, always eating only what the farmer supplies." Maryn McKenna, "Big Chicken," iBooks (2017), available at https://itunes.apple.com/us/book/big-

31

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  except when they are transported for slaughter.

2      105.   As for the crowding and stocking density inside chicken sheds, an

3  industry guide recommended 1.097 to 1.180 square feet per bird. The industry

4  standard for a grow-out house is 20,000 birds or more, with eight-tenths of a square

5  foot per bird.[43] Sanderson recently reported that it lost 2.1 million birds in Hurricane

6  Florence who were housed in 70 grow-out sheds; that is approximately 30,000 birds

7  per shed,[44] even more than the 25,000 to 27,000 birds per shed identified by

8  Sanderson's veterinary staff. A reasonable consumer would not think that sheds with

9  approximately 25,000 to 30,000 birds with approximately one square foot per bird is

10  "natural."

11      106.   Sanderson also subjects its birds to cruel, inhumane treatment. A 2016

12  investigation at the Kinston, N.C. hatchery farm has revealed the horrific conditions

13  in which Sanderson's chicks are left to die.[45] The Animal Welfare Institute, based

14  on the USDA inspection records, determined the Sanderson chicken plant in Collins,

15  Mississippi, was one of the nine worst chicken plants of three hundred surveyed for

16  animal cruelty.[46] AWI also found that two Sanderson plants have been cited at least

17

18

19  chicken/id1217089199?mt=11.

20  [43] National Chicken Council, "Animal Welfare for Broiler Chickens", available at
https://www.nationalchickencouncil.org/industry-issues/animal-welfare-for-broiler-
chickens/#one (last visited September 3, 2019)

21
22  [44] Mother Jones, "These Photos of Submerged North Carolina Livestock Farms Are
Devastating," https://www.motherjones.com/food/2018/09/these-photos-of-

23  submerged-north-carolina-livestock-farms-are-devastating/ (last visited September
3, 2019); *see also* https://sandersonfarms.com/press-releases/sanderson-farms-inc-

24  provides-update-hurricane-florence-damage/ (last visited September 3, 2019)

25  [45] PETA, "Chicks Dropped Live Into Mincer at Chicken Supplier of Kroger,
Arby's," available at https://investigations.peta.org/chicken-supplier-kroger-arbys/

26  and https://www.peta.org/media/news-releases/exposed-chicks-left-suffer-die-
chicken-meat-supplier-kroger-arbys/ (last visited September 3, 2019).

27
28  [46] *See* Animals 24-7, "Pilgrim's Pride & Case Farms have "worst chicken plants for
animal cruelty," say Animal Welfare Institute & Farm Sanctuary," available at

20 times for not complying with humane handling standards[47] (the Palestine, Texas facility had 20 humane handling reports in 2015-2016, and the Kinston, North Carolina facility had 22 reports for 2011-2014).[48] The Palestine violations included, among others, excessive use of force, improper sorting of "DOAs and live birds" and birds drowning in the scald tank. In 2016, a USDA inspector determined the plant's slaughtering process was "out of control" for the scald tank violations and noted that similar incidents had taken place before.[49]

### Allegations Concerning the Misrepresentation That There is No Evidence the Use of Antibiotics in Poultry Contributes To The Evolution of Antibiotic-Resistant Bacteria

107.    Based on Sanderson's advertising, a reasonable consumer would believe Sanderson's "100% Natural" claim means its chickens were raised in a manner that does not contribute to the development of antibiotic-resistant bacteria.

108.    As described, *supra* ¶¶ 60-96, Sanderson goes to great lengths to conceal the fact that it uses pharmaceuticals and antibiotics in its chicken feed.

109.    Coupled with the numerous representations that its chickens are "100% Natural," and its repeated statements to the effect that "raised without antibiotics" is a marketing gimmick to which no attention need be paid in the

---

https://www.animals24-7.org/2014/11/22/pilgrims-pride-case-farms-have-worst-chicken-plants-for-animal-cruelty-say-animal-welfare-institute-farm-sanctuary/ (last visited September 3, 2019).

[47] Animal Welfare Institute, "New Report Exposes Pattern of Animal Mistreatment in Some US Poultry Plants," available at https://awionline.org/press-releases/new-report-exposes-pattern-animal-mistreatment-some-us-poultry-plants (last visited September 3, 2019).

[48] Animal Welfare Institute, "The Welfare of Birds At Slaughter In The United States - 2017 Update", at 9, available at https://awionline.org/sites/default/files/uploads/documents/FA-AWI-Welfare-of-Birds-at-Slaughter-Update.pdf (last visited September 3, 2019).

[49] *Id.*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

comedic Bob and Dale commercials, *supra* ¶¶ 67-73, Sanderson seeks to convince consumers their concerns about the evolution of antibiotic-resistant bacteria are something to be laughed off.

110.    However, this is an important issue to consumers. According to the 2016 Consumer Reports survey, 65% of consumers are concerned that feeding antibiotics or other drugs to animals leads to antibiotic resistant bacteria,[50] and the 2018 survey showed that 77% of consumers were concerned that feeding antibiotics to farm animals would make drugs less effective for humans.[51] Of those, 43% were either "extremely" or "very" concerned.

111.    Sanderson further downplays the risk of the spread of antibiotic-resistant bacteria by telling consumers "no antibiotics to worry about here," and "the truth is, none of the chicken you buy in the grocery store contains antibiotics. By federal law, all chickens must be clear of antibiotics before they leave the farm."[52]

112.    Sanderson's misrepresentations about the risks of the evolution of antibiotic-resistant bacteria stemming from agricultural use of antibiotics have been

---

[50] Consumer Reports National Research Center, "Food Labels Survey" (2016), at 10, available at http://greenerchoices.org/wp-content/uploads/2016/08/2016_CRFoodLabelsSurvey.pdf (last visited August 30, 2019).

[51] Consumer Reports National Research Center, "Natural and Antibiotics Labels Survey" (2018), available at https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf (last visited August 30, 2019).

[52] This statement appears on the homepage of Sanderson's website, available at https://sandersonfarms.com/ (last visited August 30, 2019); on the hyperlink "Truth About Chicken" that appears right below the statement, to debunk "myths" about antibiotics, available at https://sandersonfarms.com/chicken-myths/#2nd (last visited August 30, 2019); and in the video "How We Grow Our Chicken," available at https://sandersonfarms.com/our-chickens/animal-welfare/ (last visited August 30, 2019). Similar statements are repeated by Sanderson in its Bob and Dale TV advertisements.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

34

so egregious that a neutral third party, the Council of Better Business Bureaus, National Advertising Division (NAD), concluded on August 11, 2017 that key claims in Sanderson's advertising are misleading and that Sanderson should stop making those claims:

> NAD also determined that given the lack of any consensus in the scientific community over the safety of consuming meat from animals raised using antibiotics the advertiser [Sanderson] should discontinue from its advertising language that characterizes the 'raised without antibiotics' labels on competitive chicken producers' products as a 'marketing gimmick,' 'just a trick to get you to pay more money,' a claim that is 'full of hot air and doesn't say much,' 'a phrase [that marketers] invented to make chicken sound safer … and it doesn't mean much' and similar language.[53]

113.   However, Sanderson doubles down on its efforts to minimize the importance of "no antibiotics" statements which are valuable to consumers, but which Sanderson is not lawfully allowed to use.

114.   Sanderson contends, "…we are aware of no credible scientific research that supports the notion that the use of antibiotics that are important to human medicine when treating chickens contributes to the development of human bacterial infections that are resistant to treatment…."[54]

115.   Contrary to Sanderson's assertion of "no credible evidence" many studies from credible sources have concluded that the use of antibiotics in livestock

---

[53] Advertising Self-Regulatory Council, Press Release, available at http://www.asrcreviews.org/nad-recommends-sanderson-farms-discontinue-claims-about-tricks-gimmicks-finds-company-can-support-certain-claims-referencing-federal-law/ (last visited August 30, 2019).

[54] *See* https://sandersonfarms.com/policy-on-animal-welfare-and-antibiotic-use/ (last visited August 30, 2019)

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

risks rendering those antibiotics less useful to humans:

    a.  The World Health Organization's 2014 report, titled Antimicrobial Resistance: Global Report on Surveillance, stated, "[t]he classes of antibiotics used in food-producing animals and in human drugs are mostly the same, thereby increasing the risk of emergence and spread of resistant bacteria, including those capable of causing infections in both animals and humans. Food-producing animals are reservoirs of pathogens with the potential to transfer resistance to humans."[55]

    b.  The Centers for Disease Control and Prevention (CDC), U.S. Department of Health and Human Services, summarized the threat to public health posed by antibiotic use in agricultural operations, such as Sanderson Farms:

> Antibiotics are widely used in food-producing animals, and according to data published by FDA, there are more kilograms of antibiotics sold in the United States for food-producing animals than for people [hyperlink omitted]. This use contributes to the emergence of antibiotic-resistant bacteria in food-producing animals. Resistant bacteria in food-producing animals are of particular concern because these animals serve as carriers. Resistant bacteria can contaminate the foods that come from those animals, and people who consume these foods can develop antibiotic-resistant infections. Antibiotics must

---

[55] World Health Organization, Antimicrobial Resistance: Global Report on Surveillance at 59, available at http://apps.who.int/iris/bitstream/10665/112642/1/9789241564748_eng.pdf?ua=1 (last visited August 30, 2019) (internal citations omitted).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

be used judiciously in humans and animals because both uses contribute to not only the emergence, but also the persistence and spread of antibiotic-resistant bacteria.[56]

c.  According to the President's Council of Advisors on Science and Technology and its Report to the President on Combatting Antibiotic Resistance, "[s]ubstantial evidence demonstrates that use of antibiotics in animal agriculture promotes the development of antibiotic-resistant microbes in animals and that retail meat can be a source of microbes, including antibiotic-resistant microbes."[57]

d.  A 2017 review of the research to date concludes, "taken together, the data support what the scientific community, national governments, and international organizations such as the World Health Organization, the Food and Agricultural Organization of the United Nations, and the World Organization for the Health of Animals (OIE) have long recognized: antimicrobial use on farms clearly contributes to the emergence of resistance and poses a human public health risk."[58]

---

[56] Antibiotic Resistance Threats in the United States (2013), at 36-37, available at https://www.cdc.gov/drugresistance/pdf/ar-threats-2013-508.pdf (last visited August 30, 2019). The report also contains a glossary of terms related to antibiotic resistance.

[57] Report to the President on Combatting Antibiotic Resistance, Executive Office of the President of the United States (September 2014), at 50, available at https://obamawhitehouse.archives.gov/sites/default/files/microsites/ostp/PCAST/pcast_carb_report_sept2014.pdf (last visited August 30, 2019).

[58] Hoelzer et al., BMC Veterinary Research (2017) 13:211, "Antimicrobial drug use in food-producing animals and associated human health risks: what, and how strong, is the evidence?," at 35, available at https://link.springer.com/epdf/10.1186/s12917-017-1131-3?author_access_token= CbmecKjS4XscxgMn92-6rm_BpE1tBhCbnbw3BuzI2RMGFJmV0iy8Y06YFc2zc-R5jN1X3crDybEToB_CzXCpRozpkwGnxg9ydolzETVy02VGkppjTRq1V0MGiTq

37

e.  Approximately 70% of all medically important antibiotics sold in the United States are for livestock use.[59]

f.  An estimated 23,000 deaths and more than 2 million illnesses have been caused by antibiotic-resistant bacteria, as estimated in 2013 by the CDC.[60]

g.  Children experience the ill-effects of antibiotic overuse in agriculture, most especially children younger than 5 years who become infected with antibiotic resistant bacteria.[61]

116.  Because Sanderson is aware of the studies cited above, Sanderson is aware of further research on the elevated risk of poultry workers carrying bacteria that is resistant to the same antibiotics that Sanderson admits to using.

117.  Indeed, "credible evidence" of antibiotic-resistant bacteria has been found on Sanderson's own chicken.[62]

**Allegations Concerning The Misrepresentation That The Products Do Not, and Cannot, Contain Unnatural Residues**

118.  A reasonable consumer believes Sanderson's "100% Natural" representation means the Products do not and cannot contain residues, such as

---

rqtB8g2U114wU4Fb9RacLAHWYIA%3D%3D (last visited August 30, 2019).
[59] The Pew Charitable Trusts, *Antibiotics and Animal Agriculture: A Primer* (February 2018) https://www.pewtrusts.org/-/media/assets/2018/02/arp_antibiotics_and_animal_agriculture_a_primer.pdf
[60] *Id*. at 13.
[61] American Academy of Pediatrics, Technical Report (December 2015), "Nontherapeutic Use of Antimicrobial Agents in Animal Agriculture: Implications for Pediatrics," at e1673, available at https://pediatrics.aappublications.org/content/pediatrics/136/6/e1670.full.pdf  last visited August 30, 2019.
[62] National Resources Defense Council, *Sanderson Farms: Spreading Deception & Antibiotic Resistance*, available at https://www.nrdc.org/experts/sanderson-farms-spreading-deception-antibiotic-resistance (last visited August 30, 2019).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

38

pharmaceutical or biological residues.

119.    Specifically, Sanderson represents itself as "100% Natural" in multiple media and Sanderson asserts "no antibiotics to worry about here" in TV advertisements. On its website and other advertisements, Sanderson states: "There's Only Chicken In Our Chicken. Seriously."[63] *See*, *e.g.*, *supra* ¶85.

120.    Sanderson also misrepresents to consumers the level of protection that they can expect from the federal law regarding antibiotic residues. In one of the Bob and Dale TV advertisements,[64] Sanderson says, "[t]he thing is, by federal law, all chickens must be cleared of antibiotics before they leave the farm . . . No antibiotics to worry about here." This statement is misleading because it omits the fact that USDA's own process allows for chickens with scientifically detectable antibiotic residues to be sold to consumers, as long as the detected residues stay below the regulatory "tolerance."

121.    Sanderson's representations regarding its chicken being free of residues are misleading because Sanderson's own laboratory testing indicates that the pharmaceuticals Sanderson administers remain in some of the chickens after they leave the grow-out facilities and arrive at processing plants to be slaughtered. The pharmaceuticals that Sanderson administers include, but are not necessarily limited to, bacitracin, gentamicin, lincomycin, monensin, narasin, oxytetracycline, penicillin, Rofenaid (Rofenaid is a brand name; the drug is sulfadimethoxine ormetprim), salinomycin, and virginiamycin.[65]

122.    Sanderson conducts its own laboratory testing for the residues of

---

[63] Available at https://sandersonfarms.com/our-chickens/100-natural/ (last visited August 30, 2018).

[64] Available at https://www.ispot.tv/brands/A1Z/sanderson-farms (last visited August 30, 2019).

[65] Order, *Friends of the Earth et al. v. Sanderson Farms, Inc.*, No. 3:17-cv-03592 (RS), Dkt. 94 (N.D. Cal. Aug. 27, 2018).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

pharmaceuticals that Sanderson administers, and Sanderson's own testing indicates positive results for the pharmaceuticals that Sanderson administers to its flocks at various stages of their lives. These positive pharmaceutical results include, but are not necessarily limited to, decoquinate, monensin, narasin, nicarbazin, and salinomycin. Discovery may reveal additional residues.

**Allegations Concerning the Reach and Scope of Sanderson's Misrepresentations**

123.    Sanderson began its "100% Natural" marketing campaign at least as far back as 2014. In its "I Believe" series of commercials which were released on YouTube, Sanderson concluded by wishing viewers "Happy Fourth of July," "Happy Thanksgiving," "Merry Christmas and Happy Holidays," with a voiceover "And we mean that 100%.", along with the logo and "100% Natural":



124.    The "Bob and Dale" commercials began airing in 2016.[66]  They were broadcast in markets where Sanderson chicken was sold and were also put online.

125.    The term "impressions" is used to measure how many times a commercial has been seen.

_____

[66] The numbers were captured during the campaign on June 9, 2017, and have undoubtedly increased since then. Current numbers are not publicly available.

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

126.   The Bob and Dale commercial "Labels" had 41,961,833 broadcast impressions.

127.   The Bob and Dale commercial "Cooking Show" had 56,953,090 broadcast impressions.

128.   The Bob and Dale commercial "Supermarket" had 108,214,520 broadcast impressions.

129.   The Bob and Dale commercial "Marketing Guru" had 89,745,934 impressions.

130.   The Bob and Dale commercial "Floppy Arms" had 116,413,306 broadcast impressions.

131.   The Bob and Dale commercials were also seen millions of times online.

132.   The Bob and Dale commercial "Labels" had 1,675,972 views on YouTube and 32,000 on Facebook.

133.   The Bob and Dale commercial "Cooking Show" had 310,223 views on YouTube and 2.5 million views on Facebook.

134.   The Bob and Dale commercial "Supermarket" had 2,137,612 views on YouTube and 4 million views on Facebook.

135.   The Bob and Dale commercial "Marketing Guru" had 1,021,876 views on YouTube and 711,000 views on Facebook.

136.   The Bob and Dale commercial "Floppy Arms" had 753,431 views on YouTube and 2.4 million views on Facebook. The following table summarizes the views for each Bob and Dale commercial:

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

| "Bob and Dale" Commercial | Broadcast Impressions | YouTube Views | Facebook Views |
|---|---|---|---|
| Truth About Chicken – Labels Commercial | 41,961,833 | 1,675,972 | 32,000 |
| The Truth About Chicken - Marketing Guru Commercial: | 89,745,934 | 1,021,876 | 711,000 |
| The Truth About Chicken - Mr. Floppy Arms Commercial | 116,413,306 | 753,431 | 2,400,000 |
| The Truth About Chicken – Supermarket Commercial | 108,214,520 | 2,137,612 | 4,000,000 |
| Truth About Chicken - Cooking Show Commercial | 56,953,090 | 310,223 | 2,900,000 |
| TOTAL | 332,518,683 | 5,899,114 | 10,043,000 |

137.   The Bob and Dale commercials aired in 2016 and 2017 on widespread television shows like *College Basketball* on CBS, *48 Hours* on CBS, and *Sunday Morning* on CBS.[67]

138.   Sanderson's print advertising also reached a wide audience.

139.    For example, in 2018, Sanderson Farms also placed a print ad stating that its chicken was "All Natural" in *Southern Living*, a national magazine which, according to its 2019 media guide, has print reach of 16,081,000 and a digital reach of 7.3 million unique users.

---

[67] In an August 2017 press release, Sanderson boasts that its "Old MacGimmick" commercial had 39.5 million Facebook views.

42

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

140. Sanderson Farms also publishes a monthly magazine, the *Sanderson Farms 100% Natural Newsletter*, which as of 2018, had a circulation of 600,000 across 42 states, which has the "100% Natural" claim as part of every title on the front of the magazine:



141. The *Sanderson Farms 100% Natural Newsletter* is sufficiently prominent that it won numerous public relations awards including a Gold ADDY award.[68] The ADDY awards are the "advertising industry's largest and most representative competition."[69]

142. Sanderson also won several public relations awards for its *Sanderson Farms Corporate Responsibility Report*, including the Southern Public Relations Association of Mississippi Judge's Choice Award and an award from the Southern

---

[68] Sanderson Farms press release May 7, 2018.
[69] American Advertising Federation website, last visited March 20, 2020.

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 19-cv-06570-RS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

1   Public Relations Federation.[70]

2      143.    In addition, the "100% Natural" representation, in the form of pictures

3   of the products such as those in ¶ 43 *supra*, has appeared in flyers and circulars in

4   hundreds of stores in California.

5      144.    For example, such pictures have appeared in flyers and circulars for

6   Wal-Mart (167 stores in California), Sam's Club (29 stores in California), Kroger

7   (300 stores in California, including Food 4 Less), and Albertson's (600 stores in

8   California, including Vons).

9      145.    Every retail package of Sanderson chicken bears the phrase "100%

10  Natural." Although Plaintiffs do not bring claims based on labeling, the labels

11  represent an enormous and widespread "100% Natural" message to consumers,

12  which is the message Sanderson encourages retailers to use in their ad circulars.[71]

13     146.    In Sanderson's 2019 annual report filed with the SEC, it noted that its

14  efforts to distinguish itself in the market as a "natural" brand went back to 2004:

15      The Registrant has achieved a high level of public awareness and acceptance
        of its products in its core markets. Brand awareness is an important element
16      of the Registrant's marketing philosophy, and it intends to continue brand
        name merchandising of its products. During calendar 2004, the Company
17      launched an advertising campaign designed to distinguish the Company's
        fresh chicken products from competitors' products. The campaign noted that
18      the Company's product is a natural product free from salt, water and other
        additives that some competitors inject into their fresh chicken. The Company
19      continues to use various media to communicate this message today.

20
21     147.    Sanderson also described its recent campaigns to promote itself as a

22
23  _____

24  [70] Sanderson Farms press release May 7, 2018.

25  [71] Sanderson maintains product imagery at the following address
    https://sandersonfarms.com/corporate/media-library/product-imagery/ (last visited
26  March 22, 2020). There Sanderson states: "To help you advertise Sanderson Farms
    products at the retail level, we've created a database of professional images for use
27  in print and Internet advertisements to promote the sale of Sanderson Farms *100%*
    *natural chicken.*" (emphasis added).
28

                                    44

"natural" brand:

> During fiscal 2016, the Company launched a multi-media advertising campaign designed to explain and support the Company's position regarding the judicious use of antibiotics to prevent illness and treat chickens that become ill. During fiscal 2017, the Company launched a multi-media advertising campaign designed to dispel many of the myths about poultry production. The Company regularly evaluates the success of this campaign and, while not currently advertising aggressively on television, expects to continue to use the campaign in other media, at least for the near term.

## CLASS ALLEGATIONS

148.    Plaintiffs bring this suit as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all individuals and businesses throughout the State of Californian who purchased one or more Products during the Class Period. Excluded from the Class is Defendant, any person, firm, trust, corporation, officer, director, or other individual or entity in which Defendant has a controlling interest or with which Defendant is related to or affiliated, and the legal representatives, agents, heirs, affiliates, successors-in-interest or assigns of any excluded party. Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for Class certification and/or the result of discovery.

149.    This lawsuit is properly brought as a class action for the following reasons:

150.    The Class is so numerous that joinder of the individual Members of the proposed Class is impracticable. The Class includes at least thousands of consumers in California. The precise number and identities of Class Members are unknown to Plaintiffs, but are known to Defendant or can be ascertained through discovery, using records of sales, and other information kept by Defendant or its agents. Notice can be provided through sales records, retail store reward programs, and publication.

151.    The Class is ascertainable, and there is a well-defined community of interest in the questions of law and/or fact alleged herein since the rights of each

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    Class Member were infringed or violated in similar fashion based upon Defendant's

2    uniform misconduct.

3        152.   Questions of law or fact common to the Class exist as to Plaintiffs and

4    all Class Members, and these common questions predominate over any questions

5    affecting only individual Members of the Class. Among these predominant common

6    questions of law and/or fact are the following:

7            a.  Whether the Products lived up to the representations that they were

8                "100% Natural";

9            b.  Whether the Products are "100% Natural" when the birds are given

10               antibiotics and/or pharmaceuticals;

11           c.  Whether the Products are "100% Natural" when they contain

12               antibiotic or pharmaceutical residues;

13           d.  Whether the Products are "100% Natural" when the poultry that the

14               Products are derived from are raised exclusively indoors in crowded

15               and dirty conditions;

16           e.  Whether the Products are "100% Natural" when the process

17               contributes to antibiotic resistant bacteria;

18           f.  Whether a reasonable consumer would find the "100% Natural"

19               representations material to their decision to purchase the Products;

20           g.  Whether Defendant made any express or implied warranties in

21               connection with the sale of the Products;

22           h.  Whether Defendant breached any express or implied warranties;

23           i.  Whether Defendant was unjustly enriched by selling the Products;

24           j.  Whether Defendant violated applicable consumer protection laws by

25               selling Products that did not live up to the "100% Natural"

26               representations made by Defendant; and

27           k.  The appropriate nature and measure of damages.

28       153.   Plaintiffs' claims are typical of the claims of Class members. The

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

46

injuries sustained by Plaintiffs and the Class flow, in each instance, from a common nucleus of operative facts based on the Defendant's uniform conduct as set forth above. The defenses, if any, that will be asserted against Plaintiffs' claims likely will be similar to the defenses that will be asserted, if any, against Class Members' claims.

154.    Plaintiffs will fairly and adequately protect the interests of Class Members.

155.    Plaintiffs have no interests materially adverse to or that irreconcilably conflict with the interests of Class Members and have retained counsel with significant experience in handling class actions and other complex litigation, and who will vigorously prosecute this action.

156.    A class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy, and individual joinder of all Class Members is impracticable, if not impossible, because there are numerous Class Members located throughout the State of California. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the courts, protects the rights of each Class Member, and maximizes recovery to them.

157.    Plaintiffs do not anticipate any difficulties in the management of this action as a class action. If conflicts arise, they may be managed by using appropriate subclasses.

## **INJUNCTIVE CLASS RELIEF**

158.    Rules 23(b)(1) and 23(b)(2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, the Defendant has engaged in conduct

47

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   resulting in misleading consumers about the nature of their products and

2   representing they are "100% Natural." Since Defendant's conduct has been

3   uniformly directed at all consumers in the State of California, and the conduct

4   continues presently, injunctive relief on a class-wide basis is a viable and suitable

5   solution to remedy Defendant's continuing misconduct.

6       159.   Plaintiff Pam La Fosse does not know if she can rely on Defendant's

7   claims in the future, but would purchase the Products again if they were "100%

8   Natural" as represented.

9       160.   Plaintiff Sharon Manier does not know if she can rely on Defendant's

10  claims in the future, but would purchase the Products again if they were "100%

11  Natural" as represented.

12      161.   The Injunctive Class is properly brought and should be maintained as a

13  class action under Rule 23(a), and the injunctive Class satisfies the class action

14  prerequisites of numerosity, commonality, typicality, and adequacy because:

15      a.   Numerosity: Individual joinder of the injunctive Class Members

16         would be wholly impracticable. Defendant's Products have been

17         purchased by thousands of people throughout California;

18      b.   Commonality: Questions of law and fact are common to Members

19         of the Class. Defendant's misconduct was uniformly directed at all

20         consumers. Thus, all Members of the Class have a common cause

21         against Defendant to stop its misleading conduct through an

22         injunction. Since the issues presented by this injunctive Class deal

23         exclusively with Defendant's misconduct, resolution of these

24         questions would necessarily be common to the entire Class.

25         Moreover, there are common questions of law and fact inherent in

26         the resolution of the proposed injunctive class, including, *inter alia*:

27         i.   Resolution of the issues presented in the 23(b)(3) class;

28         ii.   Whether Members of the Class will continue to suffer harm by

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

48

1    virtue of Defendant's deceptive product marketing and

2    advertising; and

3         iii.   Whether, on equitable grounds, Defendant should be prevented

4              from continuing to deceptively advertise and market the Products

5              as being "100% Natural."

6    c.   Typicality: Plaintiffs' claims are typical of the claims of the

7         injunctive Class because their claims arise from the same course of

8         conduct (*i.e.* Defendant's deceptive and misleading marketing,

9         labeling, and advertising practices). Plaintiffs are typical

10        representatives of the Class because, like all Members of the

11        injunctive Class, they purchased Defendant's Products based on the

12        same misrepresentations made to consumers throughout California.

13   d.   Adequacy: Plaintiffs will fairly and adequately represent and protect

14        the interests of the injunctive Class. Their claims are common to all

15        Members of the injunctive Class and they have a strong interest in

16        vindicating their rights. Plaintiffs have no conflicts with the

17        Members of the Class and are represented by counsel who is

18        competent and experienced in both consumer protection and class

19        action litigation.

20        162.   The injunctive Class is properly brought and should be maintained as a

21   class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of

22   the Class Members on grounds generally applicable to the entire injunctive Class.

23   Certification under Rule 23(b)(2) is appropriate because Defendant has acted or

24   refused to act in a manner that applies generally to the injunctive Class (*i.e.*

25   Defendant has marketed the Products using the same misleading and deceptive

26   advertising and marketing to all the Class Members). Any final injunctive relief or

27   declaratory relief would benefit the entire injunctive Class as Defendant would be

28   prevented from continuing to make the Misrepresentations and would be required to

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

49

disclose to consumers the true nature of the Products. Plaintiffs would purchase the Products again if the Products were 100% Natural as represented.

## NOTICE OF CLAIMS

163.    Sanderson has been on notice of the claims asserted in this action for years. First, the *Friends of the Earth* litigation was filed on June 22, 2017. Second, Sanderson's advertising was found deceptive by the Council of Better Business Bureaus in August of 2017. Third, before commencing this action, on July 8, 2019, former plaintiff Daniel Lentz and plaintiff Pam La Fosse sent a demand letter to Sanderson under California's Consumer Legal Remedies Act.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## Violation of the Unfair Competition Law,

## Cal. Bus. & Prof. Code § 17200, *et seq*.

164.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

165.    Ms. La Fosse and Ms. Manier have standing to pursue this claim under California's Unfair Competition Law ("UCL") because they suffered an injury-in-fact and lost money as a result of Defendant's unfair practices. Specifically, they expended more money in the transaction than they otherwise would have due to Defendant's misrepresentations and conduct.

166.    Claiming the Products are "100% Natural" and the other misrepresentations alleged herein constitutes a course of unfair conduct within the meaning of Cal. Civ. Code § 17200, *et seq*.

167.    Defendant's advertising failed to disclose that Products were not truly "100% Natural" and instead was done in a manner to deceive consumers about the true nature of the Products.

168.    The conduct of the Defendant harms the interests of consumers and

50

1  market competition. There is no valid justification for Defendant's conduct.

2       169.  Defendant engaged in unlawful business acts and practices by

3  breaching express warranties, breaching implied warranties, violating the False

4  Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*., and violating the

5  Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

6       170.  Defendant engaged in fraudulent business practices by knowingly

7  making the Misrepresentations concerning the Products when they are not "100%

8  Natural."  Such practices are devoid of utility and outweighed by the gravity of

9  harm to Plaintiffs and the Class who lost money or property by paying for the

10  misrepresented product.

11       171.  Each of Defendant's unfair, unlawful, and fraudulent practices

12  enumerated above was the direct and proximate cause of financial injury to

13  Plaintiffs and the Class. Defendant has unjustly benefitted as a result of its wrongful

14  conduct. Plaintiffs and the Class Members are accordingly entitled to have

15  Defendant disgorge and restore to Plaintiffs and Class Members all monies

16  wrongfully obtained by Defendant as a result of the conduct as alleged herein.

17       172.  Pursuant to section 17203 of the California Business and Professions

18  Code, Plaintiffs seek an order of this Court enjoining Defendant from continuing to

19  engage in unfair, unlawful, and deceptive practices and any other act prohibited by

20  law, including the acts set forth herein.

21

22              **SECOND CAUSE OF ACTION**

23          **Violation of the False Advertising Law,**

24        **Cal. Bus. & Prof. Code § 17500, *et seq*.**

25       173.  Plaintiffs repeat and reallege each and every allegation contained in all

26  the foregoing paragraphs as if fully set forth herein.

27       174.  Plaintiffs have standing to pursue this claim under California's False

28  Advertising Law ("FAL") because they suffered an injury-in-fact and lost money as

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

51

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

a result of Defendant's false advertising.

175.   Defendant intentionally and knowingly disseminated the false advertising described herein.

176.   Defendant's advertising as described herein induced Plaintiffs and Class Members to purchase Sanderson chicken by advertising the chicken as "100% Natural" and by falsely advertising that the chicken was free from antibiotics and pharmaceuticals, that there was no danger of the use of antibiotics in the chicken contributing to the development of antibiotic-resistant bacteria, that the Products were free from antibiotics and pharmaceuticals when sold, and that the chickens were raised in a natural and humane manner.

177.   Plaintiffs relied on Sanderson's advertising, and the Defendant's false advertising was the direct and proximate cause of financial injury to Plaintiffs and the Class.

## THIRD CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act,
### Cal. Civ. Code § 1750, *et seq.*

178.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

179.   The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendant's acts and practices because the Act covers transactions involving the sale of goods to consumers.

180.   Plaintiffs and similarly-situated California consumers are "consumers" within the meaning of section 1761(d) of the California Civil Code, and they engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the Products.

181.   The Products are "goods" under Cal. Civ. Code § 1761(a).

182.   Defendant's unfair and deceptive business practices were intended to

52

1   and did result in the sale of the Products.

2       183.   Defendant violated the CLRA by engaging in the following unfair and

3   deceptive practices:

4           (1) Representing that the Products have characteristics, uses or benefits

5       that they do not have, in violation of section 1770(a)(5);

6           (2) Representing that the Products are of a particular standard, quality,

7       or grade when they are not, in violation of section 1770(a)(7); and

8           (3) Advertising the Products with the intent not to sell them as

9       advertised, in violation of section 1770(a)(9).

10      184.   Defendant falsely advertised the Products as "100% Natural"  and

11  falsely advertised that the chicken was free from antibiotics and pharmaceuticals,

12  that there was no danger of the use of antibiotics in the chicken contributing to the

13  development of antibiotic-resistant bacteria, that the Products were free from

14  antibiotics and pharmaceuticals when sold, and that the chicken were raised in a

15  natural and humane manner.

16      185.   If Plaintiffs and similarly-situated consumers had known the truth, they

17  would not have purchased the Products at all or purchased them at the prices they

18  did.

19      186.   As a direct and proximate result of Defendant's conduct, Plaintiffs and

20  similarly-situated consumers suffered injury.

21      187.   Pursuant to California Civil Code § 1782(a), Ms. La Fosse sent

22  Defendant a CLRA notice letter via certified mail, return receipt requested, which

23  was delivered on or around July 8, 2019, advising Defendant that it is in violation of

24  the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to

25  be in violation of § 1770.

26      188.   Defendant has not repaired, replaced, or otherwise rectified the goods

27  alleged to be in violation of § 1770.

28      189.   Accordingly, Plaintiffs seek damages under the CLRA in an amount to

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  be determined at trial.

2

3  **FOURTH CAUSE OF ACTION**

4  **Breach of Express Warranty,**

5  **Cal. Com. Code § 2313**

6      190.   Plaintiffs repeat and reallege each and every allegation contained in the

7  foregoing paragraphs as if fully set forth herein.

8      191.    Defendant provided the Plaintiffs and Class Members with an express

9  warranty in the form of written affirmations of fact promising and representing that

10  the Products were "100% Natural."

11      192.   The "100% Natural" affirmations were not couched as "belief" or

12  "opinion," and were not "generalized statements of quality not capable of proof or

13  disproof."

14      193.   These affirmations of fact became part of the basis for the bargain and

15  were material to the Plaintiffs' and Class Members' transactions.

16      194.   Plaintiffs and Class Members reasonably relied upon the Defendant's

17  affirmations of fact and justifiably acted in ignorance of the material facts omitted or

18  concealed when they decided to buy Defendant's Products.

19      195.   Within a reasonable time after they knew or should have known of

20  Defendant's breach, Defendant was placed on notice of its breach by the CLRA

21  letter of Mr. Lentz and Ms. La Fosse, giving Defendant an opportunity to cure its

22  breach, which it did not do.

23      196.   Defendant breached the express warranty because the Products are not

24  "100% Natural."

25      197.   As a direct and proximate result of Defendant's breach of express

26  warranty, Plaintiffs and Class Members were damaged in an amount to be proven at

27  trial.

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

54

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## FIFTH CAUSE OF ACTION

## Breach of Implied Warranty of Merchantability Under California Law

## Cal. Comm. Code § 2314

198.   Plaintiffs Pam La Fosse and Sharon Manier repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

199.   Under California law an implied warranty of merchantability arises that requires that the goods "pass without objection in the trade under the contract description." § 2314 (2)(a).

200.   The "contract description" in this case includes the promises in Sanderson's advertising and website that the chicken is:

- "100% Natural";
- that Sanderson raises "our chickens humanely, to ensure their safety, nutrition, and overall health";
- that there are "No Additives Or Artificial Ingredients. Not Ever." in the Sanderson chicken;
- that the chicken is "nothing but the safest, most wholesome poultry, with nothing added. So you know what you're getting every time."; and
- that the chicken does not contain antibiotics when it leaves the farm.

201.   Sanderson does not meet the contract descriptions above because the chicken is not "100% Natural"; it does not raise the chickens humanely; it routinely uses pharmaceuticals; its routine use of antibiotics contributes to antibiotic resistant bacteria; and there are traces of antibiotics that remain in the chickens after they leave the farm.  Thus, the chicken would not "pass without objection in the trade."

202.   Further, in the poultry trade, "natural" means one or more of the following to consumers: raised without antibiotics or pharmaceuticals; not raised in intensive indoor confinement; and/or sold without artificial residue. *See* consumer surveys, ¶¶ 57-59 *supra*.

203. Consumers would "object" (and in this case, they have) if they knew the truth about the supposedly "100% Natural" chicken, *i.e.* that Sanderson uses pharmaceuticals including antibiotics in the chicken; it raises the chickens in intensive indoor confinement; and its chicken has tested positive for unnatural residue.

204. Accordingly, Sanderson's misrepresentations concerning the use of antibiotics in poultry do not, and have not, "passed without objection in the trade."

205. In addition to consumers, the Council of Better Business Bureaus, National Advertising Division (NAD), concluded on August 11, 2017 that key claims in Sanderson's advertising are misleading and "recommended that Sanderson Farms discontinue from its advertising claims that characterize 'raised without antibiotics' labels on competing products as a marketing gimmick or trick."

206. Chicken that is falsely advertised concerning the use of antibiotics also produces objections among poultry industry competitors in the trade. Sanderson itself strongly objected when a competitor, Tyson Foods, sold chicken that was supposedly "raised without antibiotics" but was not. *See, supra* ¶ 48.

207. Further, in 2007, the Food Safety and Inspection Service objected to Tyson Foods' labeling by rescinding permission to use a label that said, "raised without antibiotics."

208. Accordingly, where chicken is falsely advertised as having been raised without antibiotics, antibiotic free, or no antibiotics, it does not "pass without objection in the trade under the contact description."

209. Ms. La Fosse notified Sanderson of its breach in July 2019.

210. Ms. Manier and Ms. La Fosse were harmed by Sanderson's breach because they paid more for the "100% Natural" chicken than they would have if they had known the truth or they would not have purchased it at all.

211. As a direct and proximate result of Sanderson's breach of warranty, plaintiffs and the consumers they represent have been damaged in an amount to be

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

56

determined at trial.

## SIXTH CAUSE OF ACTION

## Common Law Unjust Enrichment (in the alternative)

212.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

213.    Defendant's conduct violated state and federal law by producing, manufacturing, advertising, marketing, and selling the products while misrepresenting and omitting material facts.

214.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and similarly-situated consumers, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

215.    Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the "100% Natural" Products, which were not as Defendant represented them to be.

216.    Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

217.    Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and similarly-situated consumers, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the FRCP;

57

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with California consumer protection and warranty laws;

(c) Awarding monetary, compensatory, statutory, and punitive damages;

(d) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated: July 23, 2020          NYE, STIRLING, HALE & MILLER, LLP

By: _____ */s /Jonathan D. Miller* _____
          Jonathan D. Miller, Esq.
          Alison M. Bernal, Esq.
          33 W. Mission Street, Ste 201
          Santa Barbara, CA 93101
          Tel: (805) 963-2345
          Fax: (805) 284-9590
          jonathan@nshmlaw.com
          alison@nshmlaw.com

ELSNER LAW & POLICY LLC

By: _____ */s/Gretchen Elsner* _____
          Gretchen Elsner
          *(admitted Pro Hac Vice)*
          314 S. Guadalupe Street
          Santa Fe, NM 87501
          Tel: (505) 303-0980
          gretchen@elsnerlaw.org

*Signatures continued on following page.*

1 | WALSH, PLLC
2 |
3 | By: _____/s/Bonner C. Walsh_____
  |         Bonner C. Walsh, Esq.
4 |         *(admitted Pro Hac Vice)*
  |         1561 Long Haul Road
5 |         Grangeville, ID 83530
  |         Tel: (541) 359-2827
6 |         Fax: (866) 503-8206
  |         bonner@walshpllc.com
7 |
8 | LAW OFFICE OF ADAM R. GONNELLI
9 |
10 | By: _____/s/Adam R. Gonnelli_____
   |         Adam R. Gonnelli, Esq.
11 |         *(admitted Pro Hac Vice)*
   |         Law Office of Adam R.
12 | Gonnelli
   |         7030 E. Genesee Street
13 |         Fayetteville, New York 13066
14 |         Tel: (917) 541-7110
   |         Fax: (315) 446-7521
15 |         adam@arglawoffice.com
16 |
17 |
18 |         *Attorneys for Plaintiffs and the Class*
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

59

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by

3  jury of all claims so triable in the above-referenced matter.

4      Dated: July 23, 2020          NYE, STIRLING, HALE & MILLER, LLP

5

6                                    By: _____ */s /Jonathan D. Miller*_____
                                          Jonathan D. Miller, Esq.
7                                         Alison M. Bernal, Esq.
                                          33 W. Mission Street, Ste 201
8                                         Santa Barbara, CA 93101
                                          Tel: (805) 963-2345
9                                         Fax: (805) 284-9590
                                          jonathan@nshmlaw.com
10                                        alison@nshmlaw.com

11                                   ELSNER LAW & POLICY LLC

12

13                                   By: _____ */s/Gretchen Elsner*_____
                                          Gretchen Elsner
14                                        *(admitted Pro Hac Vice)*
                                          314 S. Guadalupe Street
15                                        Santa Fe, NM 87501
                                          Tel: (505) 303-0980
16                                        gretchen@elsnerlaw.org

17

18                                   WALSH, PLLC

19

20                                   By: _____ */s/Bonner C. Walsh*_____
                                          Bonner C. Walsh, Esq.
21                                        *(admitted Pro Hac Vice)*
                                          1561 Long Haul Road
22                                        Grangeville, ID 83530
                                          Tel: (541) 359-2827
23                                        Fax: (866) 503-8206
                                          bonner@walshpllc.com
24      *Signatures Continued on Following Page.*

25

26

27

28

60

1

2

3

4

5

6

7

8

9

10

11

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF ADAM R. GONNELLI

By: _____ */s/Adam R. Gonnelli* _____
Adam R. Gonnelli, Esq.
(*admitted Pro Hac Vice*)
Law Office of Adam R.
Gonnelli
7030 E. Genesee Street
Fayetteville, New York 13066
Tel: (917) 541-7110
Fax: (315) 446-7521
adam@arglawoffice.com

*Attorneys for Plaintiffs and the Class*