Mark McKane, P.C. (SBN 230552)
mark.mckane@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 29th Floor
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Michael A. Glick (admitted *pro hac vice*)
Kathleen A. Brogan (admitted *pro hac vice*)
Paul J. Weeks (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

*Attorneys for Defendant
Sanderson Farms, Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| PAM LA FOSSE and SHARON MANIER, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br>　　vs.<br>SANDERSON FARMS, INC.,<br>　　　　　Defendant. | CASE NO. 19-CV-06570-RS<br><br>**DEFENDANT SANDERSON FARMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT IN PART; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Honorable Richard Seeborg<br>Hearing Date: September 17, 2020<br>Time: 1:30 p.m.<br>Location: Courtroom 3, 17th Floor,<br>　　　　　450 Golden Gate Avenue,<br>　　　　　San Francisco, CA 94102 |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on the 17th day of September 2020, at 1:30 p.m. or as soon thereafter as this motion may be heard by the Honorable Richard Seeborg in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sanderson Farms, Inc. will, and hereby does, move the Court for an order dismissing in part the Second Amended Complaint of Plaintiffs Pam La Fosse and Sharon Manier pursuant to Federal Rule of Civil Procedure 12.  The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the entire file in this matter, and the arguments of counsel.

DATED: August 6, 2020

Respectfully submitted,

*/s/ Michael A. Glick*
Michael A. Glick

Mark McKane, P.C. (SBN 230552)
mark.mckane@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 29th Floor
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
gregg.locascio@kirkland.com
Michael A. Glick (admitted *pro hac vice*)
michael.glick@kirkland.com
Kathleen A. Brogan (admitted *pro hac vice*)
kathleen.brogan@kirkland.com
Paul J. Weeks (admitted *pro hac vice*)
paul.weeks@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

*Counsel for Defendant
Sanderson Farms, Inc.*

## INTRODUCTION

Following the Court's order granting Sanderson's Motion to Dismiss the First Amended Complaint, Plaintiffs in this putative class action have conceded that this Court only has jurisdiction over claims asserted by the remaining California Plaintiffs and do not seek to re-plead the out-of-state claims previously asserted by out-of-state consumers. Plaintiffs have also jettisoned the federal Magnuson-Moss Warranty Act claim that the Court dismissed from the First Amended Complaint. Instead, their Second Amended Complaint is limited to six California state law claims asserted by two California Plaintiffs (purportedly on behalf of a class of California purchasers of Sanderson's products). Among these claims is a new implied warranty of merchantability claim brought under California's Uniform Commercial Code. Plaintiffs first raised the prospect of this claim in their opposition to Sanderson's last motion to dismiss, and although the claim was not properly before the Court at the time (because it was improperly asserted only as part of Plaintiffs' opposition to Sanderson's motion), Sanderson explained in its reply why such claim fails as a matter of law. Simply put, to state a viable claim for breach of implied warranty of merchantability under California law, Plaintiffs must plausibly allege that Sanderson's chicken was inedible or unsafe for human consumption. Plaintiffs make no such allegations and they cannot. Instead, they press the same legally flawed theory they previewed in the last round of briefing, attempting to take advantage of an inapt and seldom-used sub-provision of the Uniform Commercial Code by alleging Sanderson's advertisements somehow constitute an actionable "contract description" that supports an implied warranty theory. As Sanderson has explained, this is an improper attempt to bootstrap an *express* warranty claim into a separate *implied* warranty claim. Sanderson therefore brings this limited motion to dismiss Plaintiffs' legally deficient implied warranty of merchantability claim.

## BACKGROUND

The Court is familiar with the background and allegations in this case, which Sanderson has set forth in its two prior motions to dismiss. *See* ECF No. 25 at 2-3; ECF No. 50 at 2. After the Court's dismissal of Plaintiffs' original Complaint in February, ECF No. 37, Plaintiffs filed a First Amended Complaint ("FAC") in March, ECF No. 40, asserting a host of out-of-state claims on behalf of various out-of-state consumers as well as a claim under the federal Magnuson-Moss Warranty Act ("MMWA"). Sanderson moved to dismiss that amended complaint, and Plaintiffs opposed, relying heavily on proposed

future amendments that they believed would cure the issues identified in Sanderson's motion. *See generally* ECF No. 58. Among them, Plaintiffs proposed amending the FAC to add state law implied warranty of merchantability claims under several states' laws (including California) in order to resuscitate their flawed MMWA claim. *See id.* at 14-19. Sanderson's reply brief in turn explained in detail why the proposed California implied warranty of merchantability claim would fail as a matter of law. ECF No. 61 at 5-9. Nevertheless, following the completion of briefing and while the motion to dismiss was pending, Plaintiffs formally sought leave to file a second amended complaint asserting the implied warranty claims (among others). *See* ECF No. 63 at 3, 5.

On July 2, the Court granted Sanderson's motion to dismiss the FAC, finding the federal MMWA claim was not viable and declining to exercise pendent personal jurisdiction over the claims of the out-of-state Plaintiffs. ECF No. 64. In doing so, the Court declined to consider the prospective implied warranty claims identified in Plaintiffs' opposition, citing the "axiom[]" that a complaint "may not be amended by briefs in opposition to a motion to dismiss." *Id.* at 7 (citation omitted). While the Court granted Plaintiffs leave to amend, it noted their earlier request for leave to file a second amended complaint, denied Plaintiffs' "request to file that specific document," and granted leave only "to file a new second amended complaint limited to addressing the defects identified in this order." *Id.* at 9.

On July 23, the two remaining California Plaintiffs, Pam La Fosse and Sharon Manier, filed a narrowed Second Amended Complaint ("SAC"). ECF No. 65. The SAC no longer includes an MMWA claim or claims or allegations by out-of-state plaintiffs, and only asserts claims on behalf of a California class. *See id.* ¶ 148. Otherwise, the SAC's allegations and claims largely track those in the FAC with one exception: the remaining Plaintiffs now formally assert a claim for breach of the implied warranty of merchantability under California's Uniform Commercial Code ("UCC") (Count 5). *Id.* ¶¶ 198-211. The claim mirrors the one described in Plaintiffs' opposition to Sanderson's last motion to dismiss, *see* ECF No. 58 at 14-17, and which Plaintiffs set forth in their earlier proposed second amended complaint, *see* ECF No. 63-2 ¶¶ 303-16. Sanderson now moves to dismiss the new implied warranty claim.

**STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal

under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## ARGUMENT

Plaintiffs fail to state a claim for breach of the implied warranty of merchantability under California law because they have not alleged that Sanderson chicken was inedible or unfit for consumption, nor could they. Under California law, whether a product is merchantable "does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'" *Bohac v. Gen. Mills, Inc.*, 2014 WL 1266848, *9-10 (N.D. Cal. Mar. 26, 2014) (citation omitted). Thus, "[a] plaintiff who claims a breach of the implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'" *Engurasoff v. Coca-Cola Co.*, 2014 WL 4145409, *5 (N.D. Cal. Aug. 21, 2014) (citation omitted). To breach the implied warranty of merchantability in the context of food, Plaintiffs must allege the food was inedible or otherwise not safe for human consumption. *See, e.g.*, *Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 6657809, *7 (N.D. Cal. Nov. 21, 2014) (citing, *inter alia*, *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013)). Accordingly, courts routinely dismiss implied warranty of merchantability claims where plaintiffs have failed to allege they purchased such a food product. *See, e.g.*:

- *Backus v. Biscomerica Corp.*, 2017 WL 1133406, *4-5 (N.D. Cal. Mar. 27, 2017) (dismissing implied warranty claim based on the presence of partially hydrogenated oil ("PHO") in cookies where "the FDA did not determine that products that contain PHO are unfit for human consumption").

- *Leonhart*, 2014 WL 6657809, at *7 (dismissing implied warranty claims where plaintiff did "not allege that the [cereals she purchased] were unfit for consumption").

- *Engurasoff*, 2014 WL 4145409, at *5 (dismissing implied warranty claim challenging Coca-Cola ingredients because complaint contained no "allegation regarding the product's basic degree of fitness for ordinary use").

- *Bohac*, 2014 WL 1266848, at *9-10 (dismissing implied warranty claims by purchaser of granola bar who did not "allege[] that the products were not edible or contaminated");

- *Viggiano*, 944 F. Supp. 2d at 895-97 (dismissing implied warranty of merchantability claim where plaintiff alleged defendant "breached implied warranties by representing that the drink

is a 'premium' diet soda, containing 'all natural flavors'" but did "not allege any facts suggesting that the soda is not merchantable or fit for use as a diet soft drink").

Here, Plaintiffs have not alleged that the Sanderson chicken they purchased was unfit for its ordinary use (*i.e.*, to be eaten) by being inedible or otherwise unsafe for human consumption. To the contrary, Plaintiffs allege they purchased Sanderson chicken without incident on regular bases for *years*. *See* SAC ¶ 17 (alleging Ms. Manier purchased Sanderson chicken "every month for more than five years"); *id.* ¶ 31 (alleging Ms. La Fosse purchased Sanderson chicken approximately eight times over a three-year period). Plaintiffs make no allegation that the chicken ever made them, their family members, or anyone else sick, nor do they contend such chicken was inedible or unsafe.

Rather than implausibly contending that the chicken they purchased and consumed repeatedly for years was inedible, Plaintiffs instead concoct a theory that Sanderson's chicken was unmerchantable under a scarcely used UCC sub-provision—arguing that the product did not "pass without objection in the trade under the contract description." *See* SAC ¶ 199 (quoting Cal. Com. Code § 2314(2)(a)). According to Plaintiffs, Sanderson's product is not just chicken, but "100% Natural" chicken, because "[t]he 'contract description' in this case includes the promises in Sanderson's advertising and website that the chicken is . . . '100% Natural.'" *Id.* ¶ 200. And because, in their view, Sanderson's chicken does not meet that "100% Natural" "contract description," they contend Sanderson has breached not only express warranties based on the "100% Natural" statement but also the implied warranty of merchantability.

Plaintiffs' theory confuses express warranties and implied warranties, and cannot pass muster. As a fundamental matter, Plaintiffs' argument that *express* statements made in Sanderson's advertising somehow constitute part of the "contract description" and therefore influence the available *implied* warranties would turn warranty law on its head. It is well-settled in California that "[u]nlike express warranties, 'liability for an implied warranty does not depend upon any specific conduct or promise on the defendant's part, but instead turns upon whether the product is merchantable under the code.'" *Bohac*, 2014 WL 1266848, at *9 (brackets in original omitted) (quoting *Hauter v. Zogarts*, 534 P.2d 377 (Cal. 1975)); *see also Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 529 (Ct. App. 1995) ("Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law."). Plaintiffs' allegations regarding the various statements in

Sanderson's advertising are thus "more suited to a breach of express warranty claim, as they are specific representations made by the product manufacturer rather than characteristics that affect the product's merchantability." *Viggiano*, 944 F. Supp. 2d at 896-97 (rejecting implied warranty claim based on representation that drink was "premium" and contained "all natural flavors"); *see also* Cal. Com. Code § 2313(1)(a) (defining *express* warranty as an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain"); *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Ct. App. 2006) ("A[n] [express] warranty is a contractual promise from the seller that the goods conform to the promise."). Indeed, under Plaintiffs' view, the two types of warranties would be primarily premised on the exact same express statements—a result that makes little sense and which finds no home in the caselaw. *See, e.g.*, *Steele v. Bell-Carter Foods, Inc.*, 2019 WL 312146, *5 (Cal. Ct. App. Jan. 24, 2019) ("[E]xpress warranties are substantively different from implied warranties because of their contractual nature.").

Furthermore, even if Plaintiffs could manufacture an implied warranty of merchantability claim based on express statements made by Sanderson, they do not (and cannot) offer any basis to support the conclusory assertion that Sanderson's advertising included "promises" that became part of the "contract description," thereby creating an implied warranty, *see* SAC ¶ 200. Plaintiffs have previously pointed to the thinly reasoned opinion in *Arabian v. Organic Candy Factory*, 2018 WL 1406608 (C.D. Cal. Mar. 19, 2018), but it affords Plaintiffs no help. The implied warranty claim in that case was based on statements made on the product packaging that the organic gummy bears contained "Real Ingredients" when they allegedly did not. *Id.* at *8. But Plaintiffs here concede they are not challenging Sanderson's label or packaging. SAC ¶ 44 ("Plaintiffs challenge Sanderson's advertising, not the Products' labels."), ¶ 51 n.5 ("Plaintiffs challenge the advertising of these products, not the product labels . . . ."). And for good reason: as this Court has recognized in this and a related case, poultry labeling falls squarely within the province of the U.S. Department of Agriculture and any claims based on the label would be preempted by federal law. *See* ECF No. 37 at 10 ("[C]laims for false advertising are not preempted, [but] claims for false labelling are." (emphases omitted)); *Organic Consumers Assoc. v. Sanderson Farms, Inc.*, 84 F. Supp. 3d 1005, 1013 n.2 (N.D. Cal. 2018) ("any challenge to [Sanderson's] '100% Natural' labels is expressly preempted by USDA's guidelines").

SANDERSON FARMS, INC.'S NOTICE OF MOT. AND    5    CASE NO. 3:19-CV-06570 (RS)
MOT. TO DISMISS THE SECOND AM. COMPL. IN PART

And even assuming the *Arabian* court were correct that statements on a product label could constitute a "contract description" under Section 2314(2)(a) of the California UCC, there is no basis to extend the "contract description" to include advertisements beyond the label. Indeed, the comment to the UCC provision that Plaintiffs rely upon makes clear that "[g]oods *delivered under an agreement made by a merchant* in a given line of trade must be of a quality comparable to that generally acceptable in that line of trade *under the description or other designation* of the goods *used in the agreement*." Cal. Com. Code § 2314, UCC cmt. 2 (emphases added). Here, Plaintiffs have no agreement with Sanderson at all, as their own allegations confirm, *see* SAC ¶¶ 18, 31, nor can they plausibly allege that Sanderson's consumer advertising was part of Sanderson's contracts with its direct customers like Wal-Mart and Albertson's (the entities from whom Plaintiffs allege they actually purchased the chicken). The Court should reject Plaintiffs' tortured reading of this UCC provision.[1]

At bottom, Plaintiffs' implied warranty of merchantability claim is nothing more than a defective express warranty claim masquerading under an incorrect moniker, and thus it must be dismissed as a matter of law.

### CONCLUSION

For the foregoing reasons, Sanderson respectfully requests that the Court dismiss Plaintiffs' implied warranty of merchantability claim with prejudice.

---

[1] The *Arabian* court also recognized a separate theory of the breach of implied warranty of merchantability under a separate sub-provision of Section 2314 where a plaintiff alleges that the product does not "conform to the promises or affirmations of fact made on the container or label if any." 2018 WL 1406608, at *8 (quoting Cal. Com. Code § 2314(2)(f)). However, that theory is likewise not available to Plaintiffs here, as they recognize in disclaiming any challenge to Sanderson's product labels. *See, e.g.*, SAC ¶ 44. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019)—the only other case Plaintiffs identified in the last round of briefing to support their California implied warranty argument—is similarly unhelpful to them. There, the court merely acknowledged a prior order in which it held the plaintiffs had pled an implied warranty claim by alleging JUUL's e-cigarettes failed to conform with representations on the product label. *See id.* at 756. Plaintiffs here offer no such labeling allegation (nor could they without their claims being preempted).

| | |
|---|---|
| DATED: August 6, 2020 | Respectfully submitted, |
| | */s/ Michael A. Glick* |
| | Michael A. Glick |
| | |
| | Mark McKane, P.C. (SBN 230552) |
| | mark.mckane@kirkland.com |
| | KIRKLAND & ELLIS LLP |
| | 555 California Street, 29th Floor |
| | San Francisco, California  94104 |
| | Telephone: (415) 439-1400 |
| | Facsimile: (415) 439-1500 |
| | |
| | Gregg F. LoCascio, P.C. (admitted *pro hac vice*) |
| | gregg.locascio@kirkland.com |
| | Michael A. Glick (admitted *pro hac vice*) |
| | michael.glick@kirkland.com |
| | Kathleen A. Brogan (admitted *pro hac vice*) |
| | kathleen.brogan@kirkland.com |
| | Paul J. Weeks (admitted *pro hac vice*) |
| | paul.weeks@kirkland.com |
| | 1301 Pennsylvania Avenue, N.W. |
| | Washington, D.C.  20004 |
| | Telephone: (202) 389-5000 |
| | Facsimile: (202) 389-5200 |
| | |
| | *Counsel for Defendant* |
| | *Sanderson Farms, Inc.* |